# EXHIBIT 3



TRIAL COURT OF THE COMMONWEALTH OF MASSACHUSETTS
District Court Department
PLYMOUTH DIVISION
Office of the Clerk-Magistrate
Plymouth, Massachusetts 02360-3998
Tel: (503) 747-8400
Fax: (508) 830-9303

PHILIP J. MCCUE
ACTING CLERK-MAGISTRATE

JOHN D. FITZSIMMONS
FIRST ASSISTANT CLERK-MAGISTRATE

MARGARET WIKSTEN
ASSISTANT CLERK-MAGISTRATE

LUCY A. CANAVAN
ASSISTANT CLERK-MAGISTRATE

EDWARD J. GRIMLEY, JR.
ASSISTANT CLERK-MAGISTRATE

# FAX COVER SHEET

Date: September 20, 2011

To: _____

Organization: Foley Hoag

From: _____

Number of pages including cover sheet: _____

If you do not receive all the pages, please call 508-747-8400 as soon as possible.

## Comments:

Shawn McCarthy

COMMONWEALTH OF MASSACHUSETTS

PLYMOUTH, ss.                                    PLYMOUTH DISTRICT COURT
                                                 DOCKET NO. 1059CR2265

**COMMONWEALTH**

v.

**SHAUN MCCARTHY**

MEMORANDUM AND ORDER
ON MOTION TO QUASH SUBPOENA

    The defendant is charged in this case with aggravated assault and battery with a dangerous weapon, in violation of G. L. c. 265, § 15A(c). The defendant is alleged to have hit Jared Smith in the head with a fire extinguisher, seriously injuring Mr. Smith. The defendant contends that after the complaint issued in this case, Mr. Smith "began to send statements to the Defendant on his Facebook account.[1] The statements at issue "appear to come from the Facebook account of [Jared Smith]." The defendant printed individual screen "snapshots" of some or all of the Facebook postings and communications.

I.    Relevant Procedural History.
    The court (Gilligan, J.) held a limited evidentiary hearing in this case on March 2, 2011, in order to compel Mr. Smith to provide his date of birth. Mr. Smith testified at that hearing. Defendant's counsel represents in his Affidavit In Support Of Defendant's Motion, Pursuant To Mass. R. Crim. P. 48, That This Court Enter An Order For Sanctions Against Facebook, Inc. ("Bergeron Affidavit") that at the hearing, Mr. Smith "disavowed the statements, referenced he could not have authored the statements from the hospital, and that the account was closed."
    On March 31, 2011, the defendant filed a motion for an order directing Facebook, Inc. ("Facebook") to produce Mr. Smith's User Profile Information, including the account holder's identity, information shared on the account, and the user's choice of privacy settings. The court (Hand, J.) allowed the motion on April 6, 2011, and ordered the keeper of records for Facebook to produce certified copies of User Profile Information, "including public and private notes, private messages, status updates and responses, and wall postings and responses, of Jared Smith, DOB 8-2-89, from July 13, 2010 through present." Notice of the motion had not been given to Facebook or to Mr. Smith.

---

[1] These statements, detailed in the Memorandum Of Law In Support Of Defendant's Motion, Pursuant To Mass. R. Crim. P. 48, That Facebook, Inc., Be Sanctioned, pp. 4-5, are set out in note 7, below.

Commonwealth v. Shaun McCarthy, Docket No. 1059CR2265

1

On April 29, 2011, counsel for Facebook responded by letter to defense counsel, advising counsel that Facebook objected to the subpoena for records of Mr. Smith's User Profile Information on the grounds that (1) the information sought is protected under the Stored Communications and Privacy Act ("SCA" or "statute"), 18 U.S.C. § 2701, *et seq.*; (2) a warrant is required to obtain the information sought; (3) the order under which the subpoena issued was made without Facebook's having had an opportunity to be heard; (4) the information sought could be obtained by obtaining a search warrant, or by an order directing the user to provide the information directly; and (5) because the contents of any Facebook communication could be authenticated by other means.

Facebook did not produce any documents in response to the subpoena.

On June 22, 2011, the defendant moved for sanctions against Facebook.

On July 1, 2011, Facebook filed a motion to quash the subpoena, an opposition to the defendant's motion for sanctions against it, and a cross-motion for sanctions against the defendant. On July 19, 2011, the defendant filed an opposition to the cross-motion for sanctions; Facebook filed a reply on July 25, 2011.

The motions to compel and to quash, and the cross-motions for sanctions, were heard on July 26, 2011.

II.   Analysis.

   A.   Effect of Stored Communications Act, 18 U.S.C. §§ 2701, *et seq.*

The SCA restricts the freedom of "providers" of "electronic communication service[s]" ("ECS")[2] and "remote computing service[s]" ("RCS")[3] to divulge or disclose to others the contents of communications stored, carried or maintained by or on those services. *See* 18 U.S.C. §§ 2702(a), 2703(a), (b); *Crispin v. Christian Audigier, Inc.*, 717 F. Supp. 2d 965, 971-972 (C.D. Cal. 2010). It likewise restricts the ability of such providers to divulge or disclose "a record or other information pertaining to a subscriber or to a customer of such service[s]." 18 U.S.C. §§

---

[2] For the purposes of the statute, "'electronic communication service' means any service which provides to users thereof the ability to send or receive wire or electronic communications." 18 U.S.C. § 2510(15). "'[E]lectronic communication' means any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce . . . ." 18 U.S.C. § 2510(12).

[3] "[T]he term 'remote computing service' means the provision to the public of computer storage or processing services by means of an electronic communications system." *Id.*, § 2711(2). "Electronic communications system," in turn, is defined as "any wire, radio, electromagnetic, photooptical or photoelectronic facilities for the transmission of wire or electronic communications, and any computer facilities or related electronic equipment for the electronic storage of such communications." *Id.*, § 2510(14).

Commonwealth v. Shaun McCarthy, Docket No. 1059CR2265

2

2702(3), 2703(c). The statute limits both "the government's right to compel providers to disclose information in their possession about their customers and subscribers," *Crispin*, citing 18 U.S.C. § 2703, and "the right of an Internet Service Provider ('ISP') to disclose information about customers and subscribers . . . voluntarily." *Id.*, citing 18 U.S.C. § 2702.

Much of Facebook's argument depends on its status as a "provider" subject to the terms of the SCA. The court has not taken any evidence on this point, but for the purposes of this motion, the defendant appears to have conceded that the SCA does apply to Facebook. In considering the motions at issue here, the court has assumed, without being asked to decide, that the SCA does apply to Facebook as a "provider" of both ECS and RCS.

1. Voluntary disclosure of content of communications.

Section 2702 of the statute prohibits a provider from divulging to any person or entity "the contents[4] of a communication." 18 U.S.C. § 2702(a)(1)(ECS), § 2702(a)(2)(RCS). That general prohibition on disclosure is, however, subject to a set of enumerated exceptions. *See id.*, § 2702(b)(1)-(8). Among these exceptions is § 2702(b)(1), permitting a provider of ECS or RCS to disclose the content of a communication "to an addressee or intended recipient of such communication," and § 2702(b)(3), allowing the provider to divulge the content of a communication "with the lawful consent of the originator *or* an addressee *or* intended recipient[5] of such communication, *or* the subscriber in the case of remote computing service." *See id.* (emphasis added). The statute does not prohibit Facebook, if given "lawful consent," from divulging to the defendant the contents of any communication for addressed to the defendant, or

---

[4] "'[C]ontents', when used with respect to any . . . electronic communication, includes any information concerning the substance, purport, or meaning of that communication." *Id.*, § 2510.

[5] The terms "addressee," "intended recipient" and "originator" are not defined for the purposes of the statute. The court gives them their plain meanings.

Commonwealth v. Shaun McCarthy, Docket No. 1059CR2265

3

which the defendant was intended to receive.[6] Likewise, the statute permits Facebook to release the content of a communication if provided with the consent of the "originator"[7] of that communication.[8]

    2.    <u>Voluntary disclosure of non-content information.</u>

While the SCA forbids a provider of ECS or RCS to disclose "a record or other information pertaining to a subscriber of such service" to a "governmental entity," *id.*, § 2703(a)(3), it permits, without further restriction, the provider's voluntary disclosure of this non-content information "with the lawful consent of the customer or subscriber," *id.*, § 2703(c)(2), and separately, "to any person other than a governmental entity." *Id.*, § 2702(c)(6). The SCA does not prohibit Facebook from disclosing non-content subscriber information to the defendant.

    3.    <u>Compelled disclosure of content and non-content information.</u>

Section 2703 of the statute addresses "required disclosure of customer communications or records." Under this section, only a "governmental entity"[9] may "require" disclosure of the

---

[6] To the court's knowledge, the defendant has not yet provided Facebook with "lawful consent" for disclosure to him of the content of any communications addressed to him or which he was the intended recipient. Provided with that information, Facebook "may" release the content of such communications to the defendant. Although Facebook indicates its preference to have the consent of both originator and intended recipient of a given communication before disclosing such a communication, the statute does not appear to require this belt-and-suspenders approach.

[7] This term is not defined for the purposes of the statute. The court notes, however, that in opting not to use terms like "user," defined as "any person or entity who – (A) uses an electronic communication service; and (B) is duly authorized by the provider of such service to engage in such use," 18 U.S.C. § 2510(13), the statute's drafters may have intended to allow a provider to disclose content with the consent of the person from whose account the communication began, regardless of whether that person was the actual author or sender of the communication.

[8] The defendant has likewise not obtained Mr. Smith's "lawful consent" to Facebook's release of the content of any messages originating with him, or, with respect to RCS, coming from an account or service for which he was or is the subscriber. While Mr. Smith may not be willing provide such consent on a voluntary basis, the defendant is able to seek a court order compelling Mr. Smith to authorize release of the information. *See, e.g., Commonwealth v. Burgess*, 426 Mass. 206 (1997)(affirming Superior Court order compelling defendants in insurance fraud prosecution to execute form authorizing release of defendants' IRS tax records).

[9] "[T]he term 'governmental entity' means a department or agency of the United States or any State or political subdivision thereof." 18 U.S.C. § 2711(4).

<u>Commonwealth v. Shaun McCarthy</u>, Docket No. 1059CR2265

4

content of communications or of non-content information. As neither the defendant nor this court is a "governmental agency" as that term is defined for the purposes of the statute, the terms of the statute do not permit Facebook to comply with this court's order to produce the records that the defendant seeks.

      B.    Availability of information from sources other than Facebook.

Facebook argues that the information the defendant seeks from Facebook is available from Mr. Smith. Although the court accepts Facebook's representation that Mr. Smith's account "appears to be active," the court has no way of determining the significance of that fact. While the court presumes that the user of an "active" account is able to obtain at least some current non-content information about his or her own account, that fact has not been established here. The court is completely without a basis to determine whether past information – whether the information includes the content of communications or is of the non-content variety – is archived in some way by Facebook; if so, the court does not have any sense of whether a user with an active account could access past user settings, messages, notes, postings, or any other information implicating the user's individual account. On the information available to the court, Facebook's argument that it should be excused from producing the information sought by the defendant on the grounds that that information is available from other sources is not compelling.

Likewise, Facebook's argument that providing the requested information would be unduly burdensome is not especially persuasive. The time frame identified by the defendant is limited. Given that the SCA prohibits disclosure of the content of Mr. Smith's communications without the consent of the intended recipient of each communication, or of Mr. Smith, it is reasonable to assume that the defendant intends to limit any request for content to those communications between himself and Mr. Smith, and perhaps with the few other addressees of Mr. Smith's communications who could be persuaded to provide consent for disclosure of the content, or whom the defendant could persuade the court to order to provide such consent. The non-content information would likely be limited to that maintained for Mr. Smith's account. The court has difficulty crediting any argument by Facebook that disclosure on this scale would be unreasonably burdensome.

      C.    Defendant's constitutional argument.

The defendant's argument that the Sixth and Fourteenth Amendments to the United States Constitution, and Article XII of the Massachusetts Declaration of Rights, demand that Facebook comply with the court's order to produce the information at issue is not, at this point, necessary to decide.

As the defendant makes clear, his challenge in this case is not the facial constitutionality of the SCA, but rather that Facebook's failure to comply with this court's order deprives the defendant of constitutional rights. Facebook is not permitted to divulge the information at issue in response to this court's order. It is permitted, however, to disclose the content of the subject communications to the defendant if provided with the consent of the addressee or intended recipient of each communication, and/or the consent of the originator of the communication. It is likewise permitted to release account and other information with the consent of the customer or

Commonwealth v. Shaun McCarthy, Docket No. 1059CR2265

account holder. To this point, the defendant has not pursued the routes available under the SCA to permit Facebook to provide the information sought. Because Facebook has left open the possibility that it will provide the defendant with the information he seeks if the defendant provides the necessary consent, the court cannot say that Facebook is denying the defendant access to exculpatory information, or otherwise acting in a way that violates the defendant's rights. If, provided with the lawful consent required under the statute, Facebook still declines to produce the information it is permitted to disclose or divulge, the defendant's argument would become significantly more persuasive.

D. Facebook's ability to authenticate records.

Facebook's claim that it is not the appropriate party to authenticate the records sought by the defendant is questionable. Given Mr. Smith's testimony denying that he sent any of the messages, and stating that the account was "closed" at the time the messages appear to have been sent, it is not likely that Mr. Smith will authenticate any of the information at issue. Even if that were not the case, at least some of the messages are threats,[10] making it likely that the defendant

---

[10]"The statements from the Facebook account of Jared Smith to the Defendant's Facebook account include:

  a. "so you tryin to meet up soon or what mafucka;"

  b. "i was deemed a menasice to society when I waz 16 . . don't play cards w/me . . . but you damn wrong to think I ain't gunna catch you alone bitch;"

  c. "best believe ive got new heat since 3rd home;"

  d. "im coming for you and the day I find your is the day I ern my 2nd tear bitch;"

  e. "i don't care what you have to say . . . no matter what, when I catch you . . . you fuckin endin kid;"

  f. "i been to jail . . . . ive been in an gang I sell drugs like it what im made for . . . best believe I got a brandy new 39 with ny name on it . . . and act like I aint comin to you bitch weither you fucked up or w.e. or made a mistake or if I was out of line . . . you just so happen to fuck with all the hood rats, guns, drugs, and people on my side . . . you a dead man white boy . . . go ahead and print this shit . . . . i was spose to go to jail for 5 years back in '06 . . . bitch I was out in 07 . . . that was my first murder . . . you the second mafucka;"

  g. "small fee and I can make it so all this don't go to supreme court."

Commonwealth v. Shaun McCarthy, Docket No. 1059CR2265

has and would exercise a privilege against self-incrimination. Mr. Smith is unlikely to be willing to authenticate any of the information in question on a voluntary basis; the court is unlikely to be in a position to require him to do so involuntarily.

The defendant presumably could testify that he received certain messages through his Facebook account, and that each message was attributed to a particular sender. That testimony, however, would not render the information admissible. *See Commonwealth v. Williams*, 456 Mass. 857 (2010)("Analogizing a Myspace Web page to a telephone call, a witness's testimony that he or she has received an incoming call form a person claiming to be 'A,' without more, is insufficient evidence to admit the call as a conversation with 'A.'" (quoting *Commonwealth v. Hartford*, 346 Mass. 482, 488 (1963)).[11]

### E. *Dwyer* concerns.

The court erred in hearing the defendant's motion for production of records without notice to Facebook or to Mr. Smith. The issue of notice as to Facebook is, at this point, moot. Mr. Smith, however, is entitled to be heard on the defendant's motion for production of the Facebook records.

### F. Contempt as to Facebook.

The motion for contempt, and for sanctions, against Facebook and/or its counsel is denied.

### G. Contempt as to the defendant.

The motion for contempt, and for sanctions, against the defendant and/or his counsel is denied.

---

Bergeron Affidavit, ¶ 8.

[11]Facebook's argument that it is unable to authenticate the "provenance" of particular communications is certainly correct to the extent that Facebook contends that it cannot prove that Mr. Smith, and not another typist, was responsible for composing and transmitting particular communications. What the court presumes that Facebook could do, however, is, for example, provide evidence on points including whether a given message was sent from a given account, or whether a given account was capable of being used to send or receive communications on a particular date.

Commonwealth v. Shaun McCarthy, Docket No. 1059CR2265

III. Order.

The motion to quash the subpoena is ALLOWED. The motion is, however, allowed without prejudice to:

    A. the defendant's making further efforts, consistent with the applicable law and rules, including the SCA, to request that Facebook voluntarily produce the content of any communication addressed to or intended to be received by the defendant;

    B. the defendant's moving to compel Mr. Smith and/or other individuals to authorize Facebook to release the substance of communications from his/her/their Facebook account(s), and/or information relating to that/those account(s); or,

    C. the defendant's taking any other steps, consistent with the applicable law and rules, to obtain from Facebook the information sought through the order and subpoena at issue.

Both the defendant's and Facebook's motions for contempt and sanctions are DENIED.

So ordered.

DATED: September 13, 2011

Kathryn E. Hand
Associate Justice

Commonwealth v. Shaun McCarthy, Docket No. 1059CR2265

8