Cbs1mer1

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4              v.                              11 CR 576 (WHP)

5    JOSHUA MEREGILDO, MELVIN
     COLON, EARL PIERCE, and
6    NOLBERT MIRANDA,

7              Defendants.

8    ------------------------------x

9                                             New York, N.Y.
                                              November 28, 2012
10                                            9:56 a.m.

11

     Before:
12
                    HON. WILLIAM H. PAULEY III,
13
                                              District Judge
14

15                        APPEARANCES

16   PREET BHARARA
          United States Attorney for the
17        Southern District of New York
     NOLA HELLER
18   ADAM FEE
     SANTOSH ARAVIND
19        Assistant United States Attorneys

20

     WINSTON LEE
21   YING STAFFORD
          Attorneys for Defendant Meregildo
22
     MITCHELL DINNERSTEIN
23   ANTHONY CECUTTI
          Attorneys for Defendant Colon
24
     FLORIAN MIEDEL
25   AARON MYSLIWIEC
          Attorneys for Defendant Pierce

Cbs1mer1

APPEARANCES (Continued)


GARY BECKER
ALEX LESMAN
        Attorneys for Defendant Miranda

ALSO PRESENT:
Paralegal Specialist Darci Brady

Cbs1mer1

1          (Trial resumed)

2          (In open court; jury not present)

3          THE COURT:  All right.  Good morning to everyone.

4          Overnight I received an e-mail submission from

5     Mr. Becker and a letter from Mr. Lee following up on the

6     discussion that we had yesterday at the conclusion of closing

7     arguments.

8          First, with respect to Mr. Lee's application, after

9     reviewing the transcript and considering his application, I

10    think I'm going to deny his motion for a mistrial, but I am

11    going to give the jury a curative instruction.  Mr. Lee, I

12    propose to tell the jury the following:

13         During her rebuttal, Ms. Heller stated that the cell

14    site evidence put Mr. Meregildo at the scene of the crime.  I

15    instruct you that if you credit the testimony of Special Agent

16    Perry, the cell site records show only that Mr. Meregildo's

17    cellular telephone was in the coverage area of the cell tower

18    at the time the calls were placed.

19         MR. LEE:  Your Honor, that's fine with us.  Thank you.

20         THE COURT:  All right.  Now turning to Mr. Becker's

21    argument concerning his request for a mistrial or curative

22    instruction based on portions of the government's summation and

23    rebuttal summation.  Specifically, Miranda alleges that

24    comments by the government, arguing that he was a member of the

25    Courtlandt Avenue Crew, impermissibly amended the indictment or

Cbs1mer1

constituted a variance in the government's theory of proof.
But Miranda is charged with both the narcotics and racketeering
conspiracies, and the argument that Miranda is a part of the
Courtlandt Avenue Crew is consistent with those charges.  Thus,
the government's arguments were proper.  Evidence and argument
that Miranda was a critical member of the drug business for the
Courtlandt Avenue Crew, that he didn't sell for T-Money, and
instead went in on purchases with him, that he used the crew's
dealers to make money, and that he was part of the crew for the
drug conspiracy, to name just a few examples that Mr. Becker
cited in his e-mail to the court, are entirely proper and
consistent with both the indictment and this court's charge to
the jury.  So Mr. Miranda's application is denied.

MR. BECKER:  Your Honor, if I may just briefly remark
on the court's ruling.

Count One of the indictment, which is, of course, the
substantive racketeering count, charges three of the four
defendants in this case with being members of the enterprise.
It does not charge Mr. Miranda with being a member of the
enterprise.

Count Two, which is the racketeering conspiracy,
nowhere contains the word "member," I don't believe.  He's not
charged with being a member of this enterprise.

Not only did the government tell the jury that he was
a member of this enterprise, the Courtlandt Avenue Crew, the

Cbs1mer1

enterprise identified in the indictment; he told the jury that

Mr. Miranda was a crucial member of the enterprise.  That is

inaccurate as a matter of fact and it's inaccurate as a matter

of law, because the grand jury didn't charge him with being a

member of the enterprise.  No one listening to that summation

could conclude anything other than that Mr. Miranda, like his

co-defendants, were members of the enterprise.  And indeed,

Mr. Fee said -- and this is not only improper because he's not

charged, but I think it constitutes an amendment of the

indictment -- that Mr. Miranda was one half of the enterprise,

the older men were one half, T-Money, Miranda and Pierce were

one half.  They supplied the drugs to the foot soldiers.

That's not anywhere in the indictment, Judge, and we moved for

a bill of particulars, I believe, and it was denied.

            And what Ms. Heller did, respectfully, that I think

was most improper -- and it really put a pointed dagger into my

whole defense, improperly, was that she told the jury that,

notwithstanding what Mr. Becker said, what Mr. Miranda did and

what was the common purpose -- and this is at page 6181.  "They

all wanted to get together on their turf, exclusive turf, and

sell drugs and make money.  That was their common purpose."

That's at 6181, lines 16 to 19.  "That was their common

purpose.  This is not T-Money's band.  It was all their band."

What she was saying to the jury is that if you're out on

Courtlandt Avenue and your goal is to make money, then you're

Cbs1mer1

 1    part of this conspiracy.  That's the only fair reading of it,

 2    Judge, and that is outrageous.  That's not what this conspiracy

 3    is.  Every -- there's evidence galore in this case that this

 4    indictment was about a crew that T-Money put together and they

 5    worked for him on a contingent basis, they had an exclusive

 6    arrangement, and I suggest to you that the reason the

 7    government didn't charge Mr. Miranda in Count One is because

 8    it's clear from the evidence that he was not part of that crew.

 9    Anthony Crocker said he was competition.  Competition.  Now to

10    the extent that he somehow aided the crew or assisted them or

11    did anything that the government says made him part of the

12    conspiracy, that's one thing, but to say, as Mr. Fee did, that

13    he was a crucial member of the enterprise and for Ms. Heller to

14    say that the conspiracy is not what Mr. Becker said but rather,

15    if you're out there on Courtlandt Avenue trying to make money,

16    you're part of the conspiracy, you're -- the court admonished

17    the government the other day that that's not the conspiracy.

18    And yet that's what Ms. Heller argued.

19           So if the court is not going to grant a mistrial, I

20    respectfully submit and request that there be a curative -- two

21    curative instructions.  One, that Mr. Fee told you that -- in

22    words to this effect:  Mr. Fee told you in his opening that

23    Mr. Miranda was a member of the enterprise, indeed as a crucial

24    member, and I instruct you that Mr. Miranda is not charged with

25    being a member of the enterprise.  The members of the

Cbs1mer1

enterprise are charged in Count One.  Further, ladies and

gentlemen of the jury, Ms. Heller told you that the conspiracy

in this case is, if you're out there on the streets of

Courtlandt area selling drugs, you're a member of the

conspiracy, and that is an inaccurate statement of law.

MR. FEE:  Your Honor, I think, given your ruling,

there really isn't much of a response required, but Mr. Becker,

respectfully, has grossly mischaracterized what was actually

said to this jury.  I'll quote Mr. Becker's leading example in

his e-mail, which your Honor addressed, before he stood up and

spoke.  Mr. Becker writes:  "In at least one instance at

page 5848, line 19, Mr. Fee stated that Mr. Miranda was a

'critical member' of the charged criminal enterprise."  That's

what Mr. Becker says.

I will read from the record at the portion he cites,

but I'll read the full sentence:

"Earl Pierce and Nolbert Miranda --" this is during

the summation "-- became critical members of this booming drug

business."  He was not called a member of the enterprise at any

point during the summation.

Every single cite, as your Honor touched on, was

talking about the drug conspiracy, the racketeering conspiracy.

Your Honor, I concluded -- and quite frankly, I'm surprised to

hear from Mr. Becker on this point because we were attentive to

this issue, we knew Mr. Becker was going to be attentive to the

Cbs1mer1

1    issue, the court has been attentive to this issue.  I

2    concluded -- really the only law I did in the summation,

3    page 5905, beginning at line 8 -- I won't read all of it, but I

4    say, "Let's turn to the racketeering and the racketeering

5    conspiracy counts.  For Count One -- that's the substantive

6    racketeering count -- you have to find that Meregildo, Colon,

7    and Pierce -- those three defendants are charged in that

8    count."  Then Mr. Becker objects.  After he objects, I clarify

9    again:  "The murders and assaults and attempted murders charged

10   against Pierce, Meregildo, and Colon are also predicated acts

11   relating to those defendants."

12         5906:  "Count Two is a racketeering conspiracy, and

13   for this you have to find that Meregildo, Colon, Pierce, and

14   Miranda each agreed to participate."

15         And your Honor, I went cite by cite through what

16   Mr. Becker cited in his letter.  He was never called a member.

17   It's simply -- it's borderline frivolous, the request he's

18   making.

19         MR. BECKER:  Your Honor, respectfully, if Mr. Fee

20   would -- if I may read one paragraph, because it's critical for

21   the record.

22         THE COURT:  You may read it, but then you're going to

23   conclude because --

24         MR. BECKER:  Of course, your Honor.  Of course, your

25   Honor.  And what I was respectfully saying is that it is the

Cbs1mer1

1    government that has misstated the record.

2            This is at 5847, beginning line 12:  "As you know,

3    this case is about the Courtlandt Avenue Crew."  And I'll pause

4    now and just remind the court that that's the charge they're

5    talking about.  "That's what it's called in the indictment."

6    I'm reading again now.  I'm quoting.  "That's what it's called

7    in the indictment, but it never had just one name on the

8    street.  At its core, the core of the enterprise, at its core,

9    at its essence, this crew is made up of two parts.  First, it

10   was made up of grown men on Courtlandt Avenue, older, more

11   experienced drug dealers, men like T-Money, Terry Harrison, men

12   like Earl Pierce and Nolbert Miranda."  So right there he's

13   telling the jury that Mr. Miranda is at the core of this

14   enterprise.

15           He then goes on to say:  "These older men supplied

16   drugs to young dealers on Courtlandt Avenue, took back profits

17   from the drug sales, and sometimes got involved in firearms or

18   violence when the business was threatened.  The second piece of

19   the Courtlandt Avenue Crew was a gang made up of younger men on

20   Courtlandt Avenue.  This was GFC, then it became OGFC, or OG,

21   as you've heard.  First, the GFC gang members were the foot

22   solders."  He goes on to say that "they did the hand-to-hand

23   sales of drugs on the street, they committed shootings at rival

24   gang members, and they sometimes committed murder at the

25   request of the older men in this crew," who he just identified

Cbs1mer1

1   as Nolbert Miranda.

2           Now if that isn't putting him into the enterprise, as

3   charged in Count One, I don't know what is.  It just defies

4   credulity to argue otherwise, Judge.  You know, for Mr. Fee to

5   point:  Well, I told him he's not charged in Count One, he's

6   charged in Count Two, that's legalese.  This is plain English,

7   what I just read, plain English.  And we can stick our heads in

8   the sand, respectfully, and make believe he didn't say it.  I

9   read verbatim, and I defy anyone to say that he wasn't arguing

10  right there that Mr. Miranda was a member of the enterprise.

11  And he's not charged with that, Judge.  And so I renew my

12  application.

13          MR. FEE:  Your Honor, just briefly, that's

14  appropriate.  He's an associate of this racketeering

15  enterprise.  He's charged as being a conspirator in the

16  enterprise.  There's nothing in there that's inappropriate, and

17  if it was so obvious, Mr. Becker never objected, didn't object

18  afterwards, didn't object until -- in fact, he didn't even

19  object to that portion after Ms. Heller's rebuttal when he

20  first raised this type of argument.  It was only in his e-mail

21  and really today when he articulates this.  Your Honor, we

22  don't think there's any basis for an instruction at this point.

23          THE COURT:  All right.  The defendant Miranda's

24  application for a curative instruction or a mistrial is again

25  denied.

Cbs1mer1

1          Now I want to turn to two quick things before I bring

2     the jury out.

3          First, the exhibit list.  The master exhibit list was

4     handed up to me, and I presume that all counsel have reviewed

5     it.  In my view, at a bare minimum, the exhibit list should

6     reflect a particular exhibit was a photo.

7          So for example, Exhibit 11, Kevin Pinero.  Now let's

8     be a little more descriptive, okay?

9          Second, if it's a photo, it should be identified as a

10    photo.  If it's a surveillance video, some reference to the

11    location should be indicated.  Exhibits 516 through 529,

12    location photos.  Bullets.  How about a caliber?  Lab report,

13    620.  What lab report?  1200, we know what Exhibit 1200 is.

14    We've seen it about a hundred times.  But how about, for the

15    sake of the jury, something other than map blowup.  It's an

16    aerial photograph of the certain places of the Jackson Houses.

17         And then defendant's exhibits, photographs.  Are these

18    the basketball team photographs?  Some description.  I think

19    that can easily be done.

20         MR. BECKER:  Your Honor, yes.  I agree with what your

21    Honor said, and I had briefly discussed identifying one or more

22    of the photographs with the government.  I guess it didn't get

23    solidified.  They should all be identified as to what the

24    photographs are.

25         I respectfully request as well, with respect to the

Cbs1mer1

1   defense exhibits, 3534K and 3530S are identified as proffer

2   agreements.  It should be of which cooperator.

3               THE COURT:  Of course.

4               MR. BECKER:  And --

5               THE COURT:  3522A, report.

6               MR. BECKER:  Yes.  It should be -- I'm sure the

7   government and the defense will work it out.

8               THE COURT:  Right.  Let's just make it a little more

9   descriptive.

10              MR. BECKER:  Yes.

11              Same with Defense Exhibit --

12              THE COURT:  The ones I gave were only emblematic,

13  okay?

14              MR. BECKER:  Examples.  Okay.  Thank you.

15              THE COURT:  Now, you know, I'm not going to exercise

16  my discretion and experiment by offering the chart that I

17  proposed yesterday because the government objects to them.

18  We'll see what happens during the course of deliberations.  But

19  I want the record to be clear that I tried to come up with

20  something that would be instructive to the jury.  Given the

21  fact that the jury charge currently stands 25,878 words, it's

22  nearly the size of Deuteronomy, from which the oath of a

23  federal judge is derived.  And it's longer than virtually

24  almost every book in the Bible.  It's one and a half times

25  longer than the Book of Job.

Cbs1mer1

1          MR. BECKER:  Your Honor --

2          THE COURT:  And it would have been much longer had I

3  accepted all of the proposals from the government and defense

4  counsel.

5          MR. BECKER:  Your Honor, every ruling that the court

6  has made in this case was made after considering the views of

7  the government and the defense.  There was never a requirement

8  that the government and the defense be in accord before the

9  court ruled as to what it thought was appropriate.  The defense

10  here -- I'm sure I'll be corrected if I'm mistaken.  The

11  defense here endorses the court's flow charts and believes they

12  should be presented, and I respectfully suggest that the

13  government's agreement should not be required.

14          THE COURT:  It's not required.

15          MR. BECKER:  Well, I understand, your Honor's

16  discretion --

17          THE COURT:  But caution is the best avenue for a

18  court, especially given the fact that this trial consumed eight

19  weeks.  If it was a one-week trial, I'd just take the gamble.

20  And quite frankly, we'll see what kind of notes we receive from

21  the jury, because we may be right back to resorting to the

22  charts later.

23          So are there any other issues before I bring the jury

24  out and begin reading what, under conventional writing

25  standards, is beyond a short story and into the range of a

Cbs1mer1

1    novel?  It only takes 25,000 words to have a novel.

2              MR. BECKER:  One issue.  Page 5 of the verdict sheet.

3    It is item 13.2.

4              THE COURT:  Go ahead.

5              MR. BECKER:  And that asks the jury, assuming they

6    found the defendant they're considering guilty of Count

7    Thirteen, the defendant, to be found guilty of Thirteen, had to

8    either have personal involvement with or it was reasonably

9    foreseeable to him that the narcotics conspiracy involved crack

10    cocaine.  I request that rather than say "have personal

11    involvement with," because if you're in a conspiracy, you have

12    personal involvement with the conduct, arguably, and the jury

13    might believe that, if you say "personally distributed or it

14    was reasonably foreseeable to him that the narcotics conspiracy

15    involved crack cocaine."  So either he's accountable for his

16    own conduct, his own distribution, or whatever was reasonably

17    foreseeable to him that was involved in the narcotics

18    conspiracy.

19              MR. MIEDEL:  Your Honor, for some reason we don't seem

20    to have the most recent version of the verdict sheet.  I'm just

21    wondering if we could get a copy of it.

22              MR. BECKER:  And your Honor, the request that I made I

23    see is actually -- has equal applicability to 13.1 as well as

24    13.2.

25              THE COURT:  What's the government's view?

Cbs1mer1

1          MS. HELLER:  We're just looking at the language in the

2   charge.

3          Your Honor, we oppose that.  Changing involvement in

4   distribution is too narrow a change.  You can have personal --

5   you can participate in a conspiracy if you keep drugs in your

6   house for members of the conspiracy or even if you keep guns in

7   your house for members of the conspiracy and not distribute the

8   drugs.  So we think it's perfect as it is.

9          MR. BECKER:  But your Honor, that's my point.  The

10  second portion talks about being held accountable as a

11  conspirator for the conduct of co-conspirators provided it was

12  reasonably foreseeable, and I don't object to that because

13  that's an accurate statement of the law, but the need -- the

14  court here is obviously trying to differentiate between two

15  bases by which they may hold them accountable for the amount.

16  One is if he personally sells it, the other is if he doesn't

17  personally sell it but it was reasonably foreseeable to -- he

18  was a member of the conspiracy and it was reasonably

19  foreseeable to him that the conspiracy involved that amount.

20  That's all I'm asking for.

21         MS. HELLER:  Distribution does not -- it's also

22  possess with intent to distribute.  Involvement encapsulates

23  both of the parts of the charged offense.  We think it should

24  be involvement.

25         MR. BECKER:  Fine.  So personally distributed or

Cbs1mer1

1    possessed with intent to distribute that amount or it was

2    reasonably foreseeable.  I just want the two concepts to be

3    made more appropriately distinct.

4            THE COURT:  I'll think about it.  We'll be taking a

5    recess before we get to the verdict sheet.

6            MR. BECKER:  All right.  Fine.

7            THE COURT:  Anything else?

8            MR. FEE:  Just briefly, your Honor, the exhibit list,

9    which we need to revise, is it your intention to hand that to

10   the jury immediately after the charge or will we have some

11   time?

12           THE COURT:  You'll have some time.

13           MR. FEE:  Thank you, your Honor.

14           THE COURT:  All right.  Let's bring in the jury.

15           MS. HELLER:  Your Honor, if anyone needs to use the

16   facilities during the charge, are we free to leave to do that

17   or not?

18           THE COURT:  We're going to take a break.

19           MS. HELLER:  I know.  I just am not sure if I

20   personally may be able to --

21           THE COURT:  If you need to step out, you can.

22           MS. HELLER:  Thank you, your Honor.

23           (Jury present)

24           THE COURT:  Good morning, members of the jury.

25           THE JURORS:  Good morning, Judge.

Cbs1mer1

1            THE COURT:  Members of the jury, thanks once again for

2    your punctuality.  I'm sorry that we're starting a little bit

3    late.  All the blame is mine.  It has nothing to do with

4    counsel or the parties, so don't fault them.

5            Before I turn to my final instructions on the law,

6    yesterday you heard the concluding day of closing arguments,

7    and during her rebuttal, Ms. Heller stated that the cell site

8    evidence put Mr. Meregildo at the scene of the crime.  I

9    instruct you that if you credit the testimony of Special Agent

10   Perry, the cell site records show only that Mr. Meregildo's

11   cellular telephone was in the coverage area of the cell tower

12   at the time the calls were placed.  And of course, I reiterate

13   to you, as I have on a number of occasions, that closing

14   arguments are not evidence.  They're argument.

15           Now at this time I'm going to ask my deputy to

16   distribute to each of you a binder that contains a copy of the

17   charge.

18            (Continued on next page)

19

20

21

22

23

24

25

CBS3MER2                        Jury Charge

1          THE COURT:  You may open your binders.  There is a

2    table of contents in the front.  That is only an aid for you

3    later, because I will permit you to take the copy of the charge

4    into the jury room with you to have during your deliberations.

5          Please, do not turn ahead in the charge as I read it

6    or look at anything else that may be in the binder.

7          So members of the jury -- I'm now at page two of the

8    charge.  Members of the jury, my charge to you on the law is

9    lengthy and covers many points.  Some people find it easier to

10   understand something if they can read along.  So each of you

11   has your own copy if you would like to follow along.  In any

12   event, you must listen closely as I read the charge.

13         We're now approaching the most important part of this

14   case, your deliberations.  You've heard all the evidence in the

15   case as well as the final arguments of the lawyers for the

16   parties.  Before you retire to deliberate, it is my duty to

17   instruct you as to the law.  It is your duty to accept these

18   instructions of law and apply them to the facts as you

19   determine them.

20         Regardless of any opinion that you may have as to what

21   the law may be or ought to be, it's your sworn duty to follow

22   the law as I give it to you.  If any attorney has stated a

23   legal principle different from any that I state to you in my

24   instructions, it is my instructions that you must follow.

25         In listening to these instructions now and reviewing

CBS3MER2                    Jury Charge

1    them later, you should not single out any particular

2    instruction as alone stating the law, but you should instead

3    consider my instructions as a whole.

4          Your duty is to decide the fact issues in the case.

5    You are the sole and exclusive judges of the facts. You pass

6    upon the weight of the evidence, you determine the credibility

7    of the witnesses, you resolve such conflicts as there may be in

8    the testimony, and you draw whatever reasonable inferences you

9    decide to draw from the facts that you determine them.

10         In determining the facts, you must rely on your own

11   recollection of the evidence. None of what the lawyers have

12   said in their opening statements, in their closing arguments,

13   or through their objections is evidence. You should bear in

14   mind particularly that a question put to a witness or a comment

15   made to a witness is never evidence. It is only the answer in

16   the context of the question that is evidence. You may not

17   consider any answer that I directed you to disregard.

18         I remind you that nothing I've said during the trial

19   or will say during these instructions is evidence. Similarly,

20   the rulings I've made during the trial are not any indication

21   of my views of what your decision should be.

22         Now, the law presumes a defendant to be innocent of

23   all the charge against him. This presumption of innocence

24   alone is sufficient to acquit a defendant. The defendants,

25   Joshua Meregildo, Melvin Colon, Earl Pierce, and Nolbert

1    Miranda, have each pleaded not guilty to the charges.  As a

2    result of each of their pleas of not guilty, the burden is on

3    the government to prove guilt beyond a reasonable doubt.  This

4    presumption was with each defendant when the trial began, it is

5    with them now, and it remains with them throughout your

6    deliberations until such time, if ever, after a careful and

7    impartial consideration of all the evidence in this case, you

8    are convinced that the government has proved each defendant

9    guilty beyond a reasonable doubt.  The burden never shifts to a

10   defendant for the simple reason that the law never imposes on a

11   defendant in a criminal case the burden or duty of testifying

12   or calling any witness or locating or producing any evidence.

13         Now, I've said that the government must prove a

14   defendant guilty beyond a reasonable doubt.  The question

15   naturally arises, what is a reasonable doubt?  The words almost

16   define themselves.  It is a doubt based in reason and arising

17   out of the evidence in the case, or the lack of evidence.  It

18   is a doubt that a reasonable person has after carefully

19   weighing all of the evidence in the case.

20         Reasonable doubt is a doubt that appeals to your

21   reason, your judgment, your experience and your common sense.

22   If, after a faithful and impartial consideration of all the

23   evidence, you can candidly and honestly say that you were not

24   satisfied with the guilt of a defendant, that you do not have

25   an abiding and firm belief of the defendant's guilt; in other

CBS3MER2                    Jury Charge

words, if you have such a doubt as would reasonably cause a

prudent person to hesitate to act in a matter of importance in

his or her own affairs, then you have a reasonable doubt. And

in that circumstance, it is your duty to acquit.

On the other hand, if, after a fair and impartial

consideration of all the evidence, you can candidly and

honestly say that you do have an abiding belief of the

defendant's guilt, a belief that a prudent person would be

willing to act on in a matter of importance in his or her own

affairs, then you have no reasonable doubt, and under such

circumstances, it is your duty to convict.

One final word on this subject: Reasonable doubt is

not whim or speculation. It is not an excuse to avoid the

performance of an unpleasant duty. Nor is it sympathy for one

party or the other. Beyond a reasonable doubt does not mean a

positive or mathematical certainty. The government has met its

burden if the guilt of the defendant is established beyond a

reasonable doubt, not beyond all possible doubt.

Now, the evidence in this case consists of the

testimony of the witnesses, the exhibits received in evidence,

and the stipulations between parties.

Exhibits that have been marked for identification but

not received may not be considered by you as evidence. Only

those exhibits received may be considered as evidence.

Similarly, you are to disregard any testimony that

CBS3MER2                    Jury Charge

1    I've stricken.

2           Anything you may have seen or heard about this case

3    outside the courtroom is not evidence and must be entirely

4    disregarded.

5           There are two types of evidence that you may consider

6    in reaching your verdict:  Direct evidence and circumstantial

7    evidence.  Direct evidence is evidence that proves a disputed

8    fact directly.  For example, where a witness testifies to what

9    he or she saw, heard, or did, that's called direct evidence.

10   Circumstantial evidence is evidence that tends to prove a

11   disputed fact by proof of other facts.

12          To give a simple example, you may remember the story

13   of Robinson Crusoe who was marooned on a deserted island.  He

14   spent years thinking he was alone until, one day, as he walked

15   along the beach, he noticed large footprints in the sand.

16   Because his feet were too small to have made them, Robinson

17   concluded that somebody else must have left the footprints even

18   though he had not seen anyone else.  In other words, he had no

19   direct evidence of that fact.  But it would be reasonable for

20   him to conclude from the footprints on the beach that in fact

21   he was not alone.

22          That's all there is to circumstantial evidence.  Using

23   your reason and experience, you infer from established facts

24   the existence or the non-existence of some other fact.

25          The law makes no distinction between direct and

circumstantial evidence.  Circumstantial evidence is of no less

value than direct evidence, and you can consider either or both

and can give them such weight as you conclude is warranted.

        In their arguments, the parties have asked you to

infer on the basis of your reason, experience, and common sense

from one or more established facts the existence of some other

fact.  The process of drawing inferences from facts in evidence

is not a matter of guesswork or speculation.  An inference is a

reasonable deduction or logical conclusion that you the jury

are permitted to draw, but not required to draw, from the facts

that have been established by either direct or circumstantial

evidence.  In drawing inferences, you should exercise your

common sense.

        In this case, you've heard evidence in the form of

stipulations.  A stipulation is an agreement among parties

that, if called, a witness would have given certain testimony.

You must accept as true the fact that the witness would have

given this testimony.  However, it is for you to determine the

effect to be given the testimony.

        You've also heard evidence in the form of stipulations

that contain facts that were agreed to be true.  In such cases,

you must accept those facts as true.

        During the trial, I permitted the taking of notes by

those of you who wish to do so.  At the time I pointed out

while I permitted the taking of notes, the court reporter takes

CBS3MER2                    Jury Charge

1    down everything that's said in the courtroom and will read it

2    back to you during your deliberations any portion of the

3    transcript that you may ask for.  I also advised you to be

4    careful, because taking notes presents the further problem that

5    doing so may divert your attention from some very important

6    testimony given while you are taking notes.

7            As to those jurors who did take notes during the

8    trial, I point out to you and your fellow jurors that notes are

9    simply an aid to memory for the particular juror who takes the

10   notes.  Therefore, I instruct you that your notes are only a

11   tool to aid your individual memory, and you should not compare

12   your notes with other jurors in determining the content of any

13   testimony or in evaluating the importance of any evidence.

14   Further, those jurors who did not take notes should rely on

15   their independent recollection of the evidence and not be

16   influenced by the fact that another juror has taken notes.

17   Your notes are not evidence, and are by no means a complete

18   outline of the proceedings or a list of the highlights of the

19   trial.

20           As you're considering the charges in the indictment,

21   let me instruct you that if a specific event is alleged to have

22   occurred on or about a certain date and the testimony or other

23   evidence indicates that in fact it occurred on another date,

24   that is permitted so long as there is a substantial similarity

25   between the dates alleged in the indictment and the dates

1   established by the testimony.

2           You had an opportunity to observe all of the

3   witnesses.  How do you evaluate the credibility of or

4   believability of those witnesses?  The answer is that you use

5   your common sense.  Was the witness candid, frank, and

6   forthright?  Or did the witness appear evasive as if he or she

7   was trying to hide something?

8           How much you choose to believe a witness may be

9   influenced by the witness's bias.  Does the witness have a

10  relationship with the government or a defendant that may affect

11  the witness's testimony?  Does the witness have some incentive,

12  loyalty or motive that might cause the witness to shade the

13  truth?  Or does the witness have some bias, prejudice or

14  hostility that may have caused the witness, consciously or not,

15  to give you something other than a completely accurate account

16  of the facts?

17          You are not required to accept testimony even though

18  the testimony is uncontradicted and the witness's testimony is

19  not challenged.  You may decide because of the witness's

20  bearing or demeanor or because of the inherent improbability of

21  the testimony or for other reasons that the testimony is not

22  worthy of belief.

23          If you find that a witness wilfully testified falsely,

24  that is always a matter of importance that you should weigh

25  carefully.  If you find that any witness has lied under oath,

CBS3MER2                    Jury Charge

1    you should view the testimony cautiously and weigh it with

2    great care.  It is, however, for you to determine how much of

3    the witness's testimony, if any, you wish to believe.

4         Thus, there is no magical formula by which you can

5    evaluate testimony.  You determine for yourself every day and

6    in a multitude of circumstances the reliability of statements

7    made to you by others.  You may consider the interest of any

8    witness in the outcome of this case, and this is true

9    regardless of who called or questioned the witness.

10        Indeed, the issue of credibility may, but need not, be

11   decided in an all-or-nothing fashion.  If you find that a

12   witness testified falsely in one part, you still may accept his

13   or her testimony in other parts, or you may disregard all of

14   it.  This is a determination entirely for you, the jury.

15        You've heard evidence that some of the witnesses made

16   statements on earlier occasions that counsel have argued are

17   inconsistent with the witness's testimony in this trial.

18   Evidence of a prior inconsistent statement is not to be

19   considered by you as affirmative evidence bearing on the guilt

20   or non-guilt of the defendant you are considering.  Rather,

21   evidence of a prior inconsistent statement was placed before

22   you for the limited purpose of helping you decide whether to

23   believe that trial testimony of the witness who may have

24   testified in a contradictory manner.  If you find that the

25   witness made an earlier statement that conflicts with his or

1    her trial testimony, you may consider that fact in deciding how

2    much of his or her trial testimony, if any, to believe.

3              Now, you may have heard evidence during this trial

4    that witnesses have discussed the facts of the case and their

5    testimony with the lawyers before the witness appeared in

6    court.  Although you may consider that fact when you are

7    evaluating a witness's credibility, I should tell you that

8    there is nothing either unusual or improper about a witness

9    meeting with lawyers before testifying so that the witness can

10   be aware of the subjects he will be questioned about, focus on

11   those subjects, and have the opportunity to review relevant

12   exhibits before being questioned about them.

13             Again, the weight you give to the fact or the nature

14   of the witness' preparation for his or her testimony and what

15   inferences you draw from such preparation are matters

16   completely within your discretion.

17             You've heard testimony of law enforcement witnesses.

18   The fact that a witness may be employed as a law enforcement

19   official or employee does not mean that his testimony deserves

20   more or less consideration or greater or lesser weight than

21   that of an ordinary witness.

22             In this context, defense counsel is allowed to try to

23   attack the credibility of such a witness on the ground that his

24   or her testimony may be colored by a personal or professional

25   interest in the outcome of the case.

CBS3MER2                        Jury Charge

1          It's your decision, after reviewing all the evidence,

2     whether to accept the testimony of a law enforcement witness,

3     as it is with every other type of witness, and to give to the

4     testimony the weight you find it deserves.

5          You've heard from witnesses who testified that they've

6     been involved in planning and carrying out certain of the

7     crimes charged in the indictment.  The government has argued,

8     as it is permitted to do, that it must take its witnesses as it

9     finds them, and that people who take part in criminal activity

10    may have the knowledge required to show criminal behavior by

11    others.  For those very reasons, the law allows the use of

12    cooperating witness testimony.  Indeed, it is the law in

13    federal courts that such testimony may be enough in itself for

14    conviction if the jury believes that the testimony establishes

15    guilt beyond a reasonable doubt.

16         However, because of the interest a cooperating witness

17    may have in testifying, his testimony should be scrutinized

18    with special care and caution.  You should scrutinize it

19    closely to determine whether it is colored in such a way as to

20    place guilt on a defendant to further the witness's own

21    interest.  The fact that a witness is a cooperator can be

22    considered by you as bearing on his credibility.  Like the

23    testimony of any other witness, cooperating witness testimony

24    should be given such weight as it deserves in light of the

25    facts and circumstances before you.  If you find that a witness

CBS3MER2                    Jury Charge

testified falsely in one part, you still may accept his

testimony in other parts or you may disregard all of it.

          You should ask yourselves whether a cooperating

witness would benefit more by lying or by telling the truth.

Did the witness believe that his interests would be best served

by testifying falsely, or by testifying truthfully?  Did this

motivation color his testimony?  If you find that the testimony

was false, you should reject it.  However, if you're satisfied

that the witness told the truth, you should accept it as

credible and act on it accordingly.

          Finally, you've heard testimony from cooperating

witnesses who have pleaded guilty to charges arising in part

out of the same facts that are at issue in this case.  Draw no

conclusions or inferences of any kind about the guilt of the

defendants on trial merely from the fact that a prosecution

witness pleaded guilty to similar charges.  That witness's

decision to plead guilty was a personal decision about his own

guilt.  It in no way changes the presumption of innocence that

applies to each defendant who is on trial here, a presumption

that remains with them throughout the trial and into your jury

deliberations, unless and until you conclude that the

government has proven a particular defendant's guilt by

competent evidence beyond a reasonable doubt.

          You've also heard testimony of a witness who testified

under a grant of immunity, which means that witness's testimony

may not be used against her in any criminal case except a

prosecution for perjury, or otherwise failing to comply with

the immunity order.  It is perfectly acceptable for the

government to request orders of immunity, and it is entitled to

call witnesses who are subject to these orders.  However, like

cooperating witness testimony, the testimony of a witness who

has been granted an order of immunity should be examined with

greater care than the testimony of an ordinary witness.  You

should scrutinize it closely to determine whether it is colored

in such a way as to place guilt on a defendant to further the

witness's own interests; for such a witness, confronted with

the realization that she can win her own freedom by helping to

convict another, has motive to falsify her testimony.  On the

other hand, if you believe it to be true and determine to

accept the testimony, you may grant it such weight, if any, as

you believe it deserves.

        You may not draw any inference, favorable or

unfavorable, from the fact that any person in addition to the

defendants is not on trial here.  You also may not speculate as

to the reasons why other persons are not on trial.  Those

matters are wholly outside your concern and have no bearing on

your function as jurors.

        You've heard testimony from expert witnesses in this

case.  An expert witness is a witness who, by education or

experience, has acquired learning or experience in a science or

CBS3MER2                      Jury Charge

1    a specialized area of knowledge.  Such a witness is permitted

2    to give his opinions as to relevant matters in which he

3    professes to be expert and give his reasons for that opinion.

4    Expert testimony is presented to you on the theory that someone

5    who is experienced in the field can assist you in understanding

6    the evidence or in reaching an independent decision on the

7    facts.

8            Your role in judging credibility applies to experts as

9    well as to other witnesses.  You should consider the expert

10   opinions and give them as much or as little weight as you think

11   they deserve.  If you should decide that the opinion of an

12   expert was not based on sufficient education or experience or

13   on sufficient data, or if you should conclude that the

14   trustworthiness or credibility of the witness is questionable

15   for any reason, or if his opinion was outweighed in your

16   judgment by other evidence in the case, then you may disregard

17   the opinion of the expert entirely or in part.

18           On the other hand, if you find that the opinion of an

19   expert is based on sufficient data, education, and experience,

20   and the other evidence does not give you reason to doubt his

21   conclusions, you would be justified in relying on such

22   testimony.

23           You've heard testimony regarding the use of

24   informants.  There is nothing wrong or illegal with the

25   government using these techniques.  The use of informants is

CBS3MER2                          Jury Charge

1    entirely lawful.  Whether or not you approve of the use of

2    informants to detect and investigate unlawful activity is not

3    to enter into your deliberations in any way.

4         You may have heard reference to the fact that certain

5    investigative techniques were not used by the government.

6    There is no legal requirement that the government prove its

7    case through any particular means.  While you are to carefully

8    consider the evidence adduced by the government, you are not to

9    speculate as to why it used the techniques it did, or why it

10   did not use other techniques.  Law enforcement techniques are

11   not your concern.  Your concern is to determine whether, on the

12   evidence or lack of evidence, a defendant's guilt has been

13   proven beyond a reasonable doubt.

14        You heard testimony in this case about the evidence

15   seized in connection with certain searches conducted by law

16   enforcement officers.  Evidence obtained from these searches

17   was properly admitted in this case and may be properly

18   considered by you.  Whether you approve or disapprove of how

19   the evidence was obtained should not enter into your

20   deliberations, because I instruct you that the government's use

21   of the evidence is entirely lawful.  You must, therefore,

22   regardless of your personal opinions, give this evidence full

23   consideration along with all the other evidence in the case in

24   determining whether the government has proven each defendant's

25   guilt beyond a reasonable doubt.

CBS3MER2                    Jury Charge

1           The fact that the prosecution is brought in the name

2  of the United States of America entitles the government to no

3  greater consideration than that accorded to any other party to

4  a case.  By the same token, the government's entitled to no

5  less consideration.  All parties, both the government and the

6  defendants, Joshua Meregildo, Melvin Colon, Earl Pierce, and

7  Nolbert Miranda, stand as equals at the bar of justice.

8           You may have heard the names of certain people during

9  the course of the trial who did not testify.  I instruct you

10  that each party had an equal opportunity or lack of opportunity

11  to call any of these witnesses.  Therefore, you should not draw

12  any inferences or reach any conclusions as to what they would

13  have testified had they been called.  Their absence should not

14  affect your judgment in any way.  I remind you that the law

15  does not impose on a defendant the burden or duty of calling

16  any witness or producing any evidence.

17          The defendants in this case did not testify.  Under

18  our Constitution, a defendant has no obligation to testify or

19  to present any evidence because it is the government's burden

20  to prove a defendant guilty beyond a reasonable doubt.  That

21  burden remains with the government throughout the entire trial,

22  and never shifts to a defendant.  A defendant is never required

23  to prove that he is not guilty.  You may not attach any

24  significance to the fact that a defendant did not testify.  You

25  may not draw any inference against a defendant because he did

CBS3MER2                    Jury Charge

1    not take the witness stand.  You may not consider this against

2    any of the defendants in any way in your deliberations in the

3    jury room.

4            Some of the exhibits that were admitted into evidence

5    were in the form of demonstrative exhibits, including some

6    diagrams and summaries.  These demonstratives were admitted in

7    place of or in addition to the underlying documents that they

8    represent to save time and avoid unnecessary inconvenience.

9    They are not themselves, however, direct evidence.  It is the

10   underlying evidence that determines what weight, if any, these

11   demonstratives deserve.  It is for you to decide whether they

12   correctly present the information contained in the testimony

13   and the exhibits on which they are based.  You're entitled to

14   consider them if you find that they assist you in analyzing and

15   understanding the evidence.

16           Some exhibits were redacted.  "Redacted" means that

17   part of the document was taken out.  You are to focus on those

18   portions of exhibits that have been admitted into evidence.

19   You should not consider any possible reason why parts of

20   exhibits were deleted or redacted.

21           There has been evidence that a defendant made certain

22   statements following his arrest.  As with all witness

23   testimony, it is for you to decide whether these statements

24   were made, and, if you conclude they were made, what weight to

25   give to those statements.  I instruct you that in making those

CBS3MER2                        Jury Charge

 1    decisions you are to consider all the evidence about the

 2    statement, including the circumstances under which it may have

 3    been made, and to give the statement whatever weight you feel,

 4    if any, it deserves under the circumstances.

 5             Whether you approve or disapprove of the taking or use

 6    of statements from arrested defendants may not enter your

 7    deliberations.  I instruct you that the government's use of

 8    this evidence is entirely lawful.

 9             The defendants, Joshua Meregildo, Melvin Colon, Earl

10    Pierce, and Nolbert Miranda, are formally charged in an

11    indictment.  As I instructed you at the outset of this case,

12    the indictment is a charge or accusation.  It is not evidence

13    or proof of the charge.  Before you begin your deliberations,

14    you will be provided with a copy of the indictment containing

15    the charges.

16             With every criminal charge there are certain basic

17    facts that the government must prove beyond a reasonable doubt

18    before a defendant may be found guilty.  These basic, necessary

19    facts are called elements of the offense.  I'm going to explain

20    to you first in general terms and then in detail what the

21    indictment charges against each defendant and what the

22    essential elements of the charges are.

23             The indictment in this case contains 22 counts.  There

24    are three groups of charges in the indictment -- narcotics

25    charges, firearms charges, and racketeering charges.  We will

CBS3MER2                     Jury Charge

turn first to the racketeering charges.  Count one charges

three defendants, Joshua Meregildo, Melvin Colon, and Earl

Pierce, with conducting and participating in a racketeering

enterprise referred to in the indictment as the Courtlandt

Avenue Crew through a pattern of racketeering activity.

Count two charges all of the defendants, Joshua

Meregildo, Melvin Colon, Earl Pierce, and Nolbert Miranda, with

conspiring to participate in a racketeering enterprise.

The indictment alleges that counts three through 12

were committed for the purpose of maintaining or increasing a

particular defendant's position in the racketeering enterprise

or for the promise of payment.

Specifically, counts three and four respectively

charge Earl Pierce with conspiring to murder rival narcotics

distributors and murdering Jason Correa on July 25, 2010.

Count five and six respectively charge Joshua Meregildo with

conspiring to murder Carrel Ogarro and murdering Carrel Ogarro

on July 31, 2010.  Count seven and eight respectively charge

Melvin Colon with conspiring to murder Delquan Alston and

murdering Delquan Alston on August 27, 2010.  Counts nine and

10 respectively charge Joshua Meregildo and Earl Pierce with

conspiring to murder rival drug distributors and the assault

and attempted murder of Tarean Joseph on September 13, 2010.

Counts 11 and 12 respectively charge Melvin Colon with

conspiring to murder rival gang members and the attempted

CBS3MER2                    Jury Charge

1    murder of a rival gang member and the assault of Jing Bao Jiang

2    on September 8, 2011.

3        The narcotics charges, narcotics-related charges begin

4    with count 13, which charges Joshua Meregildo, Melvin Colon,

5    Earl Pierce, and Nolbert Miranda with conspiring to distribute

6    or possess with intent to distribute crack cocaine and

7    marijuana.

8        The indictment alleges that counts 14 through 16 were

9    committed during the drug conspiracy charged in count 13.  As I

10   will explain to you later, you can only consider these charges

11   under certain circumstances.  Count 14 charges Earl Pierce with

12   murdering Jason Correa on July 25, 2010.  Count 15 charges

13   Joshua Meregildo with murdering Carrel Ogarro on July 31, 2010.

14   And count 16 charges Melvin Colon with murdering Delquan Alston

15   on August 27, 2010.

16       The firearms-related charges begin with count 17.

17   Again, you can only consider these charges under certain

18   circumstances that I will explain later.  Count 17 through

19   count 21 each allege firearm possession for crimes committed in

20   aid of the racketeering enterprise.  Count 22 alleges firearm

21   possession during and in furtherance of the narcotics

22   conspiracy.

23       Specifically, count 17 charges Earl Pierce with

24   possessing, carrying, or using a firearm to murder Jason Correa

25   or aiding and abetting the same.  Count 18 charges Joshua

CBS3MER2                    Jury Charge

Meregildo with possessing, carrying, or using a firearm to murder Carrel Ogarro, or aiding and abetting the same. Count 19 charges Melvin Colon with possessing, carrying, or using a firearm to murder Delquan Alston, or aiding and abetting the same. Count 20 charges Joshua Meregildo and Earl Pierce with possessing, carrying, or using firearms to commit the assault and attempted murder on September 13, 2010, or aiding and abetting the same. Count 21 charges Melvin Colon with possessing, carrying, or using firearms during and in relation to or in furtherance of the conspiracy to murder rival gang members charged in count 11. And count 22 charges Joshua Meregildo, Melvin Colon, Earl Pierce, and Nolbert Miranda with possessing, carrying, or using firearms during and in relation to or in furtherance of the narcotics conspiracy charged in count 13.

    To make my instructions on the law clear, I'm going to explain the law governing several of the charged crimes out of the order in which they appear in the indictment. I'm going to do this because several of the crimes bear on more than one count in the indictment. For example, the assault, attempted assault, and murder in aid of racketeering charges are charged as part of the illegal activity in racketeering counts one through five are predicate offenses to certain firearms charges. And are also charged as separate so-called substantive offenses.

1          Similarly, the narcotics conspiracy is charged as

2     count 13, but is also charged as part of the illegal activity

3     in racketeering act six, and is a predicate offense to certain

4     murder and firearms charges.  The crime of conspiracy is also

5     relevant to more than one count.  I'm therefore going to

6     instruct you on the law governing these crimes first, and

7     explain later how these basic definitions are to be applied by

8     you in your deliberations on the earlier counts to which they

9     are relevant.

10         The indictment names four defendants who are on trial

11    together.  Your verdict as to each defendant must be determined

12    separately with respect to him, and with respect to each

13    separate element of each separate charge against that

14    defendant, based solely on the evidence against him without

15    regard to the guilt or lack of guilt of anyone else.

16         In addition, some of the evidence in this case was

17    limited to one defendant or introduced for a limited purpose.

18    Let me emphasize that any evidence admitted solely against one

19    defendant may be considered only against that defendant and may

20    not in any respect enter into your deliberations on any other

21    defendant.  Also, any evidence admitted solely for a limited

22    purpose may be considered only for that purpose and may not in

23    any respect enter into your deliberations for any other

24    purpose.

25         The indictment charges three distinct murders.  The

murder of Jason Correa, Carrel Ogarro, and Delquan Alston.  The

government has brought murder charges under more than one

criminal statute or theory of criminal liability.  Similarly,

the government has brought firearms, assault, and attempted

murder charges under more than one criminal statute.  You will

need to consider each charge and each defendant to determine

whether the government has carried its burden of proof.  During

your deliberations, you must keep these charges distinct and

separate as to each defendant.  Each charge must be analyzed

independently, and unless I instruct you otherwise, should have

no bearing on any other charge.

        In connection with certain charges in the indictment,

which I'll discuss below, a defendant can be convicted under a

theory of criminal liability known as aiding and abetting

liability.  Under this theory, it is not necessary for the

government to show that a defendant himself personally

committed the crime charged for you to find him guilty.  This

is because a person who aids, abets, counsels, commands,

induces or procures the commission of a crime is just as guilty

of that offense as if he committed it himself.

        Accordingly, you may find a defendant guilty of the

offenses charged in counts four, six, eight, 10, 12, 14, 15,

16, 17, 18, 19, 20, 21, and 22 if you find beyond a reasonable

doubt that the government has proven that another person

actually committed the offense with which the defendant is

CBS3MER2                        Jury Charge

charged, and that the defendant aided, abetted, counseled,

commanded, induced or procured that person to commit the crime.

        As you can see, the first requirement is that you find

that another person has committed the crime charged.

Obviously, no one can be convicted of aiding and abetting the

criminal acts of another if no crime was committed by the other

person in the first place.  But if you do find that a crime was

committed, then you must consider whether the defendant you are

considering aided, abetted, counseled, commanded, induced or

procured the commission of the crime.  If any of these things

happened, we say that a person is an aider and abettor to the

crime.

        To aid or abet another to commit a crime, it is

necessary that the defendant wilfully and knowingly associated

himself in some way with the crime, and that he wilfully and

knowingly seek by some act to help make the crime succeed.

        Participation in the crime in question is willful if

action is taken voluntarily and intentionally and with the

specific intent to do something that the law forbids, or, in

the case of a failure to act, with the specific intent to fail

to do something that the law requires to be done.  That is to

say, with a bad purpose, either to disobey or to disregard the

law.

        The mere presence of the defendant where a crime is

being committed, even coupled with knowledge by the defendant

1    that a crime is being committed, or the mere acquiescence by

2    the defendant in the criminal conduct of others, even with

3    guilty knowledge, is not sufficient to establish that a

4    defendant is an aider and abettor.  An aider and abettor must

5    have had some interest in the criminal venture and wished to

6    bring about its success or completion.

7         If you find that the government has proven beyond a

8    reasonable doubt that the defendant had an interest in the

9    criminal venture, then the defendant is an aider and abettor

10   and therefore is guilty of the offense you are considering.

11   If, on the other hand, you find that the government has not

12   proven this beyond a reasonable doubt, then the defendant is

13   not an aider and abettor.  And if you find that he did not

14   personally commit the crime you are considering, you must find

15   him not guilty of that crime.

16        Now, count 13 of the indictment, remember I told you

17   I'm going to take these out of order because they build.  Count

18   13 of the indictment charges a conspiracy to violate the

19   narcotics laws.  A conspiracy is a kind of criminal

20   partnership, an agreement of two or more persons to join

21   together to accomplish some unlawful purpose.  It is an

22   entirely separate and different offense from the substantive

23   crime that may be the objective of the conspiracy.  Indeed, you

24   may find a defendant guilty of the crime of conspiracy, even if

25   you find that the substantive crime that was the object of the

CBS3MER2                          Jury Charge

conspiracy was never actually committed.  Of course, if a

defendant participates in a conspiracy and the crime or crimes

that were the object of this conspiracy were committed, the

defendant may be guilty of both the conspiracy and the

substantive crime.  The point is simply that the crime or

crimes that were the objective of the conspiracy need not have

been actually committed for a conspiracy to exist.

        Specifically, count 13 reads as follows:

        From at least in or about the spring of 2010, up to

and including in or about September 2011, Joshua Meregildo,

Melvin Colon, Earl Pierce, and Nolbert Miranda, and others

known and unknown, intentionally and knowingly did combine,

conspire, confederate, and agree together and with each other

to violate the narcotics laws of the United States by

distributing and possessing with intent to distribute 280 grams

and more of mixtures and substances containing a detectable

amount of cocaine base in a form commonly known as crack

cocaine and a quantity of marijuana.

        To meet its burden of proving a defendant guilty of

count 13, the government must prove the following two elements

beyond a reasonable doubt:

        First, the existence of the conspiracy to violate the

narcotics laws at or about the time charged in count 13 of the

indictment; and

        Second, that the defendant you are considering

CBS3MER2                    Jury Charge

1    knowingly and wilfully associated himself with and joined in

2    the conspiracy.

3            First, what is a conspiracy?  As I mentioned just a

4    few moments ago, a conspiracy is a combination, an agreement,

5    or an understanding of two or more persons to accomplish by

6    concerted action a criminal or unlawful purpose.  In this

7    instance, the conspiracy charged in count 13 is alleged to have

8    two unlawful purposes or objectives.  First, the distribution

9    of crack cocaine or the possession of crack cocaine with the

10   intent to distribute it.  And second, the distribution of

11   marijuana, or the possession of marijuana with intent to

12   distribute it.

13           The essence of the crime of conspiracy is the unlawful

14   agreement between two or more people to violate the law.  The

15   success of the conspiracy or the actual commission of the

16   criminal act that is the objective of the conspiracy is not an

17   element of that crime.  The conspiracy alleged here is the

18   agreement to commit the crime, and it is an entirely distinct

19   and separate offense from the actual commission of the crime.

20           Now, to show a conspiracy, the government is not

21   required to show that two or more persons sat around a table

22   and entered into a solemn pact orally or in writing stating

23   that they've formed a conspiracy to violate the law and

24   spelling out all the details.  Common sense tells you when

25   people in fact agree to enter into a criminal conspiracy, much

CBS3MER2                    Jury Charge

is left to the unexpressed understanding.  It is rare that a

conspiracy can be proven by direct evidence of an explicit

agreement.

        To show that a conspiracy existed, the evidence must

show that two or more persons in some way or manner, either

explicitly or implicitly, came to an understanding to violate

the law and to accomplish an unlawful plan.

        In determining whether there has been an unlawful

agreement as alleged in the indictment, you may consider the

actions of all the alleged co-conspirators that were taken to

carry out the apparent criminal purpose.  The old adage

"actions speak louder than words" applies here.  Often, the

only evidence that is available with respect to the existence

of the conspiracy is that of disconnected acts on the part of

the alleged individual co-conspirators.  When taken all

together and considered as a whole, however, that conduct may

warrant an inference that a conspiracy existed just as

conclusively as more direct proof, such as evidence of an

expressed agreement.

        So you must first determine whether or not the proof

establishes beyond a reasonable doubt the existence of the

conspiracy charged in the indictment.  In considering this

first element, you should consider all the evidence that has

been admitted with respect to the conduct and statements of

each alleged co-conspirator and any inferences you may

CBS3MER2                    Jury Charge

 1    reasonably draw from that conduct and those statements.  It is

 2    sufficient to establish the existence of the conspiracy, as

 3    I've already said, if, from the proof of all the relevant facts

 4    and circumstances, you find beyond a reasonable doubt that the

 5    minds of at least two alleged co-conspirators met in an

 6    understanding way to accomplish the objectives of the

 7    conspiracy charged in the indictment.

 8            The indictment charges two objectives of the

 9    conspiracy:  The distribution and possession with intent to

10    distribute cocaine base in a form commonly known as crack

11    cocaine; and, two, the distribution of and possession with the

12    intent to distribute marijuana.  I'll explain these terms for

13    you later in this charge.

14            The objective of a conspiracy is the illegal goal that

15    co-conspirators agree or hope to achieve.  If you can

16    unanimously find that a conspiracy existed and that the

17    conspiracy had the charged objective described in the

18    indictment, the illegal purpose element will be satisfied.

19            If you conclude that the government has proven beyond

20    a reasonable doubt that the conspiracy charged in the

21    indictment existed, you must next determine the second

22    question, and that is whether the defendant you are considering

23    participated in that conspiracy with knowledge of its unlawful

24    purposes or in furtherance of its unlawful objectives.

25            In count 13, Joshua Meregildo, Melvin Colon, Earl

CBS3MER2                      Jury Charge

 1    Pierce, and Nolbert Miranda are each charged with conspiring

 2    with themselves and others from approximately the spring of

 3    2010 through approximately September 2011 to violate the

 4    narcotics laws.  Count 13 of the indictment charges that the

 5    conspiracy had two objectives:  The distribution and possession

 6    with intent to distribute cocaine base in a form commonly known

 7    as crack cocaine; and the distribution of and possession with

 8    intent to distribute marijuana.

 9          Although there are two objectives charged in count 13,

10    the government need not prove all of the objectives beyond a

11    reasonable doubt.  If you find beyond a reasonable doubt that

12    the conspiracy existed and that it had one of the charged

13    objectives, the illegal purpose element will be satisfied.  You

14    must be unanimous as to the objective you do find.  In the

15    event you find that both of the objectives were proven, you

16    must be unanimous in that conclusion as well.  In sum, you must

17    all be in agreement with respect to at least one of the alleged

18    objectives of the conspiracy.

19          I instruct you that cocaine base is cocaine in its

20    base form.  Crack cocaine is a street name for a form of

21    cocaine base.  The government is not required to prove that the

22    alleged substance was crack cocaine, but rather that the

23    substance contained cocaine base.  Throughout the remainder of

24    this charge, I will refer to cocaine base as crack cocaine.  I

25    further instruct you that crack cocaine and marijuana are

controlled substances under the narcotics laws of the United

States, and throughout the remainder of this charge I will use

the term controlled substances and narcotics interchangeably.

Additionally, the purity of the narcotics involved is

not an element of the crime.  So you need not be concerned with

that.

I've been using the terms possession with intent to

distribute and distribute.  What do those terms mean?  The

legal concept of possession differs from the everyday usage of

that term, so let me explain it in some detail.  Actual

possession is what most of us think of as possession.  That is,

having physical custody or control of an object.  Therefore, if

you find that a defendant had a firearm or drugs on his person,

you may find that he had possession of it.  However, a person

need not have actual physical possession -- that is, physical

custody of an object -- to legally possess it.  If a person has

the ability to exercise substantial control over an object,

even if he does not have the object in his physical custody at

a given moment, and that person has the intent to exercise such

control, then he is in legal possession of that article.  This

is called constructive possession.

Control over an object may be demonstrated by the

existence of a relationship between the person who has the

power or ability to control the item and another person who has

actual physical custody of the item.  The person having control

CBS3MER2                     Jury Charge

1  possesses the firearm or drugs because he has a relationship

2  with the person who has actual physical custody of the firearm

3  or drugs.  That control permits him to direct the movement,

4  transfer or disposition of a firearm or drugs.  In addition, an

5  individual may have possession of an item that is not found on

6  his person because that individual has control over the

7  location where the item is maintained.

8          (Continued on next page)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Cbs1mer3                    Charge

1           THE COURT:  In this manner, for example, a

2   businessperson may legally possess things that are scattered

3   throughout a number of stores or offices around the country.

4           More than one person can have control over the same

5   firearm or drugs.  The law recognizes that possession may be

6   sole or joint.  If one person alone has actual or constructive

7   possession of an item, possession is sole.  If more than one

8   person has possession of it, as I've defined possession for

9   you, then possession is joint.

10          Proof of ownership is not required to establish

11  possession.  If an individual has the ability to exercise

12  substantial control over an object that he does not have in his

13  physical possession and the intent to exercise such control,

14  then he is in possession of that article.

15          Now to "distribute" means the actual, constructive, or

16  attempted transfer of a controlled substance.  Distribution

17  includes delivering, passing, or handing over something to

18  another person or causing something to be delivered, passed on,

19  or handed over to another person.  Distribution does not

20  require a sale but includes sales.

21          With respect to Count Thirteen, the government need

22  prove only that the conspirators agreed to distribute crack

23  cocaine or marijuana or that they agreed to possess crack

24  cocaine or marijuana with the intent to distribute it.  The

25  government need not prove both.

Cbs1mer3                          Charge

1              Possession "with intent to distribute" simply means

2      the possession of a controlled substance with the intention or

3      purpose to distribute it to another person or persons.

4              If you conclude that the government has proven beyond

5      a reasonable doubt that the narcotics conspiracy charged in

6      Count Thirteen existed, then you must next determine the second

7      question: whether the defendant you are considering

8      participated in the conspiracy unlawfully, intentionally, and

9      knowingly -- in other words, with knowledge of its unlawful

10     purpose and with the intent to further its unlawful objective.

11             The government must prove beyond a reasonable doubt

12     that the defendant you are considering intentionally and

13     knowingly entered into the conspiracy with a criminal intent --

14     that is, with a purpose to violate the law -- and that he

15     agreed to take part in the conspiracy to promote and cooperate

16     in its unlawful objectives.

17             The terms "unlawfully," "intentionally," and

18     "knowingly" are intended to ensure that if you find that the

19     defendant did join the conspiracy, you may not find the

20     defendant guilty unless you also conclude beyond a reasonable

21     doubt that, in doing so, the defendant knew what he was

22     doing -- in other words, he took the actions in question

23     deliberately and voluntarily.

24             "Unlawfully" simply means contrary to law.  The

25     defendant need not have known that he was breaking any

Cbs1mer3                         Charge

1    particular law or any particular rule, but he must have been

2    aware of the generally unlawful nature of his acts.

3         An act is done "knowingly" and "intentionally" if it

4    is done deliberately and purposefully; that is, a defendant's

5    acts must have been the product of his conscious objective,

6    rather than the product of force, mistake, accident, mere

7    negligence, or some other innocent reason.

8         Now knowledge is a matter of inference from the proven

9    facts.  Science has not yet devised a manner of looking into a

10   person's mind and knowing what that person is thinking.

11   However, you do have before you the evidence of certain acts

12   and conversations alleged to have taken place involving the

13   defendant or in his presence.  You may consider this evidence,

14   if you choose to credit it, in determining whether the

15   government has proven beyond a reasonable doubt the defendant's

16   knowledge of the unlawful purposes of the conspiracy.

17        It is not necessary for the government to show that

18   the defendant was fully informed as to all the details of the

19   conspiracy for you to infer knowledge on his part.  To have

20   guilty knowledge, a defendant need not have known the full

21   extent of the conspiracy or all of the activities of all of its

22   participants.  It's not even necessary for the defendant to

23   know every other member of the conspiracy.

24        In addition, the duration and extent of a defendant's

25   participation has no bearing on a defendant's guilt.  He need

Cbs1mer3                    Charge

1    not have joined the conspiracy at the outset.  A defendant may

2    have joined it for any purpose at any time in its progress and

3    that defendant will be held responsible for all that was done

4    before he joined and all that was done during the conspiracy's

5    existence while he was a member.  Each member of the conspiracy

6    may perform separate and distinct acts and may perform them at

7    different times.  Some conspirators play major roles, while

8    others play minor roles in the scheme.  An equal role is not

9    what the law requires.

10          However, I want to caution you that a person's mere

11   association with a member of the conspiracy does not make that

12   person a member of the conspiracy, even when that association

13   is coupled with knowledge that a conspiracy is taking place.

14   Mere presence at the scene of a crime, even coupled with

15   knowledge that a crime is taking place, is not sufficient to

16   support a conviction.  In other words, knowledge without

17   agreement and participation is not sufficient.  What is

18   necessary is that a defendant participated in the conspiracy

19   with knowledge of its unlawful purposes and with the intent to

20   aid in the accomplishment of its unlawful objectives.

21          In sum, the defendant, with an understanding of the

22   unlawful nature of the conspiracy, must have intentionally

23   engaged, advised, or assisted in the conspiracy for the purpose

24   of furthering an illegal undertaking.  The defendant thereby

25   becomes a knowing and willing participant in the unlawful

Cbs1mer3                    Charge

agreement -- that is to say, he becomes a conspirator.

Now Count Thirteen of the indictment charges that each defendant knowingly and deliberately conspired to violate the narcotics laws of the United States.

To meet its burden against a particular defendant, the government must prove beyond a reasonable doubt that the narcotics conspiracy charged in Count Thirteen of the indictment existed and that the defendant you're considering was a member of it. If you find that the conspiracy charged did not exist, then you must return a not guilty verdict -- even though you find that some other conspiracy existed. If you find that the charged conspiracy existed but that the defendant you are considering was not a member of that charged conspiracy, then you must find that defendant not guilty -- even though you find that he was a member of some other conspiracy.

Multiple conspiracies exist when the evidence shows separate unlawful agreements operating independently of each other to achieve distinct purposes. You may, however, find that the charged conspiracy existed despite the fact that there were changes in personnel by the termination, withdrawal, or addition of new members or activities, or both. And a single conspiracy may exist without each member of the conspiracy conspiring directly with every other member of the conspiracy.

Now if, and only if, you conclude that the government

Cbs1mer3                          Charge

has met its burden of establishing a defendant's guilt beyond a

reasonable doubt of the narcotics conspiracy charged in Count

Thirteen, then you must determine what quantity of drugs the

conspiracy involved.  You'll be provided with a verdict form

that will include spaces for you to indicate your determination

with respect to drug quantity and drug type.

         You do not need to determine the precise quantity of

drugs involved in the conspiracy.  Rather, you only need to

decide whether the conspiracy involved any quantity of

marijuana and/or more than certain specified amounts of crack

cocaine, and whether the defendant knew or reasonably could

have foreseen that the conspiracy involved those amounts.

         The amounts of crack cocaine you'll be asked to

consider are as follows: 280 grams or more, more than 28 grams

but less than 280 grams, and less than 28 grams.  You will not

be asked to make any determination on drug quantity concerning

marijuana.

         Your finding as to drug quantity must be beyond a

reasonable doubt.  In addition, it must be unanimous in that

all of you must agree that the conspiracy involved at least the

quantity you indicate.  Thus, for example, if all of you agreed

that the conspiracy involved 280 grams or more of crack

cocaine, you should indicate 280 grams or more of crack

cocaine.  If, however, some jurors conclude that the conspiracy

involved 280 grams or more of crack cocaine and the rest of the

jurors conclude that it involved 28 grams or more but less than

280 grams or more of crack cocaine, you should indicate

28 grams or more but less than 280 grams because all of you

would be in agreement that the conspiracy involved at least

that amount of crack cocaine.

          Now Counts Fourteen through Sixteen allege that the

charged defendant committed a killing while engaged in a

narcotics conspiracy that involved the distribution and

possession with intent to distribute 280 grams or more of crack

cocaine.  The narcotics conspiracy is charged in Count

Thirteen, and I've already defined for you the elements of that

charge.  If, and only if, you find the defendant you are

considering guilty of Count Thirteen and also find that the

conspiracy involved 280 grams or more of crack cocaine should

you then consider the corresponding charge for the defendant in

Counts Fourteen through Sixteen.

          More specifically, Count Fourteen alleges that the

defendant Earl Pierce, while engaged in the narcotics

conspiracy charged in Count Thirteen that involved the

distribution and possession with intent to distribute 280 grams

or more of crack cocaine, killed or caused or aided and abetted

the killing of Jason Correa on July 25, 2010.

          Count Fifteen alleges that the defendant Joshua

Meregildo, while engaged in the narcotics conspiracy charged in

Count Thirteen which involved the distribution and possession

Cbs1mer3                    Charge

with intent to distribute 280 grams or more of crack cocaine,

killed or caused or aided and abetted the killing of Carrel

Ogarro on July 31, 2010.

Count Sixteen alleges that the defendant Melvin Colon,

while engaged in the narcotics conspiracy charged in Count

Thirteen that involved the distribution and possession with

intent to distribute 280 grams or more of crack cocaine, killed

or caused or aided and abetted the killing of Delquan Alston on

August 27, 2010.

The relevant statute provides:

Any person engaging in a [narcotics offense] who

intentionally kills or counsels, induces, procures, or causes

the intentional killing of an individual and such killing

results, shall be guilty of a crime.

To meet its burden of proof on Counts Fourteen,

Fifteen, or Sixteen, the government must prove each of the

following four elements beyond a reasonable doubt:

First:  That the defendant you are considering is

guilty of the narcotics conspiracy alleged in Count Thirteen;

Second:  That the narcotics conspiracy involved

280 grams or more of crack cocaine;

Third:  That while engaged in the narcotics

conspiracy, he either intentionally killed the person specified

in the indictment or counseled, induced, procured, or caused

the intentional killing of that person; and

1              Fourth:  That the killing actually resulted from that

2       defendant's actions or that he aided and abetted the killing.

3              As I just mentioned, to find the defendant you are

4       considering guilty of Count Fourteen, Fifteen, or Sixteen, you

5       must determine first whether the defendant you are considering

6       was engaged in a narcotics conspiracy, and second, whether that

7       conspiracy involved 280 grams or more of crack cocaine.  I've

8       already explained to you the elements of a narcotics

9       conspiracy, and you should apply those instructions here.  I

10      instruct you that if you find that the defendant you are

11      considering is guilty of Count Thirteen and that the government

12      proved a drug quantity of 280 grams or more of crack cocaine,

13      then these two elements are necessarily proven.

14             The third element the government must prove beyond a

15      reasonable doubt is that the defendant you are considering,

16      while engaged in the narcotics conspiracy charged in Count

17      Thirteen, intentionally killed the person specified in the

18      indictment or counseled, induced, procured, or caused the

19      intentional killing of that person.

20             The indictment alleges, in Count Fourteen, that Earl

21      Pierce intentionally killed or counseled, induced, procured, or

22      caused the intentional killing of Jason Correa.  The indictment

23      alleges in Count Fifteen that Joshua Meregildo intentionally

24      killed or counseled, induced, procured, or caused the

25      intentional killing of Carrel Ogarro.  The indictment alleges

Cbs1mer3                    Charge

1    in Count Sixteen that Melvin Colon intentionally killed or

2    counseled, induced, procured, or caused the intentional killing

3    of Delquan Alston.  I will define some of these terms for you.

4              To show that a killing occurred while a defendant was

5    engaged in a narcotics conspiracy, the government must prove

6    more than simply a temporal connection between the killing and

7    the drug conspiracy.  The government must show a substantive

8    connection between the narcotics conspiracy and the killing at

9    issue -- in other words, that they were in some way related or

10   connected.  If you find that the murder is wholly unconnected

11   or simply coincidental to the narcotics conspiracy, then this

12   element will not be satisfied.

13             The government must prove that at least one of the

14   defendant's purposes or motives in the killing at issue was the

15   narcotics conspiracy charged in Count Thirteen.  It is not

16   necessary for the government to prove that this motive was the

17   sole purpose or even the primary purpose of the defendant to

18   commit the charged crime.  You need only find that was one of

19   his purposes or motives.

20             A person "intentionally kills" another person when he

21   does so deliberately and purposefully.  That is, the

22   defendant's actions must have been his conscious objective

23   rather than the product of a mistake, accident, negligence, or

24   some other innocent reason.

25             To meet its burden of proof, the government need not

Cbs1mer3                    Charge

1    prove that a defendant directly caused the death of the

2    individual named in the indictment.  The statute takes into

3    consideration that while certain people might have a direct

4    involvement in an intentional killing, others can be held

5    responsible even if they played a less direct role.  Thus, the

6    third element can be satisfied if you find beyond a reasonable

7    doubt that the defendant you are considering counseled,

8    induced, procured, or caused the killing of the individual

9    named in the indictment.

10          You should give these words their ordinary meaning.

11   To "counsel" means to give advice or recommend.  To "induce"

12   means to lead or move by persuasion or influence to some action

13   or state of mind.  To "procure" means to bring about by

14   unscrupulous or indirect means.  To "cause" means to bring

15   something about, to effect something.

16          Finally, the fourth element the government must prove

17   beyond a reasonable doubt is that the killing must have

18   resulted from the acts of the defendant you are considering or

19   that he aided and abetted the killing.

20          The defendant you are considering may also be

21   convicted of Count Fourteen, Fifteen, or Sixteen if you find

22   that he aided and abetted the killing at issue while engaged in

23   a narcotics conspiracy involving 280 grams or more of crack

24   cocaine.  I've already explained the concept of aiding and

25   abetting thoroughly and also with specific reference to the

1    narcotics conspiracy.  The concept of aiding and abetting means

2    the same thing with respect to the killings charged in Counts

3    Fourteen, Fifteen, and Sixteen.  You should apply my previous

4    instructions on that subject.

5            Now there is another theory of liability you may

6    consider in determining whether the government proved beyond a

7    reasonable doubt that Earl Pierce committed the murder charged

8    in Count Fourteen, which is called co-conspirator liability.

9    You may not consider this theory of liability against any other

10   defendant for any other count unless specifically instructed.

11           To meet its burden of proof of Count Fourteen for

12   co-conspirator liability, the government must prove each of the

13   following five elements beyond a reasonable doubt:

14           First:  That someone committed the murder of Jason

15   Correa as charged in Count Fourteen;

16           Second:  That the person you find actually committed

17   the killing was a member of the narcotics conspiracy charged in

18   Count Thirteen;

19           Third:  That this co-conspirator committed the murder

20   of Jason Correa in furtherance of the conspiracy charged in

21   Count Thirteen;

22           Fourth, that Earl Pierce was a member of the narcotics

23   conspiracy charged in Count Thirteen at the time of the

24   killing; and

25           Fifth:  That Earl Pierce could reasonably have

Cbs1mer3                          Charge

1    foreseen that one or more of these co-conspirators might commit

2    the killing.

3         If the government proves all five of these elements

4    beyond a reasonable doubt, then you may find Earl Pierce guilty

5    of the murder charged in Count Fourteen, even if he did not

6    personally participate in the acts constituting the crime or

7    did not have actual knowledge of it.

8         Count Twenty-two charges that Joshua Meregildo, Melvin

9    Colon, Earl Pierce, and Nolbert Miranda knowingly possessed,

10   carried, or used firearms during and in relation to, or in

11   furtherance of, the narcotics conspiracy charged in Count

12   Thirteen, or aided and abetted the same.

13        The relevant federal statute provides:

14        It shall be a crime for any person, "during and in

15   relation to any crime of violence or drug trafficking crime...

16   to use or carry a firearm," or, "in furtherance of any such

17   crime, to possess a firearm."

18        You may not consider Count Twenty-two unless you first

19   determine that the defendant you are considering is guilty of

20   the narcotics conspiracy charged in Count Thirteen.  Unlike

21   Counts Fourteen, Fifteen, and Sixteen, however, there is no

22   additional requirement that you also find that the narcotics

23   conspiracy involved 280 grams or more of crack cocaine.

24        Now to meet its burden of proof on Count Twenty-two,

25   the government must prove each of the following three elements

1    beyond a reasonable doubt:

2         First:  That on or about the dates alleged in the

3    indictment, the defendant you are considering used, carried, or

4    possessed a firearm, or aided and abetted its use, carrying, or

5    possession;

6         Second:  That the defendant you are considering used

7    or carried the firearm during and in relation to the drug

8    trafficking crime charged in Count Thirteen of the indictment

9    or that the defendant possessed a firearm in furtherance of

10   such a crime; and

11        Third:  The defendant acted knowingly, unlawfully, and

12   wilfully.

13        The first element the government must prove beyond a

14   reasonable doubt on Count Twenty-two is that on or about the

15   dates set forth in the indictment, the defendant used, carried,

16   or possessed a firearm, or aided and abetted its use, carrying,

17   or possession.

18        A firearm, under the statute, means any weapon that

19   will or is designed to or may readily be converted to expel a

20   projectile by the action of an explosive.  In considering

21   whether a defendant used or carried or possessed a firearm, it

22   does not matter whether the firearm was loaded or operable at

23   the time of the crime.  Operability is not relevant to your

24   determination of whether a weapon qualifies as a firearm.

25        To prove that the defendant you are considering used

the firearm, the government must prove beyond a reasonable
doubt that that defendant actively employed the firearm during
and in relation to the commission of a drug trafficking crime
for Count Twenty-two, or crime of violence for Counts Twenty
and Twenty-one, or that the defendant aided and abetted some
one else's use of the firearm.  This does not mean that the
defendant must actually fire or attempt to fire the weapon.
Brandishing, displaying, or even referring to the weapon so
that others present knew that the defendant had the firearm
available if needed, all constitute use of the firearm.
However, the mere possession of a firearm at or near the site
of the crime without active employment, as I just described it,
is not sufficient to constitute use of the firearm.

        To prove that the defendant you are considering
carried the firearm, the government must prove beyond a
reasonable doubt that that defendant or someone he aided and
abetted had the weapon within his immediate control so that it
was immediately available for use while committing a drug
trafficking crime for Count Twenty-two or a crime of violence
for Counts Twenty and Twenty-one.  The defendant need not have
held the firearm physically, that is, have had actual
possession of it on his person.  If you find that the
defendant, or someone that he aided and abetted, had dominion
and control over the place where the firearm was located and
had the power and intention to exercise control over the

Cbs1mer3                        Charge

firearm and that the firearm was immediately available to the

defendant in such a way that it furthered the commission of the

drug trafficking crime for Count Twenty-two or crime of

violence for Counts Twenty and Twenty-one, you may find that

the government has proven that the defendant carried the

weapon.

I previously instructed you on the meaning of

"possession," and you should follow those instructions here.

To reiterate, neither actual physical custody nor ownership is

required to show that a person possesses an object.

Possession of a firearm in furtherance of a drug

trafficking crime for Count Twenty-two or a crime of violence

for Counts Twenty and Twenty-one requires that the defendant

possess a firearm and that the possession advanced or moved the

crime forward.  The mere presence of a firearm is not enough.

Possession in furtherance requires that the possession be

incident to and an essential part of the crime.  The firearm

must have played some part in furthering the crime for this

element to be satisfied.

The second element that the government must prove

beyond a reasonable doubt is that the defendant used or carried

a firearm during and in relation to the drug trafficking crime

charged in Count Thirteen of the indictment or possessed a

firearm in furtherance of such crime.  You're instructed that

the narcotics conspiracy alleged in Count Thirteen is a drug

Cbs1mer3                    Charge

1    trafficking crime.

2             The third element the government must prove beyond a

3    reasonable doubt is that the defendant you are considering knew

4    that he was carrying or using or possessing a firearm and that

5    he acted wilfully in doing so.

6             To satisfy this element, you must find that the

7    defendant had knowledge that what he was carrying or using or

8    possessing -- or the person he aided and abetted carried or

9    used or possessed -- was a firearm as that term is generally

10   understood.  An act is done knowingly if it is done

11   purposefully and voluntarily as opposed to mistakenly or

12   accidentally.  You will recall that I instructed you earlier

13   that to find someone acted knowingly, you must make a finding

14   as to that person's state of mind.  For the government to

15   satisfy this element, it must prove that the defendant knew

16   what he was doing -- for example, that he knew he was carrying

17   or using a firearm during and in relation to the commission of

18   a drug trafficking crime or that he was possessing a firearm in

19   furtherance of such crime.

20            However, it's not necessary for the government to

21   prove that that defendant knew that he was violating any

22   particular law.

23            Each defendant is also charged with aiding and

24   abetting the use, carrying, or possession of a firearm in Count

25   Twenty-two.  I've already explained the concept of aiding and

Cbs1mer3                         Charge

1    abetting thoroughly.  The concept of aiding and abetting the

2    use, carrying, or possession of a firearm means the same thing,

3    with one additional instruction that I'll give you now.

4         To convict the defendant you are considering of aiding

5    and abetting another's use, carrying of, or possession of a

6    firearm, it is not enough to find that the defendant performed

7    an act to facilitate or encourage the commission of the

8    narcotics conspiracy charged in Count Thirteen with only the

9    knowledge that a firearm would be used or carried in the

10   commission of that crime.  Instead, you must find that that

11   defendant performed some act that facilitated the actual using

12   or carrying of a firearm during the charged narcotics

13   conspiracy or the possession of a firearm in relation to the

14   charged narcotics conspiracy.

15        For example, if you find that the defendant you are

16   considering directed another person to use, carry, or possess a

17   gun in the commission of the charged narcotics conspiracy or

18   made such gun available to the other person, then that

19   defendant aided and abetted the other person's use of a

20   firearm.  Or, if you find that the defendant you are

21   considering was present at the scene during the commission of

22   the charged narcotics conspiracy, you may consider whether that

23   defendant's conduct at the scene facilitated or promoted the

24   carrying of a gun and thereby aided and abetted the other

25   person's carrying of the firearm.  These examples are offered

Cbs1mer3

```
 1   only by way of illustration and are not meant to be exhaustive.

 2           Now, members of the jury, we've been going for quite

 3   some time and a trial is not an endurance contest, so we're

 4   going to take a very short recess and then I'm going to

 5   continue with my charge on the law.

 6           Keep an open mind, don't discuss the case.  Leave your

 7   binders on your chair.

 8           Please recess the jury.

 9           THE CLERK:  Come to order.  Jury exiting.

10           (Jury excused)

11           THE COURT:  Any issues?

12           MR. DINNERSTEIN:  Your Honor, first I just would like

13   to compliment you on how well you're reading.

14           Secondly, I did notice as I was going through this --

15           THE COURT:  Commend my second grade teacher.

16           MR. DINNERSTEIN:  I did notice, your Honor, as I was

17   going through this, that there's a difference in terms of the

18   caption and in terms of the body on page 108 and 109.  I don't

19   think it's really -- I'm not sure if you need to have it fixed.

20   But for instance, on page 108, the caption says Counts Ten and

21   Twelve and it really only makes reference to Count Eight --

22   Count Ten in the body.  And also on page 109, it also says

23   Counts Ten and Twelve but it only makes reference to Count

24   Twelve in the body.  Count Twelve deals with Mr. Colon and

25   Count Ten deals with Mr. Meregildo.  So the caption is actually
```

Cbs1mer3

inaccurate but the rest of it is actually fine.

          THE COURT:  I'm going to instruct them that the
captions are not the charge, but it's clear to me that "Counts
Ten and Twelve" is talking about this section and then there's
a subcaption that discusses Mr. Meregildo and Count Ten, and
then the next page, the subsection discusses Count Twelve
against Mr. Colon.

          MR. DINNERSTEIN:  Right.  I don't really have -- I
just wanted to bring it to the court's attention and also
because I did have, as part of my PowerPoint presentation, a
discussion of that particular Count Twelve, which of course
didn't make reference to Count Ten.  But I don't think it needs
to be changed and I understand that the few sections before
that are dealing with both Counts Ten and Eleven -- both Counts
Ten and Twelve.

          MR. BECKER:  Your Honor, I did have something, at
pages 6 and 3 -- pages 3 and 6, where you're telling the jury
in both instances that they're not to consider any answer that
you directed them to disregard, and then on page 6, "disregard
any testimony I have stricken."  That's of course accurate and
I have no problem with that.  But what I would like to note is
that in reviewing the trial record over the weekend, I saw that
there were lots of instances where a question was asked, an
objection was sustained, but the witness nonetheless answered,
and that also is not evidence in the case, notwithstanding that

Cbs1mer3

1  the court didn't specifically instruct the jury to disregard

2  it.  And am I being clear, Judge?

3           THE COURT:  Yes, you are, and I'll give some further

4  instruction.

5           MR. BECKER:  Okay.  And then one last thing, and just

6  obviously I'm sincere in what I'm about to say, but I need the

7  record to be clear about this.  When the court was just reading

8  about using a gun in furtherance of a drug trafficking offense

9  or in furtherance of a crime of violence -- and of course

10  Mr. Miranda is only charged with possession of the gun in

11  furtherance of drug trafficking, not of a crime of violence --

12  yesterday, during Ms. Heller's rebuttal summation, at page

13  6185, line 23, referring to the supposed 9-millimeter gun that

14  Mr. Miranda allegedly had, she said:  "What we do know is he

15  asked Mr. Parsons to carry it for him and the two men later

16  dropped it off on the second floor of 681 Courtlandt, which is

17  where Earl Pierce lives.  That's how Pierce got the gun, which

18  was used to shoot Tarean Joseph on September 13, 2010."  The

19  implication being, although Ms. Heller didn't say it, that

20  Mr. Miranda asked him to carry the gun, which is the

21  constructive possession element, which she then talks about,

22  and that that gun was then used in a shooting, suggesting that

23  he -- the gun was possessed or used in connection with a crime

24  of violence, namely, the September 13th shooting.  He's not

25  charged with that.  And that should not have been argued to the

Cbs1mer3

1    jury.  And so I would request at a minimum a curative

2    instruction that they should disregard those two sentences that

3    I just read of Ms. Heller because it improperly constitutes a

4    variance of the indictment.  He's not charged with possession

5    or using a gun personally or constructively in furtherance of

6    any crime of violence.

7          MS. HELLER:  Your Honor, that argument was entirely

8    supported by the proof and the evidence in this case.  We

9    certainly didn't argue, as Mr. Becker himself has acknowledged,

10    that Mr. Miranda was charged with that crime.  He wasn't

11    charged with that crime.  But the arguments that I made, which,

12    of course, were arguments, were completely supported by all the

13    record evidence.  We absolutely oppose any instruction on this

14    point.

15          MR. BECKER:  Your Honor, obviously Ms. Heller didn't

16    argue that he was charged with that crime.  I mean, that would

17    have been ludicrous.  It's not a question of her saying to the

18    jury or not saying to the jury, "He's charged, ladies and

19    gentlemen, with possessing the gun in the crime of violence,"

20    because she wouldn't be able to point to a count.  But she

21    nonetheless argued it by saying the words that I just read.

22          MS. HELLER:  Your Honor, it goes to the racketeering

23    conspiracy, which is why I argued it, and that's when I argued

24    it.  It goes to his acquiescence in other members of the

25    organization possessing guns and committing acts of violence.

Cbs1mer3

1          MR. BECKER:  No, your Honor, because --

2          MS. HELLER:  That's when I argued it and why I was

3     arguing.

4          THE COURT:  Don't interrupt.

5          MR. BECKER:  I'm sorry.  I'm sorry.  Your Honor, that

6     would only be appropriate if there was evidence in the case

7     that Mr. Miranda had any knowledge or intent that that gun

8     would ever be used in any crime in furtherance of the

9     enterprise, and there's no -- and in a crime of violence.  And

10    there's no suggestion by the government and there's no evidence

11    supporting that.

12         MS. HELLER:  There is evidence in the record.  In

13    fact, Mr. Folks testified that Mr. Miranda told him he lent the

14    gun to someone who acted like he really needed it.  There was

15    evidence in the record, absolutely, your Honor.

16         MR. BECKER:  I think that's not an accurate

17    recitation, what Ms. Heller said.

18         THE COURT:  All right.

19         MR. BECKER:  But there's also evidence he said, "Don't

20    do anything with the gun," so -- the court should be aware of

21    that as well.

22         THE COURT:  All right.  Mr. Becker, I'm going to deny

23    that application.

24         Mr. Miedel?

25         MR. MIEDEL:  Very briefly, your Honor.  I just want to

Cbs1mer3

1   very briefly for the record renew my objection to the *Pinkerton*

2   charge that's on page 61 and specifically only because the way

3   that the evidence came out, and something I neglected to argue

4   when we had the initial argument is that the jury could find,

5   for example, based on the statement that Mr. Folks said that

6   Mr. Pierce supposedly made, which was, "Let them live -- let

7   him live," the jury could find that he in fact was trying to

8   prevent a homicide but knew about it in advance, and if they

9   found that he was a member of the conspiracy under the

10  *Pinkerton* charge, they could find him guilty of murder

11  nonetheless, and that would make the *Pinkerton* charge -- which

12  is already a questionable charge I think and is often

13  disfavored as a result -- even more prejudicial in this case.

14          THE COURT:  Mr. Miedel, your application is denied as

15  well.

16          MR. BECKER:  I probably shouldn't say this, but --

17          THE COURT:  Do we have to use up every minute of the

18  break?

19          MR. BECKER:  Your Honor, I'm done.  Thank you.

20          THE COURT:  All right.  Let's escort the defendants

21  from the courtroom for a few moments.

22          (Defendants excused)

23          THE COURT:  All right.  Take a few.

24          (Recess)

25          (Continued on next page)

CBS3MER4                           Jury Charge

1          (In open court)

2          THE COURT:  I'm going to continue reading the charge,

3    and in about an hour, I'm going to take a 30-minute recess and

4    then I'll complete the charge and review with the jurors the

5    jury verdict sheet.  Because it's clear that we can't complete

6    this before lunch, a luncheon recess, it would be too late.

7    But I'm just going to give them 30 minutes.  So let's bring in

8    the jury.

9          (Jury present)

10         THE COURT:  Members of the jury, I'm going to continue

11   delivering my instructions on the law to you, and there will be

12   a point at which we will take a short luncheon recess so that

13   you can have your lunches and then I will complete the charge

14   and review the jury verdict sheet with you.

15         As you can see, the charge is lengthy.  In fact, it's

16   25,878 words.  Okay.  It's one and a half times the length of

17   the Book of Job.  So, we will continue the reading at page 70.

18         The remaining charges in the indictment all relate to

19   violations of the federal racketeering laws.  Each of the

20   defendants is charged with racketeering or racketeering

21   conspiracy or both.  And I will explain the difference between

22   the two later.

23         One element that is common to all the charges is that

24   the government must prove beyond a reasonable doubt that an

25   enterprise existed as alleged in the indictment, and that the

CBS3MER4                    Jury Charge

enterprise engaged in a pattern of racketeering activity.

Under the racketeering statute, an enterprise includes
any legal entity such as a partnership, corporation, or
association, or a group of individuals who are associated in
fact although not a legal entity.  The enterprise does not have
to have a particular name, or for that matter, have any name at
all.  Nor must it be registered or licensed as an enterprise.
It does not have to be a commonly recognized legal entity, such
as a corporation, a trade union, a partnership, or the like.

An enterprise may be a group of people informally
associated together for a common purpose of engaging in a
course of conduct.  This group may be organized for a
legitimate and lawful purpose or it may be organized for an
unlawful purpose.  In addition to having a common purpose, this
group of people must have a core of personnel who function as a
continuing unit.  Furthermore, the enterprise must continue to
exist in substantially similar form through the period charged.
This does not mean that the membership must remain exactly
identical, but the enterprise must have a recognizable core
that continues through a substantial period during the time
frame charged in the indictment.

The indictment alleges that the following enterprise
existed:  The Enterprise.  The Courtlandt Avenue Crew,
including its leadership, its membership, and its associates,
constituted an enterprise as defined by Title 18 of the United

1  States Code, Section 1961(4), that is, a group of individuals

2  associated in fact although not a legal entity.  The enterprise

3  constituted an ongoing organization whose members function as a

4  continuing unit for a common purpose of achieving the

5  objectives of the enterprise.  At all times relevant to this

6  indictment, the enterprise is engaged in and its activities

7  affected interstate and foreign commerce.  Joshua Meregildo,

8  a/k/a Killa, Melvin Colon, a/k/a Melly, and Earl Pierce, a/k/a

9  Ski Box, the defendants, participated in the operation and

10  management of the enterprise and participated in unlawful and

11  other activities in furtherance of the conduct of the

12  enterprise's affairs.

13          As I just mentioned, the indictment defines the

14  charged enterprise as the Courtlandt Avenue Crew, or CAC for

15  short, which is simply a form of reference adopted for the

16  purposes of the indictment to describe the group of individuals

17  who participated in the alleged racketeering enterprise.  The

18  indictment is not evidence, and may not be considered by you as

19  any evidence of the guilt of the defendants.

20          The indictment alleges that the purposes of the

21  enterprise are as follows:

22          Purposes of the Enterprise.  The purposes of the

23  enterprise include the following:  Enriching the members and

24  associates of the enterprise through, among other things, the

25  distribution of narcotics including crack cocaine and

CBS3MER4                     Jury Charge

1    marijuana.  Preserving and protecting the power of the

2    enterprise and its members and associates through murder,

3    attempted murder, other acts of violence and threats of

4    violence.  Promoting and enhancing the enterprise and the

5    activities of its members and associates.

6          In summary, if the government proves beyond a

7    reasonable doubt that there was a group of people characterized

8    by a common purpose or purposes, an ongoing formal or informal

9    organization or structure, and core personnel who functioned as

10   a continuing unit during a substantial period within the time

11   frame charged in the indictment, then an enterprise existed.

12         Another element that is common to all of the remaining

13   charges is that the government must prove beyond a reasonable

14   doubt that the enterprise engaged in a pattern of racketeering

15   activity.  A pattern of racketeering activity is a series of

16   criminal acts and requires proof that at least two acts of

17   racketeering committed within 10 years of one another were

18   committed or aided and abetted by participants in the

19   enterprise.  These acts of racketeering may not be isolated or

20   disconnected, but must be related to each other by a common

21   scheme, plan or motive.  The acts of racketeering must also

22   amount to, or pose a threat of, continued criminal activity.

23         In determining whether the racketeering acts

24   constituted a pattern, you may consider whether the acts were

25   closely related in time, whether the acts shared common victims

1    or common goals, and whether they shared a similarity of

2    methods.  If the same act was repeated more than once, you may

3    also consider this as evidence that the acts were part of a

4    pattern.

5            Let me make clear that an enterprise is not the same

6    thing as the pattern of racketeering activity.  The government

7    must prove both that there was an enterprise, and that the

8    enterprise's affairs were conducted through a pattern of

9    racketeering activity.  The proof used to establish these

10   separate elements may be the same or overlapping.  For example,

11   if you find that an ongoing enterprise existed, the existence

12   of this enterprise may help establish that the separate

13   racketeering acts were part of a pattern of continuing criminal

14   activity.

15           Additionally, to establish an enterprise or a pattern

16   of racketeering activity, the government is not required to

17   prove that the defendant you are considering actually committed

18   or aided and abetted the commission of two or more of the

19   racketeering acts, with the exception of count one that I will

20   discuss later.  Rather, it is sufficient for the government to

21   show that at least two racketeering acts were committed by any

22   member of the enterprise.

23           Now, the indictment alleges that six racketeering acts

24   were or were intended to be committed as part of the pattern of

25   racketeering activity.  These racketeering acts are described

CBS3MER4                    Jury Charge

in the indictment, but are also contained in the substantive

charges contained in counts three through 12.

Racketeering act one incorporates counts three and

four, which charge the conspiracy to murder rival narcotics

distributors and the murder of Jason Correa on July 25, 2010.

Racketeering act two incorporates counts five and six,

which charge the conspiracy to murder Carrel Ogarro and the

murder of Carrel Ogarro on July 31, 2010.

Racketeering act three incorporates counts seven and

eight, which charge the conspiracy to murder Delquan Alston,

and the murder of Delquan Alston on August 27, 2010.

Racketeering act four incorporates counts nine and 10,

which charge the conspiracy to murder rival drug distributors

and an assault and attempted murder of Tarean Joseph on

September 13, 2010.

Racketeering act five incorporates counts 11 and 12,

which charge the conspiracy to murder rival gang members, the

attempted murder of a rival gang member, and the assault of

Jing Bao Jiang on September 8, 2011.

Racketeering act six incorporates count 13, which

charges the conspiracy to distribute crack cocaine and

marijuana.

I will now instruct you generally on counts three

through 12. These counts charge certain defendants with

conspiring to commit murder in aid of racketeering activity or

CBS3MER4                    Jury Charge

committing murder, assault, or attempted murder in aid of
racketeering activity.

Count three alleges that the defendant Earl Pierce
conspired to murder members of a rival narcotics trafficking
organization referred to in the indictment as the Melrose
Organization for the purpose of gaining entrance to or
maintaining or increasing his position in the Courtlandt Avenue
Crew, or in exchange for a thing of value from the Courtlandt
Avenue Crew.

Count four alleges that the defendant Earl Pierce, on
or about July 25, 2010, murdered Jason Correa or aided and
abetted Correa's murder for the purpose of gaining entrance to
or maintaining or increasing his position in the Courtlandt
Avenue Crew or in exchange for a thing of value from the
Courtlandt Avenue Crew.

Count five alleges that the defendant Joshua Meregildo
conspired to murder Carrel Ogarro for the purpose of gaining
entrance to or maintaining or increasing his position in the
Courtlandt Avenue Crew or in exchange for a thing of value from
the Courtlandt Avenue Crew.

Count six alleges that the defendant Joshua Meregildo,
on or about July 31, 2010, murdered Carrel Ogarro or aided and
abetted Ogarro's murder for the purpose of gaining entrance to
or maintaining or increasing his position in the Courtlandt
Avenue Crew or in exchange for a thing of value from the

CBS3MER4                        Jury Charge

1    Courtlandt Avenue Crew.

2            Count seven alleges that the defendant Melvin Colon

3    conspired to murder Delquan Alston for the purpose of gaining

4    entrance to or maintaining or increasing his position in the

5    Courtlandt Avenue Crew or in exchange for a thing of value from

6    the Courtlandt Avenue Crew.

7            Count eight alleges that the defendant Melvin Colon,

8    on or about August 27, 2010, murdered Delquan Alston or aided

9    and abetted Alston's murder for the purpose of gaining entrance

10   to or maintaining or increasing his position in the Courtlandt

11   Avenue Crew or in exchange for a thing of value from the

12   Courtlandt Avenue Crew.

13           Count nine alleges that the defendants Earl Pierce and

14   Joshua Meregildo conspired to murder members of a rival

15   narcotics trafficking organization referred to in the

16   indictment as the 321 Organization for the purpose of gaining

17   entrance to or maintaining or increasing their positions in the

18   Courtlandt Avenue Crew or in exchange for a thing of value from

19   Courtlandt Avenue Crew.

20           Count 10 alleges that the defendants Joshua Meregildo

21   and Earl Pierce, on or about September 13, 2010, assaulted or

22   attempted to murder Tarean Joseph or aided and abetted the

23   assault or attempted murder of Tarean Joseph for the purpose of

24   gaining entrance to or maintaining or increasing their

25   positions in the Courtlandt Avenue Crew or in exchange for a

1     thing of value from the Courtlandt Avenue Crew.  Tarean Joseph

2     is also alleged to be a member of the 321 Organization.

3           Count 11 alleges that the defendant Melvin Colon

4     conspired to murder members of a rival gang referred to as the

5     Maria Lopez Crew for the purpose of gaining entrance to or

6     maintaining or increasing his position in the Courtlandt Avenue

7     Crew or in exchange for a thing of value from the Courtlandt

8     Avenue Crew.

9           Count 12 alleges that defendant Melvin Colon, on or

10    about September 8, 2011, assaulted or attempted to murder

11    members of the Maria Lopez Crew or aided and abetted the

12    assault or attempted murder of members of the Maria Lopez Crew,

13    for the purpose of gaining entrance to or maintaining or

14    increasing his position in the Courtlandt Avenue Crew or in

15    exchange for a thing of value from the Courtlandt Avenue Crew.

16    And this resulted in the shooting of Jing Bao Jiang.

17          The statute relevant to the crimes alleged in counts

18    three through 12 provides as follows:

19          Whoever for the purpose of gaining entrance to or

20    maintaining or increasing position in an enterprise engaged in

21    racketeering activity, murders, assaults with a deadly weapon

22    or dangerous instrument, commits assault resulting in a serious

23    physical injury upon or threatens to commit a crime of violence

24    against any individual, in violation of the laws of any state

25    of the United States, or attempts or conspires to do so, is

CBS3MER4                          Jury Charge

1    guilty of a crime.

2            Now, to sustain its burden of proof on counts four,

3    six, or eight, the government must prove each of the following

4    three elements beyond a reasonable doubt:

5            First, that there existed as charged in the indictment

6    an enterprise engaged in racketeering activity as I've

7    previously defined that term for you;

8            Second, that the defendant you are considering

9    murdered or aided and abetted the murder of a specified victim;

10   and

11           Third, that the defendant you are considering

12   committed the murder for the purpose of gaining entrance to, or

13   increasing his position in, or maintaining his position in the

14   enterprise, or for consideration for the receipt of or a

15   promise and an agreement to pay anything of pecuniary or

16   financial value.

17           The first element the government must prove beyond a

18   reasonable doubt is that the enterprise alleged in the

19   indictment, the Courtlandt Avenue Crew, existed and engaged in

20   racketeering activity.  I previously instructed you on the

21   meaning of the terms enterprise and racketeering activity, and

22   you should apply those instructions here.

23           The second element the government must prove beyond a

24   reasonable doubt is that the defendant you are considering

25   committed or aided and abetted the commission of the specified

CBS3MER4                         Jury Charge

murder.  Specifically, for count four, the murder of Jason
Correa on July 25, 2010; for count six, the murder of Carrel
Ogarro on July 31, 2010; and for count eight, the murder of
Delquan Alston on August 27, 2010.

           The law on murder that is applicable to counts four,
six, and eight is the New York State law regarding murder.  To
prove murder under New York State law, the government must
prove beyond a reasonable doubt:

           First, that the defendant you are considering caused
the death of the named victim or aided and abetted the same;
and

           Second, that the defendant you are considering did so
with the intent to cause the death of the named individual.

           The first element that the government must prove
beyond a reasonable doubt for you to find that the defendant
you are considering committed murder under New York State law
is that he caused death of the named victim.

           For count four, the government must prove beyond a
reasonable doubt that Earl Pierce caused the death of Jason
Correa or aided and abetted the same.  For count six the
government must prove beyond a reasonable doubt that Joshua
Meregildo caused the death of Carrel Ogarro or aided and
abetted the same.  For count eight the government must prove
beyond a reasonable doubt that Melvin Colon caused the death of
Delquan Alston or aided and abetted the same.

CBS3MER4                          Jury Charge

 1           To prove that the defendant you are considering caused

 2    the victim's death, the government must prove that the

 3    defendant's conduct is a sufficiently direct cause of death of

 4    the victim.  A person's conduct is a sufficiently direct cause

 5    of death when the conduct is an actual contributory cause of

 6    the death, and when the death was a reasonably foreseeable

 7    result of the conduct.

 8           A person's conduct is an actual contributory cause of

 9    the death of another when the conduct forged a link in the

10    chain of causes that actually brought about the death.  In

11    other words, when the conduct set in motion or continued in

12    motion the events that ultimately resulted in the death.  An

13    obscure or merely probable connection between the conduct and

14    the death will not suffice.

15           At the same time, if a person's conduct is an actual

16    contributory cause of the death of another, then it does not

17    matter that such conduct is not the sole cause of the death.

18           Death is a reasonably foreseeable result of a person's

19    conduct when the death should have been foreseen as being

20    reasonably related to the actor's conduct.  It is not required

21    that the death was the inevitable result or even the most

22    likely result.

23           Death is defined as irreversible cessation of

24    heartbeat and respiration, or when these functions are

25    maintained solely by extraordinary mechanical means, an

1    irreversible cessation of all functions of the entire brain,

2    including the brain stem.

3         The second element that the government must prove

4    beyond a reasonable doubt for you to find that the defendant

5    you are considering committed murder under New York State law

6    is that he intended to cause the death of another person.

7         A person acts intentionally with respect to a result

8    or to conduct described by a statute defining an offense when

9    his conscious objective is to cause such result or engage in

10   such conduct.  Intent does not require premeditation or

11   advanced planning.  The intent can be formed, and need only

12   exist in the very moment the person engages in prohibited

13   conduct or acts to cause the prohibited result, and not at an

14   earlier time.  Intent can be inferred by a person's conduct.

15   You are permitted, but not required, to infer that a person

16   intends the natural and probable consequences of his own acts.

17        The last element the government must prove beyond a

18   reasonable doubt on counts four, six, and eight is that the

19   defendant you are considering acted for the purpose of gaining

20   entrance to, maintaining a position in, or increasing a

21   position in the enterprise or in consideration for the receipt

22   of or a promise or an agreement to pay anything of pecuniary or

23   financial value.

24        In considering whether the government has proved that

25   a defendant committed the crime alleged for the purpose of

gaining entrance to or maintaining or increasing his position

in the enterprise, you should give these words their ordinary

meaning.

         The government may satisfy this element in two ways.

First, the government may satisfy this element if it proves

that the defendant's general purpose in committing the crime in

question was to gain entrance to, increase his position in, or

maintain his position in the Courtlandt Avenue Crew.

Self-promotion may not have been the defendant's only or even a

primary concern if the crime was committed as an integral

aspect of membership in the enterprise.  It is not necessary

that the defendant be a formal member of the enterprise.  The

motive requirement is satisfied if the defendant committed the

crime because it was in furtherance of his membership in the

enterprise or would allow him to gain entrance to the

enterprise or because he knew it was expected of him by reason

of the defendant's association with the enterprise or because

it would enhance the defendant's position or prestige within

the enterprise.  These examples are by way of illustration and

are not exhaustive.

         Alternatively, the government may satisfy this element

if it proves that a defendant committed the crime in

consideration of the receipt of or a promise and an agreement

to pay anything of pecuniary or financial value from the

enterprise.  This motive requirement is satisfied if the

1    defendant committed the crime in exchange for money.  This is

2    just one example and is not exhaustive.

3         The words "promise or agreement to pay something of

4    pecuniary value from the enterprise" should be given their

5    ordinary meaning.  That is, the defendant believed he would

6    receive something valuable from the enterprise for committing

7    the murder.

8         The defendant you are considering may also be

9    convicted of count four, six, or eight if you find that he

10   aided and abetted the killing at issue.  I've already explained

11   the concept of aiding and abetting thoroughly, and you should

12   apply any previous instructions on that subject.

13        There is another theory of liability you may consider

14   in determining whether the government proved beyond a

15   reasonable doubt that Earl Pierce committed the murder charged

16   in count four which is called co-conspirator liability.  As I

17   instructed you earlier, you may not consider this theory of

18   liability against any other defendant for any other count

19   unless specifically instructed.

20        To meet its burden of proof of count four for

21   co-conspirator liability, the government must prove each of the

22   following five elements beyond a reasonable doubt:

23        First, that someone committed the murder of Jason

24   Correa as charged in the count four;

25        Second, that the person you find actually committed

CBS3MER4                    Jury Charge

the killing was a member of the conspiracy to murder in aid of
racketeering charged in count three;

Third, that this co-conspirator committed the murder
of Jason Correa in furtherance of the conspiracy charged in
count three;

Fourth, that Earl Pierce was a member of the
conspiracy to murder in aid of racketeering charged in count
three at the time of the killing; and

Fifth, that Earl Pierce could reasonably have foreseen
that one or more of his co-conspirators might commit the
killing.

If the government proves all five of these elements
beyond a reasonable doubt, then you may find Earl Pierce guilty
of the murder charged in count four, even if he did not
personally participate in the acts constituting the crime or
did not have actual knowledge of it.

To sustain its burden of proof on counts three, five,
seven, nine and 11, the government must prove beyond a
reasonable doubt each of the following elements:

First, that there existed as charged in the indictment
an enterprise engaged in racketeering activity as I've
previously defined that term for you;

Second, that the defendant you are considering
conspired to commit the crime alleged; and

Third, that the defendant you are considering

CBS3MER4                    Jury Charge

conspired to commit the crime alleged for the purpose of

gaining access to, increasing his position in, or maintaining

his position in the enterprise, or for consideration of the

receipt of or a promise and an agreement to pay anything of

pecuniary or financial value.

The first element the government must prove beyond a

reasonable doubt is that the enterprise alleged in the

indictment, the Courtlandt Avenue Crew, existed and engaged in

racketeering activity.  I previously instructed you on the

meaning of the terms enterprise and racketeering activity, and

you should apply those instructions here.

The second element the government must prove beyond a

reasonable doubt is that the defendant you are considering

conspired to commit the crime alleged.  Specifically, for count

three, the conspiracy to murder members of the Melrose

Organization on July 25, 2010; for count five, the murder of

Carrel Ogarro on July 31, 2010; for count seven, the murder of

Delquan Alston on August 27, 2010; for count nine, the murder

of members of the 321 Organization from July 2010 to

September 2010; and for count 11, the murder of members of the

Maria Lopez Crew from August 2010 to September 2011.

The law on murder and conspiracy that is applicable to

counts three, five, seven, nine and 11, is the New York State

law regarding murder and conspiracy.  I previously instructed

you on the elements of murder under New York State law in

CBS3MER4                    Jury Charge

connection with counts four, six, and eight.  Those

instructions apply here as well.

         To prove conspiracy under New York State law, the

government must prove beyond a reasonable doubt:

         First, that the defendant you are considering agreed

with one or more persons to engage in or cause the performance

of the murder;

         Second, that the defendant you are considering did so

with intent that such murder be performed; and

         Third, that the defendant or one of the people with

whom he agreed to engage in or cause the performance of the

conduct committed an overt act in furtherance of the

conspiracy.

         I previously have instructed you on the meaning of

intent and you should follow those instructions here.

         An overt act is an independent act that tends to carry

out the conspiracy.  The overt act can be, but need not be, the

commission of the crime that was the object of the conspiracy.

The agreement to engage in or cause the performance of a crime

is not itself an overt act.

         The last element the government must prove beyond a

reasonable doubt on counts three, five, seven, nine, and 11 is

that the defendant you are considering conspired to commit the

crime alleged for the purpose of gaining entrance to,

maintaining a position in, or increasing a position in the

CBS3MER4                          Jury Charge

enterprise, or in consideration for the receipt of or a promise
or an agreement to pay anything of pecuniary or financial
value.

         I previously instructed you on these terms in
connection with count four, six, and eight, and you should
apply those instructions here.

         Counts 17, 18, and 19 each allege murder through the
use of a firearm against a different defendant.  As I will
explain in more detail in a moment, each of these charges
relate to a specific murder in aid of racketeering charge and
can only be considered if you find that defendant guilty of
that offense.

         Count 17 charges that Earl Pierce, in the course of
and in furtherance of the murder of Jason Correa in aid of
racketeering charged in count four, caused the death of Jason
Correa through the use of a firearm in circumstances that
qualify as murder.

         Count 18 charges that Joshua Meregildo, in the course
of and in furtherance of the murder of Carrel Ogarro in aid of
racketeering charged in count six, caused death of Carrel
Ogarro through the use of a firearm in circumstances that
qualify as murder.

         Count 19 charges that Melvin Colon, in the course of
and in furtherance of the murder of Delquan Alston in aid of
racketeering charged in count eight, caused the death of

CBS3MER4                     Jury Charge

1  Delquan Alston through the use of a firearm in circumstances

2  that qualify as murder.

3       The relevant federal statute provides a person who, in

4  the course of a violation of a firearms offense causes the

5  death of a person through the use of a firearm, shall be guilty

6  of a crime.

7       To meet its burden of proving counts 17, 18, and 19,

8  the government must prove each of the following three elements

9  beyond a reasonable doubt:

10      First, that the defendant you are considering

11 unlawfully, wilfully and knowingly committed the murder in aid

12 of racketeering that he is charged with;

13      Second, that in the course of committing that offense,

14 the defendant you are considering caused or aided and abetted

15 in causing the death of the respective victim through the use

16 of a firearm;

17      Third, that the death of that respective victim

18 qualifies as a murder as I will define that term for you in a

19 moment.

20      The first element the government must prove beyond a

21 reasonable doubt is that the defendant you are considering

22 committed the murder in aid of racketeering charged against

23 him.  I instruct you this element is satisfied against Earl

24 Pierce in your consideration of count 17 if and only if you

25 find him guilty of committing or aiding and abetting count

CBS3MER4                          Jury Charge

1    four.

2           I instruct you this element is satisfied against

3    Joshua Meregildo in your consideration of count 18 if and only

4    if you find him guilty of committing or aiding and abetting

5    count six.

6           I instruct you that this element is satisfied against

7    Melvin Colon in your consideration of count 19 if and only if

8    you find him guilty of committing or aiding and abetting count

9    eight.

10          The second element the government must prove beyond a

11   reasonable doubt that the defendant you are considering caused

12   the death of the named victim.

13          For count 17, the government must prove beyond a

14   reasonable doubt that Earl Pierce caused the death of Jason

15   Correa through the use of a firearm.

16          For count 18, the government must prove beyond a

17   reasonable doubt that Joshua Meregildo caused the death of

18   Carrel Ogarro through the use of a firearm.

19          In count 19, the government must prove beyond a

20   reasonable doubt that Melvin Colon caused the death of Delquan

21   Alston through the use of a firearm.

22          A defendant causes the death of another person if his

23   conduct had such an effect in producing that person's death as

24   to lead a reasonable person to regard the defendant's conduct

25   as a cause of death.  The death of a person may have more than

CBS3MER4                       Jury Charge

1      one cause.  The government need not prove that the defendant's

2      conduct was the only cause of death.  Rather, the government

3      must prove that the conduct of the defendant was a substantial

4      factor in causing the victim's death.

5             The third element the government must prove beyond a

6      reasonable doubt is that the death of the named victim

7      qualifies as murder.  In considering counts 17, 18, and 19 you

8      should apply the following definition of murder:

9             Under the federal criminal code, murder is the

10     unlawful killing of a human being with malice aforethought.

11     Every murder perpetrated by any kind of willful, deliberate,

12     malicious, and premeditated killing qualifies as murder.

13            The government may establish malice aforethought by

14     proving that a defendant had a premeditated design or intent to

15     kill the victim.  The government must prove malice aforethought

16     with competent evidence beyond a reasonable doubt.

17            There is another theory you may consider in

18     determining whether the government proved beyond a reasonable

19     doubt that Earl Pierce committed the murder charged in count 17

20     which is called co-conspirator liability.  As I instructed you

21     earlier, you may not consider this theory of liability against

22     any other defendant for any other count unless specifically

23     instructed.

24            To meet its burden of proof of count 17 for

25     co-conspirator liability, the government must prove each of the

CBS3MER4                     Jury Charge

1    following five elements beyond a reasonable doubt:

2            First, that someone committed the murder of Jason

3    Correa through the use of a firearm as charged in count 17;

4            Second, that the person or persons you find actually

5    committed the murder was a member of the conspiracy to murder

6    in aid of racketeering charged in count three;

7            Third, this co-conspirator committed the killing in

8    furtherance of the conspiracy charged in count three;

9            Fourth, that Earl Pierce was a member of the

10   conspiracy to murder in aid of racketeering charged in count

11   three at the time of the killing; and

12           Fifth, that Earl Pierce could reasonably have foreseen

13   that one or more of his co-conspirators might commit the

14   killing with the use of a firearm.

15           If the government proves all five of these elements

16   beyond a reasonable doubt, then you may find Earl Pierce guilty

17   of the murder charged in count four, even if he did not

18   personally participate in the acts constituting the crime or

19   did not have actual knowledge of it.

20           To meet its burden of proof on counts 10 and 12, the

21   government must prove each of the following elements beyond a

22   reasonable doubt:

23           First, that there existed as charged in the indictment

24   an enterprise engaged in racketeering activity;

25           Second, that the defendant you are considering

CBS3MER4                          Jury Charge

1    assaulted or attempted to murder another individual or aided

2    and abetted the same.

3                (Continued on next page)

Cbs1mer5                         Charge

1          THE COURT:  And third:  The defendant you are

2     considering committed the assault or attempted murder for the

3     purpose of gaining entrance to, increasing his position in, or

4     maintaining his position in the enterprise, or for

5     consideration of the receipt of or a promise and an agreement

6     to pay anything of pecuniary or financial value.

7          The first element the government must prove beyond a

8     reasonable doubt is that the enterprise alleged in the

9     indictment -- the Courtlandt Avenue Crew -- existed and engaged

10    in racketeering activity.  I previously instructed you on the

11    meaning of the terms "enterprise" and "racketeering activity,"

12    and you should apply those instructions here.

13         The second element the government must prove beyond a

14    reasonable doubt is that the defendant you are considering

15    committed the specified assault or attempted murder, or aided

16    and abetted the assault or attempted murder -- specifically,

17    for Count Ten, the assault or attempted murder of Tarean

18    Joseph; and for Count Twelve, the assault or attempted murder

19    of Jing Bao Jiang on September 8, 2010.

20         While the assault and attempted murder are charged in

21    the same count, they are separate offenses.  The government is

22    not required to prove both offenses.  It sustains its burden if

23    it proves that the defendant you are considering committed the

24    assault, the attempted murder, or both offenses, and you should

25    specify the offense or offenses that were proved by the

Cbs1mer5                          Charge

1    government on the verdict form.

2          The law on attempted murder that is applicable to

3    Counts Ten and Twelve is the New York State law regarding

4    murder and attempt.  Under New York State law, a person is

5    guilty of an attempt to commit a crime when, with intent to

6    commit a crime, he or she engages in conduct that tends to

7    effect the commission of such crime.  You should apply my

8    previous instructions on murder and its specific terms under

9    New York State law.

10         Thus, to prove attempted murder under New York State

11   law, the government must prove beyond a reasonable doubt:

12         First:  That the defendant you are considering

13   attempted to cause the death of the named victim, or aided and

14   abetted the same; and

15         Second:  That the defendant you are considering did so

16   with the intent to cause the death of the named victim.

17         The law on assault that is applicable to Counts Ten

18   and Twelve is the New York State law regarding assault.  Under

19   New York State law, a person is guilty of assault if the

20   government proves beyond a reasonable doubt either:

21         First:  That the defendant you are considering caused

22   physical injury to another person by means of a deadly weapon

23   or dangerous instrument; and

24         Second, that he did so with intent to cause physical

25   injury to another person.

Cbs1mer5                          Charge

1                    Or:

2                    That the defendant you are considering caused serious

3          physical injury to another person; and

4                    That he did so with the intent to cause serious

5          physical injury to another person.

6                    You will be provided with a verdict form that will

7          include spaces for you to indicate your determinations with

8          respect to these theories of liability.  Your finding as to a

9          theory of liability must be beyond a reasonable doubt and must

10         be unanimous in that all of you must agree on one, or both,

11         theories.

12                   Now "physical injury" means impairment of physical

13         condition or substantial pain.

14                   "Serious physical injury" means impairment of a

15         person's physical condition that creates a substantial risk of

16         death or causes death or serious and protracted disfigurement,

17         protracted impairment of health, or protracted loss or

18         impairment of the function of any bodily organ.

19                   A "deadly weapon" is any loaded weapon from which a

20         shot, readily capable of producing death or other serious

21         physical injury, may be discharged.  I further instruct you

22         that for a firearm to be considered a deadly weapon, it must be

23         loaded and operable, although there is no requirement that the

24         defendant knew it was loaded or operable at the time he

25         possessed it.

Cbs1mer5                          Charge

1          A loaded firearm means any firearm loaded with

2    ammunition that may be used to discharge such firearm or any

3    firearm that is possessed by one who, at the same time,

4    possesses a quantity of ammunition that may be used to

5    discharge such firearm.

6          A "dangerous instrument" is any instrument, article,

7    or substance that, under the circumstances in which it is used,

8    attempted to be used, or threatened to be used, is readily

9    capable of causing death or other serious physical injury,

10   although death or other serious physical injury need not in

11   fact be caused.

12         Under New York law, there is no requirement that the

13   person who is injured be the same person who was intended to be

14   injured.  Thus, the intent element is satisfied when a

15   defendant intends to cause physical injury, serious physical

16   injury, or death to one person but instead injures another

17   person.

18         Third, the last element the government must prove

19   beyond a reasonable doubt on Counts Ten and Twelve is that the

20   defendant you are considering acted for the purpose of gaining

21   entrance to, maintaining a position in, or increasing a

22   position in the enterprise, or in consideration for the receipt

23   of or a promise or an agreement to pay anything of pecuniary or

24   financial value.  My previous instructions to you on this

25   element in connection with Counts Four, Six, and Eight apply

1    here as well.

2         Now the defendant you are considering may also be

3    convicted of Count Ten or Twelve if you find that he aided and

4    abetted the assault or attempted murder at issue.  I've already

5    explained the concept of aiding and abetting thoroughly, and

6    you should apply my previous instructions on this subject.

7         You may also consider co-conspirator liability against

8    Joshua Meregildo on Count Ten and Melvin Colon on Count Twelve.

9    Again, you may not consider this theory of liability against

10   any other defendant or any other count unless specifically

11   instructed.

12        Now to meet its burden of proof against Joshua

13   Meregildo on Count Ten for co-conspirator liability, the

14   government must prove each of the following five elements

15   beyond a reasonable doubt:

16        First:  That someone assaulted or attempted to murder

17   Tarean Joseph.

18        Second:  That the person you find actually committed

19   the assault or attempted murder was a member of the conspiracy

20   to murder in aid of racketeering charged in Count Nine;

21        Third:  That this co-conspirator committed the assault

22   or attempted murder in furtherance of the conspiracy charged in

23   Count Nine;

24        Fourth:  That Joshua Meregildo was a member of the

25   conspiracy charged in Count Nine at the time of the killing;

Cbs1mer5                    Charge

1    and

2         Fifth:  That Joshua Meregildo could reasonably have

3    foreseen that one of more of his co-conspirators might commit

4    the assault or attempted murder.

5         If the government proves all five of these elements

6    beyond a reasonable doubt, then you may find Joshua Meregildo

7    guilty of the assault and attempted murder charged in Count

8    Ten, even if he did not personally participate in the acts

9    constituting the crime or did not have actual knowledge of it.

10         To meet its burden of proof against Melvin Colon on

11    Count Twelve for co-conspirator liability, the government must

12    prove each of the following five elements beyond a reasonable

13    doubt:

14         First:  That someone assaulted or attempted to murder

15    Jing Bao Jiang;

16         Second:  That the person you find actually committed

17    the assault or attempted murder was a member of the conspiracy

18    to murder in aid of racketeering charged in Count Eleven;

19         Third:  That this conspirator committed the assault or

20    attempted murder in furtherance of the conspiracy charged in

21    Count Eleven;

22         Fourth:  That Melvin Colon was a member of the

23    conspiracy charged in Count Eleven at the time of the shooting;

24    and

25         Fifth:  That Melvin Colon could reasonably have

Cbs1mer5                    Charge

1    foreseen that one or more of his co-conspirators might commit

2    the assault or attempted murder.

3         If the government proves all five of these elements

4    beyond a reasonable doubt, then you may find Melvin Colon

5    guilty of the assault and attempted murder charged in Count

6    Twelve, even if he did not personally participate in the acts

7    constituting the crimes or did not have actual knowledge of

8    them.

9         Now I'd like to back up one page for a moment to

10   page 108, and the fourth element with respect to Joshua

11   Meregildo should not refer to a killing, it should refer to a

12   shooting.  So the fourth element for Mr. Meregildo is that

13   Joshua Meregildo was a member of the conspiracy charged in

14   Count Nine at the time of the shooting.

15        Count Twenty charges that Joshua Meregildo and Earl

16   Pierce, during and in relation to the assault or attempted

17   murder in aid of racketeering -- as charged in Count Ten --

18   knowingly used or carried firearms, possessed firearms in

19   furtherance of such crime, or aided and abetted the use,

20   carrying, or possession of firearms.  You may not consider

21   Count Twenty-two unless you first determine that the defendant

22   you are considering is guilty of Count Ten.

23        MR. BECKER:  Your Honor, respectfully, you said Count

24   Twenty-two.

25        THE COURT:  Yes.  Thank you, Mr. Becker.

Cbs1mer5                           Charge

1              Let me begin again on that general instruction.  We're
2      discussing now Count Twenty.
3              Count Twenty charges that Joshua Meregildo and Earl
4      Pierce, during and in relation to the assault or attempted
5      murder in aid of racketeering -- as charged in Count Ten --
6      knowingly used or carried firearms, possessed firearms in
7      furtherance of such crime, or aided and abetted the use,
8      carrying, or possession of firearms.  You may not consider
9      Count Twenty unless you first determine that the defendant you
10     are considering is guilty of Count Ten.
11             Count Twenty-one charges that Melvin Colon, during and
12     in relation to the conspiracy to commit murder in aid of
13     racketeering -- as charged in Count Eleven -- knowingly used or
14     carried firearms, possessed firearms in furtherance of such
15     crime, or aided and abetted the use, carrying, or possession of
16     firearms.  You may not consider Count Twenty unless you first
17     determine that Melvin Colon is guilty of Count Eleven.
18             MR. DINNERSTEIN:  Your Honor, also, that should be
19     Count Twenty-one.
20             THE COURT:  Yes.  Thank you.
21             You may not consider Count Twenty-one unless you first
22     determine that Melvin Colon is guilty of Count Eleven.
23             Relevant federal statute provides:
24             It shall be a crime for any person, "during and in
25     relation to any crime of violence or drug trafficking crime...

Cbs1mer5                        Charge

to use or carry a firearm," or, "in furtherance of any such

crime, to possess a firearm."

To meet its burden of proof on Counts Twenty and

Twenty-one, the government must prove the following three

elements beyond a reasonable doubt:

First:  That on or about the dates alleged in the

indictment, the defendant you are considering used, carried, or

possessed a firearm, or aided and abetted the use, carrying, or

possession of a firearm;

Second:  That the defendant you are considering used

or carried the firearm during and in relation to a crime of

violence or that the defendant possessed the firearm in

furtherance of such crime; and

Third:  That the defendant acted knowingly,

unlawfully, and wilfully.

The first element the government must prove beyond a

reasonable doubt is that on or about the dates set forth in the

indictment, the defendant you are considering used, carried, or

possessed a firearm, or aided or abetted its use, carrying, or

possession.

I previously defined the terms "firearm," "use,"

"carry," "possession," and "possession in furtherance" during

my charge on Count Twenty-two, and you should apply those

definitions again here.

The second element that the government must prove

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

Cbs1mer5                    Charge

beyond a reasonable doubt is that the defendant you are

considering used or carried a firearm during and in relation to

a crime of violence, or possessed a firearm in furtherance of

such crime.  You are instructed that the assault and attempted

murder charged in Count Ten, and the conspiracy to murder in

aid of racketeering as charged in Count Eleven, are crimes of

violence.

        The third element the government must prove beyond a

reasonable doubt is that the defendant you are considering knew

that he was carrying or using or possessing a firearm and he

acted wilfully in doing so.

        I previously instructed you about the definitions of

the terms of this element when I charged you on Count

Twenty-two, and you should continue to apply those definitions

here.

        If, and only if, you find a defendant guilty of Count

Twenty or Twenty-one, then you must determine special findings

for that defendant on that count.  Specifically, you must

determine whether during a defendant's use, carrying, or

possession of the firearm, he brandished or discharged that

firearm or whether he did not.  You will be provided with a

verdict form that will include spaces for you to indicate your

determinations with respect to these issues.

        "Brandish" means that all or part of the weapon was

displayed or the presence of the weapon was otherwise made

Cbs1mer5                          Charge

1    known to another person to intimidate that person, regardless

2    of whether the weapon was directly visible to that person.  The

3    weapon does not have to be directly visible, but it must be

4    present.

5           "Discharge" means to fire or shoot.

6           Your finding as to brandishing or discharging must be

7    beyond a reasonable doubt.  In addition, it must be unanimous

8    in that all of you must agree that the firearm was brandished

9    or discharged.

10          Thus, for example, if all of you agree that a

11   defendant discharged the firearm during the crime, you should

12   indicate "yes" to that question on the verdict sheet.  And if

13   you also believe that a defendant brandished the firearm during

14   that crime, you should indicate "yes" to that question as well.

15   If, however, some jurors conclude that the defendant brandished

16   the firearm and the rest of the jurors conclude that he

17   discharged it, you should indicate "no" on both questions

18   because your finding on each determination would not be

19   unanimous.

20          Now the defendants who are charged in Counts Twenty

21   and Twenty-one are also charged in aiding and abetting the use,

22   carrying, or possession of a firearm in Twenty and Twenty-one.

23   I've already explained the concept of aiding and abetting

24   firearm possession thoroughly.

25          To convict the defendant you are considering of aiding

and abetting another's use of, carrying of, or possession of a

firearm, it is not enough to find that the defendant performed

an act to facilitate or encourage the commission of the crime

of violence associated with that firearm charge with only the

knowledge that a firearm would be used or carried in the

commission of the crime.  Instead, you must find that the

defendant performed some act that facilitated the actual using

or carrying of a firearm during the charged crime of violence

or the possession of a firearm in relation to the charged crime

of violence.

For example, if you find that the defendant you are

considering directed another person to use, carry, or possess a

gun in the commission of the charged crime of violence, or made

such a gun available to the other person, then that defendant

aided and abetted the other person's use of a firearm.  Or, if

you find that the defendant you are considering was present at

the scene during the commission of the charged crime of

violence, you may consider whether that defendant's conduct at

the scene facilitated or promoted the carrying of a gun and

thereby aided and abetted the other person's carrying of the

firearm.  These examples are offered only by way of

illustration and are not meant to be exhaustive.

You may also consider co-conspirator liability against

Joshua Meregildo on Count Twenty.  Again, you may not consider

this theory of liability against any other defendant for any

Cbs1mer5                    Charge

1    other count unless specifically instructed.

2           To meet its burden of proof against Joshua Meregildo

3    on Count Twenty for co-conspirator liability, the government

4    must prove each of the following five elements beyond a

5    reasonable doubt:

6           First:  That someone used, carried, or possessed a

7    firearm during and in furtherance of the assault or attempted

8    murder of Tarean Joseph;

9           Second:  That the person or persons you find actually

10   committed the assault or attempted murder was or were members

11   of a conspiracy to murder in aid of racketeering charged in

12   Count Nine;

13          Third:  That this co-conspirator committed the assault

14   or attempted murder in furtherance of the conspiracy charged in

15   Count Nine;

16          Fourth:  That Joshua Meregildo was a member of the

17   conspiracy charged in Count Nine at the time of the assault or

18   attempted murder; and

19          Fifth:  That Joshua Meregildo was a member of the

20   conspiracy charged in Count Nine at the time of the assault or

21   attempted murder.

22          Excuse me.  Fifth:  That Joshua Meregildo could

23   reasonably have foreseen that one or more of his

24   co-conspirators might commit the assault or attempted murder.

25          If the government proves all five of these elements

Cbs1mer5                    Charge

1    beyond a reasonable doubt, then you may find Joshua Meregildo

2    guilty of the use, carrying, or possession in connection with a

3    crime of violence charged in Count Twenty, even if he did not

4    personally participate in the acts constituting the crime or

5    did not have actual knowledge of it.

6            Members of the jury, I think it's time for a break.

7    We're going to take a brief luncheon recess at this time,

8    approximately 30 minutes.

9            Keep an open mind, come to no conclusions, don't

10   discuss the case.  Don't discuss anything about it.  Talk about

11   anything but what has gone on in this courtroom.

12           Please recess the jury.

13           THE CLERK:  Come to order.  Jury exiting.

14           (Jury excused)

15           THE COURT:  Any issues?

16           MS. HELLER:  Your Honor, we had two things that we

17   noticed.  One on page 98, line 22.  It's Count Four when it

18   should actually read Count Seventeen, and I would have stood up

19   but I didn't know whether that was protocol until defense

20   counsel started doing it.  So that's just a minor error.

21           And then the second thing we noticed was on page 115,

22   the brandish or discharge charge.  The only thing we would

23   respectfully ask to be inserted here on line 7 would be

24   "brandished or discharged that firearm or aided and abetted the

25   brandishing or discharge of that firearm," because it isn't

Cbs1mer5                    Charge

1    clear at all right now that aiding and abetting also applies to

2    this special finding, when indeed of course it does.  And we

3    apologize for not noticing that at an earlier stage.

4              MR. LEE:  Judge, I don't know, if -- I may respond to

5    that last point on page 115.  I don't know if that matches

6    what's in the indictment.

7              MS. HELLER:  It absolutely does.  Section 2 is charged

8    along with the violation that's charged.

9              THE COURT:  All right.  Now with respect to the

10   government's two modifications, is there any objection to

11   simply making those corrections in the printed copies of the

12   charge and substituting them into the jurors' notebooks as

13   opposed to returning to those charges?

14             MR. MIEDEL:  No objection.

15             MR. LEE:  No objection, your Honor.

16             MR. DINNERSTEIN:  No objection.

17             MR. BECKER:  I certainly have no objection.

18             MS. HELLER:  As to our first change, we certainly

19   don't object.

20             As to the second change, we I think would prefer a

21   brief -- just as your Honor did when you returned to two pages

22   prior and made that change, something very quick.

23             THE COURT:  All right.  I'll put it on the record and

24   we'll make the change.

25             MR. BECKER:  Your Honor, one very quick note.  I

Cbs1mer5                    Charge

1   seem -- with respect to the verdict sheet.  I seem to have a

2   recollection earlier in the trial that the court had said that

3   it would change the "guilty" references to "guilty beyond a

4   reasonable doubt."  I may be mistaken about that, but I seem to

5   have a recollection that the court did say that.

6          Your Honor, if I'm incorrect, I stand corrected.  I

7   just didn't want to leave it be if in fact that was the court's

8   intention.

9          MR. FEE:  Your Honor, our recollection -- and it's

10  just that, a recollection -- is that that related to portions

11  of the charge, not to the verdict sheet.

12         THE COURT:  Yeah.  I am satisfied with the verdict

13  sheet as it's configured, and in that regard, during the break

14  I had an opportunity to consider further Mr. Miranda's request

15  to modify questions 13.1 and 13.2 on the verdict sheet.  I'm

16  going to deny Mr. Miranda's request.  Question 13.1 and 13.2 of

17  the verdict sheet are phrased appropriately for the jury.

18  Sections 1B1.3(a)(1)(A) and (B) of the Sentencing Guidelines

19  hold a defendant accountable for his individual acts and those

20  acts which were reasonably foreseeable to him during a

21  conspiracy.  Removing the reference to his personal involvement

22  in the verdict sheet invites the jury to disregard his

23  individual acts when calculating drug quantity, which is

24  improper.

25         MR. BECKER:  Your Honor, I certainly wasn't asking the

Cbs1mer5                    Charge

1    court to remove any reference to his individual acts.  I was

2    merely -- and if that's the impression I gave the court, I'm

3    sorry.  What I thought I argued was that it has to be either

4    that he personally distributed or possessed with intent to

5    distribute, which is his personal conduct, or that it was

6    reasonably foreseeable to him.  I wasn't suggesting that the

7    court should strike any reference to his personal conduct.

8                THE COURT:  All right.  Anything further?

9                MR. DINNERSTEIN:  Yes.  I have one thing.  And

10   actually, I think it does have to be corrected.

11               The shooting of Mr. Jiang -- this is page 101, line 8.

12   It was September 8th, 2011.  Actually, if it was 2010, my

13   client would have been in prison and would have had an alibi

14   defense, but unfortunately, that's an incorrect date.

15               MS. HELLER:  We agree with that, of course.

16               THE COURT:  All right.  I'll make that change as well.

17               All right.  We'll reconvene at 1:45.

18               (Luncheon recess)

19

20

21

22

23

24

25

CBS3MER6                        Jury Charge

1                (In open court)

2                THE COURT:  Over the luncheon recess I've made one

3     change in the jury verdict sheet on page three, question 10.2,

4     I've added beyond a reasonable doubt to that question so that

5     it is consistent with 10.1.  My deputy is circulating copies of

6     the verdict sheet and we're substituting in the jurors' binders

7     this latest jury verdict sheet.

8                MR. MIEDEL:  Your Honor, as to the verdict sheet, one

9     minor issue.  I don't know if it is so minor, but one issue.

10    On question 13.3 which is on page five.

11               THE COURT:  Yes.

12               MR. MIEDEL:  It reads "What amount of crack cocaine

13    was involved in the narcotics conspiracy."  And I think that to

14    be consistent with 13.1 and 13.2, and especially because it

15    refers to each defendant, it should read something like "What

16    amount of crack cocaine was each defendant either personally

17    involved in or was reasonably foreseeable to."  Because it's

18    not -- because it refers to each defendant, it is not what was

19    the overall amount of crack cocaine in the conspiracy.  It's

20    what applies to each defendant.

21               THE COURT:  What about that, Ms. Heller?

22               MS. HELLER:  Can we just have a moment, your Honor?

23               THE COURT:  Yes.  I think he's right.  It would be

24    nice if at some point you people would bring this stuff up.

25    It's really ridiculous.  Let's bring in the jury so we can keep

CBS3MER6                    Jury Charge

1   going.

2           Change the verdict sheet.  Take all those verdict

3   sheets out of the binder right now, Leigh.

4           MS. HELLER:  It is in the charge.

5           THE COURT:  That goes into the dust bin of history and

6   run another verdict sheet before somebody else thinks -- any

7   other ideas?  Unless the government comes up with some

8   argument, I'm changing 13.3.

9           MS. HELLER:  Your Honor, we agree.  The language is in

10  the charge so it's fine.

11          (Jury present)

12          THE COURT:  Good afternoon, members of the jury.

13  Members of the jury, before we continue with the reading, I

14  want to return you to page 115 which is the charge concerning

15  special finding on brandishing or discharge of a firearm.  And

16  I am making a change in the first paragraph of that charge to

17  include the concept of aiding and abetting.  So, the first

18  paragraph will reads as follows:

19          If and only if you find the defendant guilty of count

20  20 or 21, then you must determine special findings for that

21  defendant on that count.  Specifically, you must determine

22  whether during a defendant's use, carrying or possession of the

23  firearm, he brandished or discharged that firearm, or aided and

24  abetted the same, or whether he did not.  You will be provided

25  with a verdict form that will include spaces for you to

CBS3MER6                          Jury Charge

1   indicate your determinations with respect to these issues.

2            Now, members of the jury, I'd like to turn to page 125

3   which addresses count one, the racketeering charge.

4            MS. HELLER:  Your Honor, I believe we left off at page

5   120.

6            THE COURT:  120?

7            MS. HELLER:  I'm sorry 118.  118.

8            THE COURT:  Yes.  Excuse me.  You're right.

9            Count two.  The racketeering conspiracy.  Count two

10  charges Joshua Meregildo, Melvin Colon, Earl Pierce, and

11  Nolbert Miranda with a racketeering conspiracy.  Specifically,

12  count two reads as follows:

13           From at least in or about Spring 2010 up to and

14  including September 2011, Joshua Meregildo, Melvin Colon, Earl

15  Pierce, and Nolbert Miranda, and others known and unknown,

16  being persons employed by or associated with the Courtlandt

17  Avenue Crew, knowingly and intentionally combined, conspired,

18  confederated, and agreed together and with others to violate

19  the racketeering laws of the United States by conducting and

20  participating directly and indirectly in the conduct of the

21  affairs of the enterprise which were engaged in and the

22  activities of which affected interstate and foreign commerce

23  through a pattern of racketeering activity consisting of

24  multiple acts involving murder and multiple acts involving the

25  distribution of controlled substances.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

CBS3MER6                    Jury Charge

1          As I instructed you earlier, a conspiracy is a kind of
2   criminal partnership, an agreement of two or more persons to
3   join together to accomplish some unlawful purpose.  It is an
4   entirely separate and different offense from the substantive
5   crime that may be the objective of the conspiracy.

6          You may find a defendant's guilty of the crime of
7   conspiracy even if you find that the substantive crime that was
8   the object of the conspiracy was never actually committed.  Of
9   course, if a defendant participates in a conspiracy, and the
10  crime or crimes that were the subject of the conspiracy were
11  committed, the defendant may be guilty of both the conspiracy
12  and the substantive crime.  The point is simply that the crime
13  or crimes that were the objective of the conspiracy need not
14  have been actually committed for a conspiracy to exist.

15         To meet its burden of proving a defendant guilty of
16  count two, the government must establish each of the following
17  four elements beyond a reasonable doubt:

18         First, that the enterprise existed;

19         Second, that the defendant you are considering was
20  employed by or knowingly agreed to associate himself with the
21  enterprise;

22         Third, that he unlawfully, wilfully and knowingly
23  conspired with at least one other person to participate in the
24  conduct of the affairs of that enterprise through a pattern of
25  racketeering activity; and

1          Fourth, that the enterprise affected interstate or

2    foreign commerce.

3          The first element the government must prove beyond a

4    reasonable doubt is that the enterprise alleged in the

5    indictment, the Courtlandt Avenue Crew, existed and engaged in

6    racketeering activity.  I previously instructed you on the

7    meaning of the terms enterprise and racketeering activity, and

8    you should apply those instructions here.

9          The second element the government must prove beyond a

10   reasonable doubt is that the defendant you are considering was

11   associated with or was employed by the enterprise.  The

12   government must prove that at some time during the period

13   charged in the indictment the defendant was associated with or

14   was employed by the enterprise.  It's not required that the

15   government prove that the defendant was associated with or

16   employed by the enterprise for the entire time that the

17   enterprise existed.  The government must also prove that the

18   defendant's association with the enterprise was knowing, that

19   is, made with knowledge of the existence of the criminal

20   enterprise through a general awareness of its nature and scope.

21   The government need not prove that the defendant you are

22   considering agreed with every other member of the enterprise,

23   knew all the other members of the enterprise, or had full

24   knowledge of all the details of the enterprise.  However, in

25   proving this element, the government must prove beyond a

CBS3MER6                          Jury Charge

reasonable doubt that the defendant you are considering was

connected to the enterprise in some meaningful way, and that

the defendant knew the general nature of the enterprise and

knew that the enterprise existed beyond his individual role.

If you find that the government has proven this element beyond

a reasonable doubt, then the second element is satisfied.

          The third element the government must prove beyond a

reasonable doubt is that the defendant you are considering

unlawfully, wilfully and knowingly conspired or agreed to

participate in the conduct of the affairs of the enterprise

through a pattern of racketeering activity.  The government

must prove that the defendant participated in some manner in

the overall affairs of the enterprise and objectives of the

conspiracy, and that he did so with the intent that he or

another member or members of the conspiracy would commit two or

more acts of racketeering as part of a pattern of racketeering

activity.

          For a conviction under count two, the government must

prove that the defendant you are considering intended to

further an endeavor which, if completed, would have satisfied

all the elements of the substantive racketeering offense

charged in count one.  The government is not required to prove

that the defendant personally committed or agreed to commit any

act of racketeering, nor is it required to prove that any acts

of racketeering actually occurred.  Rather, the government must

CBS3MER6                         Jury Charge

1    prove that the defendant agreed to participate in the

2    enterprise with the knowledge and intent that at least one

3    member of the racketeering conspiracy, which could be the

4    defendant himself, would commit at least two racketeering acts

5    in the conduct of the affairs of the enterprise.

6         I previously instructed you on the definitions of the

7    terms unlawfully, wilfully, and knowingly, and you should apply

8    those definitions here.

9         The fourth element the government must prove beyond a

10   reasonable doubt is that the criminal enterprise itself, or the

11   racketeering activities of those associated with it, had some

12   effect on interstate or foreign commerce.  This effect on

13   interstate commerce could have occurred in any way and it need

14   only have been minimal.

15        Interstate commerce includes the movement of goods,

16   services, money, and individuals between states or between the

17   United States and any foreign nation.  You need not find a

18   substantial effect on interstate commerce, nor is it necessary

19   for you to find that the defendant knew the enterprise was

20   engaged in interstate commerce, nor is it necessary that the

21   effect on interstate commerce have been adverse to commerce.

22   All that is necessary is that the activities of the enterprise

23   affect interstate or foreign commerce in some minimal way.  It

24   is sufficient, for example, that in the course of the

25   racketeering activities, members of the enterprise purchased

CBS3MER6                        Jury Charge

goods or services that had an effect on interstate commerce,

traveled interstate, used telephone facilities interstate or

took money from businesses that had an effect on interstate

commerce.

The commerce affected or potentially affected need not

be lawful.  Activities affecting or potentially affecting

unlawful interstate activity such as drug dealing and

trafficking fall within the purview of the statute.

Count one charges Joshua Meregildo, Melvin Colon, and

Earl Pierce with racketeering.  Specifically, count one reads

as follows:

From at least in or about the Spring 2010, up to and

including in or about September 2011, Joshua Meregildo, Melvin

Colon, and Earl Pierce, and others, known and unknown, being

persons employed by and associated with the Courtlandt Avenue

Crew, which was engaged in, and the activities of which

affected, interstate and foreign commerce, knowingly conducted

and participated directly and indirectly in the conduct of the

affairs of that enterprise through a pattern of racketeering

activity.

To meet its burden of proving a defendant guilty of

count one, the government must establish each of the following

five elements beyond a reasonable doubt:

First, that the enterprise existed;

Second, that the defendant you are considering was

CBS3MER6                    Jury Charge

1     employed by or knowingly agreed to associate himself with the

2     enterprise;

3            Third, that he engaged in a pattern of racketeering

4     activity;

5            Fourth, that he unlawfully, wilfully and knowingly

6     participated in or conducted the affairs of that enterprise

7     through a pattern of racketeering activity; and

8            Fifth, that the enterprise affected interstate or

9     foreign commerce.

10           Now, the first element the government must prove

11    beyond a reasonable doubt is that the enterprise alleged in the

12    indictment, the Courtlandt Avenue Crew, existed and engaged in

13    racketeering activity.  I previously instructed you on the

14    meaning of the terms enterprise and racketeering activity, and

15    you should apply those instructions here.

16           The second element the government must prove beyond a

17    reasonable doubt is that the defendant you are considering was

18    associated with or was employed by the enterprise.  I

19    previously instructed you on this element in connection with

20    count two.  Those instructions apply here as well.

21           The third element the government must prove beyond a

22    reasonable doubt is that the defendant you are considering

23    engaged in a pattern of racketeering activity.  During the

24    introduction to the racketeering charges, I instructed you that

25    a pattern of racketeering activity is a series of criminal acts

CBS3MER6                          Jury Charge

1    and requires proof that at least two acts of racketeering

2    committed within 10 years of one another were committed or

3    aided and abetted by participants in the enterprise.  These

4    acts of racketeering may not be isolated or disconnected, but

5    must be related to each other by a common scheme, plan or

6    motive.  The acts of racketeering must also amount to or pose a

7    threat of continued criminal activity.

8         In determining whether the racketeering acts

9    constituted a pattern, you may consider whether the acts were

10   closely related in time, whether the acts shared common victims

11   or common goals, and whether they shared a similarity of

12   methods.  If the same act were repeated more than once, you may

13   also consider this as evidence that the acts were part of a

14   part.

15        In contrast to the racketeering conspiracy charge,

16   count one requires the government to prove that the defendant

17   you are considering actually committed or aided and abetted the

18   commission of two or more of the racketeering acts.  While this

19   distinction may appear to complicate matters, I've structured

20   this charge to make it more understandable.

21        As I explained earlier, each of the racketeering acts

22   charged in count one are also charged as substantive counts in

23   the indictment.  Thus, for you to find a particular defendant

24   has personally committed an act of racketeering, you must have

25   found that defendant guilty of committing or aiding and

CBS3MER6                          Jury Charge

1   abetting the commission of the substantive offense.  I will now

2   detail how that applies to each defendant charged in count one.

3          Joshua Meregildo is charged in the indictment with

4   committing three acts of racketeering.  Racketeering act two

5   incorporates counts five and six, which charge the conspiracy

6   to murder Carrel Ogarro, and the murder of Carrel Ogarro on

7   July 31, 2010.  If you found Joshua Meregildo guilty of count

8   five, count six, or both, then he committed racketeering act

9   two.

10          Racketeering act four incorporates counts nine and 10,

11   which charge the conspiracy to murder rival drug distributors

12   and an assault and attempted murder on September 13, 2010.  If

13   you found Joshua Meregildo guilty of count nine, count 10, or

14   both, then he committed racketeering act four.

15          Racketeering act six incorporates count 13, which

16   charges the conspiracy to distribute crack cocaine and

17   marijuana.  If you found Joshua Meregildo guilty of count 13,

18   then he committed racketeering act six.  I instruct you that it

19   does not matter the drug, or drug weight, that you determined

20   was proved in connection with count 13.

21          The government has satisfied its burden against Joshua

22   Meregildo with respect to this element if you find that he

23   committed two of these racketeering acts.

24          Melvin Colon is charged in the indictment with

25   committing three acts of racketeering.  Racketeering act three

CBS3MER6                          Jury Charge

incorporates counts seven and eight, which charge the

conspiracy to murder Delquan Alston and the murder of Delquan

Alston on August 27, 2010.  If you found Melvin Colon guilty of

count seven, count eight, or both, then he committed

racketeering act three.

        Racketeering act five incorporates counts 11 and 12,

which charge the conspiracy to murder rival gang members and

the attempted murder of a rival gang member and the assault of

another person on September 8, 2011.  If you found Melvin Colon

guilty of count 11, count 12, or both, then he committed

racketeering act five.

        Racketeering act six incorporates count 13, which

charges the conspiracy to distribute crack cocaine and

marijuana.  If you found Melvin Colon guilty of count 13, then

he committed racketeering act six.

        I instruct you that it does not matter the drug, or

drug weight, that you determine was proved in connection with

count 13.

        The government has satisfied its burden against Melvin

Colon with respect to this element if you find that he

committed two of these racketeering acts.

        Now, Earl Pierce is charged in the indictment with

committing three acts of racketeering.  Racketeering act one

incorporates counts three and four, which charge the conspiracy

to murder rival narcotics distributors and the murder of Jason

Correa on July 25, 2010.  If you found Earl Pierce guilty of

count three, count four, or both, then he committed

racketeering act one.

Racketeering act four incorporates counts nine and 10,

which charge the conspiracy to murder rival drug distributors,

and an assault and attempted murder on September 13, 2010.  If

you found Earl Pierce guilty of count nine, count 10, or both,

then he committed racketeering act four.

Racketeering act six incorporates count 13, which

charges the conspiracy to distribute crack cocaine and

marijuana.  Thus, if you found Earl Pierce guilty of count 13,

then he committed racketeering act six.

I instruct you that it does not matter the drug, or

drug weight, that you determined is proved in connection with

count 13.

The government has satisfied its burden against Earl

Pierce with respect to this element if you find that he

committed two of these racketeering acts.

The fourth element the government must prove beyond a

reasonable doubt is that the defendant you are considering, in

committing the racketeering acts, participated in or was

conducting the affairs of the enterprise.  It's not enough that

there be an enterprise and that the defendant engaged in a

pattern of racketeering activity.  There must also be a

meaningful connection between the defendant's racketeering acts

CBS3MER6                    Jury Charge

1    and the affairs of the enterprise.  The defendant must have

2    conducted or participated in the enterprise by engaging in the

3    pattern of racketeering activity.

4          It is not necessary, however, that the racketeering

5    activity directly furthered the enterprise's activities.  It is

6    enough that the defendant's racketeering activity was related

7    to the enterprise's activities.

8          This element also requires that the defendant have had

9    some role in the operation, direction, or management of the

10   enterprise.  The government is not required to prove that the

11   defendant was the sole operator or manager of the enterprise,

12   or even that the defendant was a principal operator or manager.

13   It is sufficient if you find that the defendant provided

14   substantial assistance to those who conducted the enterprise

15   and thereby was involved in playing a part in the direction of

16   the affairs of the enterprise through a pattern of racketeering

17   activity.

18         The fifth element the government must prove beyond a

19   reasonable doubt is that the criminal enterprise itself, or the

20   racketeering activities of those associated with it, had some

21   effect on interstate or foreign commerce.  I previously

22   instructed you on this element under count two.  Those

23   instructions apply here as well.

24         In addition to all the elements of the offense that I

25   have just described, you must decide whether any act in

CBS3MER6                     Jury Charge

1    furtherance of the crime occurred within the Southern District

2    of New York, which includes Manhattan, the Bronx, and

3    Westchester.  I should note that on the issue of venue, and

4    this issue alone, the government need not offer proof beyond a

5    reasonable doubt but only by a mere preponderance of the

6    evidence.  Thus, the government has satisfied its venue

7    obligations if you conclude it is more likely than not that the

8    relevant act occurred in the Southern District of New York.  If

9    you find that the government has failed to prove this venue

10   requirement by a preponderance of the evidence, then you must

11   acquit the defendant.

12          Members of the jury, much earlier today in my charge,

13   in fact way back on page three, I discussed your duties as

14   jurors and instructed you about what is not evidence.  And I am

15   adding to that instruction.  And I previously told you at line

16   eight that you should bear in mind particularly that a question

17   put to a witness or a comment made to a witness is never

18   evidence.  It is only the answer in the context of the question

19   that is evidence.  And I told you then you may not consider any

20   answer that I directed you to disregard.

21          And ladies and gentlemen of the jury, nor any answer

22   given to a question for which I sustained an objection.  And we

23   will be making that change in the printed copy of your charge.

24   And the same holds true on page six, at line six, where I told

25   you, similarly, you are to disregard any testimony that I have

CBS3MER6                        Jury Charge

stricken, or an answer given to a question for which I have

sustained an objection.  That change will also be incorporated

in your written copy.

         Now, we're coming to some of my concluding charges to

you.  Your verdict must be based solely on the evidence or the

lack of evidence.  I'm at page 135.

         It would be improper for you to consider any personal

feelings you may have about a defendant's race, religion,

national origin, sex, or age.  Similarly, it would be improper

for you to consider any personal feelings you may have about

the race, religion, national origin, sex, or age of any witness

or anyone else involved in this case.  It would be equally

improper for you to allow any feelings you might have about the

nature of the crimes charged to interfere with your

decision-making process.  The defendants and the government are

entitled to a trial free from prejudice, and our judicial

system cannot work unless you reach your verdict through a fair

and impartial consideration of the evidence.

         The question of possible punishment of the defendant

is of no concern to the jury and should not in any sense enter

into or influence your deliberations.  The duty of imposing

sentence rests exclusively on the Court.  Your function is to

weigh the evidence in the case and to determine whether or not

a defendant is guilty beyond a reasonable doubt, solely on the

basis of such evidence.  Under your oath as jurors, you cannot

CBS3MER6                        Jury Charge

1    allow a consideration of the punishment that may be imposed on

2    a defendant if convicted to influence your verdict in any way,

3    or in any sense enter into your deliberations.

4            I remind you that the indictment is not evidence.  It

5    merely describes the charges against the defendants and is the

6    way the government brings them into court.  It is an

7    accusation.  Nothing more.  It may not be considered by you as

8    any evidence of the guilt of the defendants.

9            In reaching your determination of whether the

10   government has proven a defendant guilty beyond a reasonable

11   doubt, you may consider only the evidence introduced at trial,

12   or the lack of evidence.

13           During the course of the trial, you heard references

14   to some of the defendants by nicknames or a/k/a's.  There is

15   nothing improper or unlawful about having a nickname or an

16   a/k/a.  There is no allegation in this case that the nicknames

17   or a/k/a's of any defendant has anything to do with the

18   allegations against them.  You're not to consider a nickname or

19   an a/k/a as evidence of any wrongdoing.  This evidence was only

20   admitted for the limited purpose of identifying a defendant,

21   and so you may only consider it for that purpose.

22           Now, the government offered evidence tending to show

23   that on different occasions a defendant engaged in conduct

24   similar or related to conduct charged in the indictment.  Let

25   me remind you that the defendants are not on trial for

committing acts that are not charged in the indictment.

Accordingly, you may not consider this evidence of other acts

as a substitute for proof that the defendant you are

considering committed the acts charged in the indictment.  Nor

may you consider this evidence as proof that a defendant is

inclined to commit crime or has a bad character.  The evidence

of other uncharged acts was admitted for a much more limited

purpose, as I previously instructed you, and you may consider

it only for that limited purpose.

        If you determine that the defendant you are

considering committed the acts charged in the indictment and

the other uncharged acts as well, then you may, but you need

not, draw an inference that those uncharged acts are evidence

of the background to or development of the charged crimes, as

well as the relationship of trust among co-conspirators.

Evidence of these uncharged acts may not be considered by you

for any other purpose.  Specifically, you may not use this

evidence to conclude that because a defendant committed the

other uncharged acts, that he must have also committed the acts

charged in the indictment.

        Now, it is the duty of the attorney for each side of a

case to object when the other side offers testimony or other

evidence that the attorney believes is not properly admissible.

Counsel also have the right and duty to ask the Court to make

rulings of law and to request conferences at the side bar out

CBS3MER6                        Jury Charge

of the hearing of the jury.  You should not harbor any

prejudice against any attorney or party because the attorney

objected to the admissibility of evidence or asked for a

conference out of the hearing of the jury, or asked me for a

ruling on the law.

          Under your oath as jurors, you are not to be swayed by

fear, prejudice, bias, or sympathy.  You're to be guided solely

by the evidence in this case, and the crucial question that you

must ask yourselves as you sift through the evidence is has the

government proven the guilt of the defendant beyond a

reasonable doubt?

          It is for you, and you alone, to decide whether the

government has proven that the defendant you are considering is

guilty of the crime charged solely on the basis of the evidence

or lack of evidence and subject to the law as I've instructed

you.

          It must be clear to you that once you let fear or

prejudice or bias or sympathy interfere with your thinking,

there is a risk that you will not arrive at a true and just

verdict.

          If you have a reasonable doubt as to the defendant's

guilt, you should not hesitate to render a verdict of not

guilty.  On the other hand, if you should find that the

government has met its burden of proving a defendant's guilt

beyond a reasonable doubt, you should not hesitate because of

CBS3MER6                    Jury Charge

1    sympathy or any other reason to render a verdict of guilty.

2         Now, members of the jury, I told you that we would

3    provide you with a jury verdict sheet to aid in your

4    deliberations.  I'm going to ask my deputy to distribute copies

5    of this verdict sheet to you at this time.  And we will review

6    it together.

7         First, when you take an initial look at the first page

8    of this jury verdict sheet, you may be somewhat confused

9    because it starts with the first question is numbered three.

10   I'll take the credit or blame for that, because the way in

11   which we've organized my instructions to you, has turned some

12   of the counts in the indictment to the end as you just

13   observed.  We discussed count one of the indictment last in the

14   charges.  And count two of the indictment was next to last in

15   the charges.  And that's because it's much more logical to do

16   it the way I propose to do it.  And because I'm the judge, I

17   get my way.  One way or the other, the parties wind up agreeing

18   with me.

19        So, the only reason that it starts with number three

20   is as an aid to you.  That's talking about count three.  So

21   each question here relates to the same numbered count, because

22   otherwise, we would be starting with question one that related

23   to count three, and things would become even more confusing.

24   And my job as the judge is to try to dispel confusion and try,

25   as best we can, to make think simple and comprehensible for

CBS3MER6                         Jury Charge

1    you.  So, don't think that that's a typo.  It's very deliberate

2    in the verdict sheet.

3           So let's begin.  The jury unanimously decides on the

4    following verdict with respect to each count in the indictment

5    and as to each defendant.

6           Count three.  Conspiracy to murder members of the

7    Melrose Organization in aid of racketeering as charged against

8    Earl Pierce.

9           Question three.  How do you find the defendant Earl

10   Pierce with respect to count three?  Not guilty or guilty.

11   You'll check the line.

12          Count four.  Murder of Jason Correa in aid of

13   racketeering as charged against Earl Pierce.

14          Question four.  How do you find the defendant Earl

15   Pierce with respect to count four?  Not guilty or guilty.

16          Count five.  Conspiracy to murder Carrel Ogarro in aid

17   of racketeering as charged against Joshua Meregildo.

18          Question five.  How do you find the defendant Joshua

19   Meregildo with respect to count five?  Not guilty or guilty.

20          Count six.  Murder of Carrel Ogarro in aid of

21   racketeering as charged against Joshua Meregildo.

22          Question six.  How do you find the defendant Joshua

23   Meregildo with respect to count six?  Not guilty or guilty.

24          (Continued on next page)

25

Cbs1mer7

1          THE COURT:  Count Seven:  Conspiracy to murder Delquan

2    Alston in aid of racketeering as charged against Melvin Colon.

3          Question 7.  How do you find the defendant Melvin

4    Colon with respect to Count Seven?  Not guilty or guilty.

5          Count Eight:  Murder of Delquan Alston in aid of

6    racketeering as charged against Melvin Colon.

7          Question 8.  How do you find the defendant Melvin

8    Colon with respect to Count Seven -- excuse me -- with respect

9    to Count Eight?  Typo there.  That is a typo.  Count Eight.

10   Not guilty or guilty.

11         Count Nine:  Conspiracy to murder members of the 321

12   organization in aid of racketeering as charged against Joshua

13   Meregildo and Earl Pierce.

14         Question 9.  How do you find the defendants Joshua

15   Meregildo and Earl Pierce with respect to Count Nine?  And then

16   their names, not guilty or guilty, individual determinations on

17   each defendant, with respect to each crime charged against

18   them.

19         Count Ten:  Assault and attempted murder of Tarean

20   Joseph in aid of racketeering as charged against Joshua

21   Meregildo and Earl Pierce.

22         Question No. 10.  How do you find the defendants

23   Joshua Meregildo and Earl Pierce with respect to Count Ten?

24   Separate determinations for each of them.

25         Now an instruction.  If you find the defendant you are

Cbs1mer7

1  considering guilty on Count Ten, then please answer Questions

2  No. 10.1 and 10.2 for that defendant.  If you find the

3  defendant you are considering not guilty on Count Ten, please

4  skip Questions 10.1 and 10.2 for that defendant.

5         So Question 10.1.  Did the government prove beyond a

6  reasonable doubt that the defendant you are considering

7  assaulted Tarean Joseph?  Separate determinations, no or yes,

8  for each of the two defendants.

9         Question 10.2.  Did the government prove beyond a

10  reasonable doubt that the defendant you are considering

11  attempted to murder Tarean Joseph?  Once again, no or yes.

12         Count Eleven:  Conspiracy to murder members of the

13  Maria Lopez crew in aid of racketeering as charged against

14  Melvin Colon.

15         Question 11.  How do you find the defendant Melvin

16  Colon with respect to Count 11?  Not guilty or guilty.

17         Count Twelve:  Assault and attempted murder of Jing

18  Bao Jiang in aid of racketeering as charged against Melvin

19  Colon.

20         Question 12.  How do you find the defendant Melvin

21  Colon with respect to Count Twelve?  Not guilty or guilty.

22         Now an instruction.  If you find the defendant Melvin

23  Colon guilty on Count Twelve, please answer Questions 12.1 and

24  12.2.  If you find the defendant Melvin Colon not guilty on

25  Count Twelve, please skip Questions 12.1 and 12.2.

Cbs1mer7

1          Question 12.1.  Did the government prove beyond a

2    reasonable doubt that the defendant Melvin Colon assaulted Jing

3    Bao Jiang?  No or yes.

4          Question 12.2.  Did the government prove beyond a

5    reasonable doubt that the defendant Melvin Colon attempted to

6    murder Jing Bao Jiang?  No or yes.

7          Count Thirteen:  Narcotics conspiracy as charged

8    against Joshua Meregildo, Melvin Colon, Earl Pierce, and

9    Nolbert Miranda.

10          Question 13.  How do you find each defendant with

11    respect to Count Thirteen?  And then each defendant is listed,

12    and you'll make a separate determination on each defendant.

13          And then there's an instruction.  If you find the

14    defendant you are considering guilty on Count Thirteen, then

15    please answer Questions No. 13.1, 13.2 for that defendant.  If

16    you find the defendant you are considering not guilty on Count

17    Thirteen, please skip Questions No. 13.1 and 13.2 for that

18    defendant.

19          Question 13.1.  Did the defendant you found guilty of

20    Count Thirteen either have personal involvement with or was it

21    reasonably foreseeable to him that the narcotics conspiracy

22    involved marijuana?  You'll answer that question no or yes.

23          Question 13.2.  Did the defendant who you found guilty

24    of Count Thirteen either have personal involvement with or was

25    it reasonably foreseeable to him that the narcotics conspiracy

Cbs1mer7

involved crack cocaine?  You'll answer that no or yes.

Another instruction.  For each defendant that you find guilty of Count Thirteen and answered yes to Question 13.2, check one box on Question 13.3.  If you answered no to Question 13.2 for the defendant you are considering, please skip Question No. 13.3 for that defendant.

So, 13.3.  What amount of crack cocaine did the defendant you are considering either have personal involvement with or was reasonably foreseeable to him was involved in the narcotics conspiracy?  And there are three columns:  280 grams or more, 28 grams or more but less than 280 grams, or less than 28 grams.  Check only one of those boxes for a defendant.  And remember, you must be unanimous on that determination.

Count Fourteen:  Murder of Jason Correa in connection with a drug crime as charged against Earl Pierce.

There's an instruction.  Consider Count Fourteen only if you find the defendant Earl Pierce guilty of the narcotics conspiracy as charged in Count Thirteen and you find that the conspiracy involved 280 grams or more of crack cocaine.  If you find the defendant Earl Pierce not guilty of Count Thirteen or that the conspiracy involved less than 280 grams of crack cocaine, do not consider Count Fourteen and skip Question No. 14.

Question 14.  How do you find the defendant Earl Pierce with respect to Count Fourteen?  Not guilty or guilty.

Cbs1mer7

1        Count Fifteen:  Murder of Carrel Ogarro in connection

2   with a drug crime as charged against Joshua Meregildo.

3        Consider Count Fifteen only if you find the defendant

4   Joshua Meregildo guilty of the narcotics conspiracy as charged

5   in Count Thirteen and you find that the conspiracy involved

6   280 grams or more of crack cocaine.  If you find the defendant

7   Joshua Meregildo not guilty of Count Thirteen or that the

8   conspiracy involved less than 280 grams of crack cocaine, do

9   not consider Count Fifteen and skip Question No. 15.

10       Question 15.  How do you find the defendant Joshua

11  Meregildo with respect to Count Fifteen?  Not guilty or guilty.

12       Count Sixteen:  Murder of Delquan Alston in connection

13  with a drug crime as charged against Melvin Colon.

14       Consider Count Sixteen only if you find the defendant

15  Melvin Colon guilty of the narcotics conspiracy as charged in

16  Count Thirteen and you find that the conspiracy involved

17  280 grams or more of crack cocaine.  If you find the defendant

18  Melvin Colon not guilty of Count Thirteen or that the

19  conspiracy involved less than 280 grams of crack cocaine, do

20  not consider Count Sixteen and skip Question No. 16.

21       Question 16.  How do you find the defendant Melvin

22  Colon with respect to Count Sixteen?  Not guilty or guilty.

23       Count Seventeen:  Firearm possession or use during or

24  in furtherance of the murder of Jason Correa as charged against

25  Earl Pierce.

Cbs1mer7

1          Then an instruction.  Consider Count Seventeen only if

2     you find the defendant Earl Pierce guilty of the murder of

3     Jason Correa in aid of racketeering as charged in Count Four.

4     If you find the defendant Earl Pierce not guilty of Count Four,

5     do not consider Count Seventeen and skip Question No. 17.

6          Question 17.  How do you find the defendant Earl

7     Pierce with respect to Count Seventeen?  Not guilty or guilty.

8          Count Eighteen:  Firearm possession or use during or

9     in furtherance of the murder of Carrel Ogarro as charged

10    against Joshua Meregildo.

11         Consider Count Eighteen only if you find the defendant

12    Joshua Meregildo guilty of the murder of Carrel Ogarro in aid

13    of racketeering as charged in Count Six.  If you find the

14    defendant Joshua Meregildo not guilty of Count Six, do not

15    consider Count Eighteen and skip Question 18.

16         Question 18.  How do you find the defendant Joshua

17    Meregildo with respect to Count Eighteen?  Not guilty or

18    guilty.

19         Count Nineteen:  Firearm possession or use during or

20    in furtherance of the murder of Delquan Alston as charged

21    against Melvin Colon.

22         Consider Count Nineteen only if you find the defendant

23    Melvin Colon guilty of the murder of Delquan Alston in aid of

24    racketeering as charged in Count Eight.  If you find the

25    defendant Melvin Colon not guilty of Count Eight, do not

Cbs1mer7

1      consider Count Nineteen and skip Question No. 19.

2              Question 19.  How do you find the defendant Melvin

3      Colon with respect to Count Nineteen?  Not guilty or guilty.

4              Count Twenty:  Firearms possession or use during or in

5      furtherance of the assault and attempted murder of Tarean

6      Joseph as charged against Joshua Meregildo and Earl Pierce.

7              Consider Count Twenty against the defendant you are

8      considering only if you find that defendant guilty of the

9      assault and attempted murder of Tarean Joseph in aid of

10     racketeering as charged in Count Ten.  If you find the

11     defendant you are considering not guilty of Count Ten, do not

12     consider Count Twenty against that defendant and skip Questions

13     20, 20.1, and 20.2 for that defendant.

14             Question 20.  How do you find the defendant you are

15     considering with respect to Count Twenty?  Not guilty or

16     guilty.

17             If you find the defendant you're considering guilty on

18     Count Twenty, then please consider Questions Nos. 20.1 and 20.2

19     for that defendant.

20             If you find -- and I can see that this instruction is

21     just repeating what was right up above, so when we correct

22     this, we'll just strike the first set of instructions on it.

23     If you find the defendant you're considering not guilty on

24     Count Twenty, please skip Questions 20.1 and 20.2 for that

25     defendant.

Cbs1mer7

1          Question 20.1.  Did the government prove beyond a

2    reasonable doubt that a firearm was brandished?  You'll answer

3    that no or yes.

4          Question 20.2.  Did the government prove beyond a

5    reasonable doubt that a firearm was discharged?  Answer that

6    question no or yes.

7          Count Twenty-one:  Firearm possession or use during or

8    in furtherance of the conspiracy to murder members of the Maria

9    Lopez crew as charged against Melvin Colon.

10          Consider Count Twenty-one only if you find the

11    defendant Melvin Colon guilty of the assault and attempted

12    murder of Jing Bao Jiang in aid of racketeering as charged in

13    Count Eleven.  I see, by the way, Mr. Jiang's name is

14    misspelled there, so we'll correct that.  If you find the

15    defendant Melvin Colon not guilty of Count Eleven, do not

16    consider Count Twenty-one and skip Question Nos. 21, 21.1, and

17    21.2 for that defendant.

18          Question 21.  How do you find the defendant Melvin

19    Colon with respect to Count Twenty-one?  Not guilty or guilty.

20          If you find the defendant Melvin Colon guilty on Count

21    Twenty-one, then please answer Questions Nos. 21.1 and 21.2.

22    If you find the defendant Melvin Colon not guilty on Count

23    Twenty-one, please skip Questions 21.1 and 21.2.

24          21.1.  Did the government prove beyond a reasonable

25    doubt that a firearm was brandished?  No or yes.

Cbs1mer7

1          21.2.  Did the government prove beyond a reasonable

2      doubt that a firearm was discharged?  No or yes.

3          Count Twenty-two:  Firearm possession or use during or

4      in furtherance of a narcotics conspiracy as charged against

5      Joshua Meregildo, Melvin Colon, Earl Pierce, and Nolbert

6      Miranda.  Consider Count Twenty-two only if you find the

7      defendant you are considering guilty of the narcotics

8      conspiracy as charged in Count Thirteen.  If you find the

9      defendant you are considering not guilty of Count Thirteen, do

10     not consider Count Twenty-two and skip Question No. 22 for that

11     defendant.

12         Question 22.  How do you find each defendant with

13     respect to Count Twenty-two?  Not guilty or guilty.

14         And now Count Two:  Racketeering conspiracy as charged

15     against Joshua Meregildo, Melvin Colon, Earl Pierce, and

16     Nolbert Miranda.

17         Question 2.  How do you find each defendant with

18     respect to Count Two?  Not guilty or guilty.

19         Finally, Count One:  Racketeering enterprise as

20     charged against Joshua Meregildo, Melvin Colon, and Earl

21     Pierce.

22         Racketeering acts as charged against Joshua Meregildo:

23         Question 1.1.  Racketeering Act Two:  Did you find

24     Joshua Meregildo guilty of Count Five, Count Six, or both?  No

25     or yes.

Cbs1mer7

1          Racketeering Act Four.

2          1.2.  Racketeering Act Four:  Did you find Joshua

3  Meregildo guilty of Count Nine, Count Ten, or both?  No or yes.

4          Question 1.3.  Racketeering Act Six:  Did you find

5  Joshua Meregildo guilty of Count Thirteen?  No or yes.

6          Consider Count One against the defendant Joshua

7  Meregildo only if you answered yes to two or more of

8  Questions 1.1, 1.2, or 1.3.  If you answered no to two or more

9  of Questions 1.1, 1.2, or 1.3, do not consider Count One

10  against the defendant Joshua Meregildo and skip Question No. 1

11  for him.

12          Racketeering acts as charged against Melvin Colon:

13          1.4.  Racketeering Act Three:  Did you find Melvin

14  Colon guilty of Count Seven, Count Eight, or both?  No or yes.

15          Question 1.5.  Racketeering Act Five:  Did you find

16  Melvin Colon guilty of Count Eleven, Count Twelve, or both?  No

17  or yes.

18          Question 1.6.  Racketeering Act Six:  Did you find

19  Melvin Colon guilty of Count Thirteen?  No or yes.

20          Consider Count One against the defendant Melvin Colon

21  only if you answered yes to two or more of Questions 1.4, 1.5,

22  or 1.6.  If you answered no to two or more of Questions 1.4,

23  1.5, or 1.6, do not consider Count One against the defendant

24  Melvin Colon and skip Question No. 1 for him.

25          Racketeering acts as charged against Earl Pierce:

Cbs1mer7

1              1.7.  Racketeering Act One:  Did you find Earl Pierce

2       guilty of Count Three, Count Four, or both?  No or yes.

3              Question 1.8.  Racketeering Act Four:  Did you find

4       Earl Pierce guilty of Count Nine, Count Ten, or both?  No or

5       yes.

6              Question 1.9.  Racketeering Act Six:  Did you find

7       Earl Pierce guilty of Count Thirteen?  No or yes.

8              Consider Count One against the defendant Earl Pierce

9       only if you answered yes to two or more of Questions 1.7, 1.8,

10      or 1.9.  If you answered no to two or more of Questions 1.7,

11      1.8, or 1.9, do not consider Count One against the defendant

12      Earl Pierce and skip Question No. 1 for him.

13             Question 1.  How do you find each defendant with

14      respect to Count One?  Not guilty or guilty.

15             And then there is a place for your foreperson to fill

16      in the date and sign his or her name.

17             Now it's always good to read these verdict sheets.

18      Inevitably there's a typo or two.  We'll take care of that when

19      we send them into the jury room.  So you can just leave these

20      verdict sheets on your chairs with your binders.

21             Now shortly you're going to go into the jury room and

22      begin your deliberations.  If during those deliberations you

23      want to see any of the exhibits, they will be sent to you in

24      the jury room on request.  A list of the exhibits received in

25      evidence will be forwarded to you in the jury room.  If you

Cbs1mer7

1    want any of the testimony read, that can also be done and will

2    occur here in open court.  But please remember that it's not

3    always easy to locate what you might want so be as specific as

4    you possibly can in requesting exhibits or portions of

5    testimony that you may want.

6            Your requests for exhibits or testimony -- in fact any

7    communication with the court -- should be made in writing,

8    signed by your foreperson, and given to one of the marshals.  I

9    will respond to any questions or requests you have as promptly

10   as possible by having you return to the courtroom so that I can

11   speak to you in person.

12           Now the most important part of this case is the part

13   that you, as jurors, are about to play as you deliberate on the

14   issues of fact.  It's for you and you alone to decide whether

15   the government has proved beyond a reasonable doubt each of the

16   essential elements of the crime with which the defendant you

17   are considering is charged.  If the government has succeeded,

18   your verdict should be guilty.  If it has failed, it should be

19   not guilty.  In your oath, you promised that you would well and

20   truly try the issues joined in this case and a true verdict

21   render.  Your function is to weigh the evidence in the case and

22   determine whether or not the defendant you are considering has

23   been proven guilty beyond a reasonable doubt solely on the

24   basis of the evidence.

25           As you deliberate, please listen to the opinions of

Cbs1mer7

your fellow jurors and ask for an opportunity to express your

own views.  All of you must be present together to hear one

another when you deliberate.  If one or more of you are not

present, or you excuse yourself to use the restroom, all

deliberations should cease until you're all together again

around the jury table.  Every juror should be heard.  No one

juror should control or monopolize the deliberations.  Each of

you must decide this case for yourself after consideration with

your fellow jurors.  If after listening to your fellow jurors

you become convinced that your view is wrong, do not hesitate

to change your view.  On the other hand, do not surrender your

honest convictions and beliefs solely because of the opinions

of your fellow jurors or because you are outnumbered.  Your

final vote must reflect your conscientious belief as to how the

issues should be decided.

Your verdict must be unanimous.  If at any time you

are not in agreement, you are instructed that you are not to

reveal the standing of the jurors, that is, the split of the

vote, to anyone, including the court, at any time during your

deliberations.  Finally, I say this not because I think it's

necessary but because it's the custom in this courthouse to say

this.  You should treat each other with courtesy and respect in

your deliberations.

Your first task as a jury will be to choose your

foreperson.  The foreperson has no greater voice or authority

Cbs1mer7

1    than any other juror but is the person who will communicate

2    with the court when questions arise.

3            Your duty is to decide the issues fairly and

4    impartially and to see that justice is done.  Remember at all

5    times, you are not partisans.  You are judges -- judges of the

6    facts.  Your sole interests are to seek the truth from the

7    evidence in the case and determine whether the government has

8    proved or failed to prove beyond a reasonable doubt that the

9    defendant you are considering in this case committed the crime

10   alleged against him in the indictment.

11           Now, members of the jury, I ask your patience for a

12   few moments longer.  It's necessary for me to confer with

13   counsel and the reporter at the sidebar.  I'll ask you to

14   remain patiently in the jury box without speaking to each other

15   and we will return in a few moments.

16           Would counsel come up to the sidebar.

17           (At the sidebar)

18           THE COURT:  All right.  Are there any exceptions or

19   additional requests to charge?

20           MS. HELLER:  We just noticed two small typographical

21   errors.

22           THE COURT:  Go ahead.

23           MS. HELLER:  Page 124, line 3, specifically, Count Two

24   it reads.  It should say One.  You actually read it --

25           THE COURT:  I read it as One.  We're changing that.

Cbs1mer7

1              MS. HELLER:  And then the other one was page 128, line

2       14.  "You may also consider this as evidence that the acts were

3       a part of a --" "pattern," I believe it should say.

4              THE COURT:  Right.  We'll change that.

5              MS. HELLER:  The only other thing is that you noticed

6       one instance of "Jiang" being spelled wrong.  There is a second

7       one, on page 4.

8              THE COURT:  All right.  I will say that my observation

9       that there was a duplication of an instruction, on reflection,

10      I realized when I saw that it's not a duplication and it should

11      remain there.

12             MS. HELLER:  We agree.

13             MR. BECKER:  Your Honor --

14             THE COURT:  Go ahead.

15             MR. BECKER:  I'm sorry.

16             THE COURT:  Let me just take them in indictment order.

17             MR. LEE:  Your Honor, no additional requests.  I just

18      want to note for the record, of course, I previously did state

19      my objections to your Honor's instructions, co-defendants also

20      stated their objections, which I joined, and your Honor ruled,

21      but at this time I respectfully renew my objections to the --

22      which I previously stated as to the instructions.

23             Nothing further, your Honor.

24             THE COURT:  All right.  Thank you, Mr. Lee.

25             Mr. Dinnerstein?

Cbs1mer7

1          MR. DINNERSTEIN:  Your Honor, also, I objected to the

2    *Pinkerton* charge, and I just would like that on the record, but

3    nothing else.

4          THE COURT:  All right.

5          MR. MIEDEL:  Your Honor, I also renew all the previous

6    objections and the reasons that I stated for those.  In terms

7    of the verdict sheet, I almost hesitate to raise this, but on

8    Count Fourteen --

9          THE COURT:  Hold on.  Let me get it.

10         MR. MIEDEL:  The previous objection that I raised

11   which was on the previous page, which you corrected on 13.3, in

12   the instructions to Count Fourteen, Fifteen, and Sixteen, it

13   has the same language, which is, "If you find the defendant

14   Earl Pierce not guilty of Count Thirteen or that the conspiracy

15   involved less than 280 grams," I think that is if -- I assume

16   what that means is if you check the box or something like that

17   on the previous page, but it's the same objection, which is not

18   the conspiracy as a whole involved 280 grams or more but as to

19   Earl Pierce.  But I didn't see it until --

20         MR. FEE:  I don't understand.

21         MR. MIEDEL:  I'm not being clear.

22         THE COURT:  Please state it again.

23         MR. MIEDEL:  Sorry.  On 13.3, on the previous page,

24   you changed the language which had previously been "the

25   conspiracy involved," you changed that to "you are considering

Cbs1mer7

1   either to have personal involvement with or was reasonably

2   foreseeable."

3           THE COURT:  Okay.

4           MR. MIEDEL:  The language on the following

5   instructions is also "the conspiracy involved," and that's the

6   question -- that's the issue.

7           THE COURT:  I got it.  And I'm going to change it, all

8   right?  But I don't think I need to draw it to their attention.

9           MR. MIEDEL:  No, no, I don't think so.

10          THE COURT:  Let me just change it before we send it

11  in.

12          All right.  Anything further?

13          MR. MIEDEL:  No, your Honor.

14          THE COURT:  All right.

15          MR. BECKER:  Your Honor, may it please the court, with

16  respect to the verdict sheet -- and the change I'm going to

17  suggest, I also don't think necessarily need be told to the

18  jury, but I think it should be changed.

19          The bottom of page 4, where you tell the jury that if

20  you -- and this is with respect to the drug conspiracy count.

21  "If you find the defendant you are considering not guilty on

22  Count Thirteen, please skip Questions No. 13.1 and 13.2 for

23  that defendant."  Respectfully, it should say and 13.3,

24  because --

25          (Pause)

Cbs1mer7

1              MR. BECKER:  I couldn't help but overhear what

2     Mr. Gosnell just said, and I considered that before lodging my

3     objection.

4              THE COURT:  I'll put it in, okay?

5              MR. BECKER:  For clarity's sake.

6              THE COURT:  It's like earflaps; right?

7              MR. BECKER:  Your Honor, in addition, I guess I also

8     previously made a number of objections and provided -- to your

9     Honor's charge and provided the bases therefor pursuant to

10     Rule -- I think it's 30 of the Federal Rules of Criminal

11     Procedure, and I restate and reassert them here.

12              Your Honor, other than that, I have nothing else.

13              However, there is one other potential issue that I

14     want to bring to the court's attention.  It involves the other

15     defendants and I have not mentioned it to other counsel.  I

16     don't want to raise it without -- if the court could give us 60

17     seconds, I can -- we can stand right over there and then report

18     back.

19              THE COURT:  That's fine.

20              MR. BECKER:  Thank you.

21              THE COURT:  We'll wait for you.

22              (Defense counsel conferring)

23              MR. MIEDEL:  Your Honor, Mr. Becker has located an

24     issue in the jury charge that is a potential serious problem on

25     one of the instructions, and even though it doesn't affect his

Cbs1mer7

1    client, I ask that he be allowed to make the argument for us

2    because he has thought about it the most.

3         MR. BECKER:  Your Honor, it concerns Count One, and it

4    starts at page 129, the last sentence.  And that last sentence

5    which says, "The government has satisfied its burden against

6    Joshua Meregildo with respect to this element if you find he

7    committed two of these racketeering acts."  It is repeated on

8    the following pages with respect to the other two.

9         THE COURT:  Fine.

10        MR. BECKER:  The problem is this, your Honor:  The law

11   is clear and your Honor's instructions make clear that a

12   pattern -- to find a pattern of racketeering, the jury must

13   find more than the commission of two predicate acts.  Two

14   predicate acts are required but clearly not sufficient.  That's

15   black letter law, and the court has indicated earlier about

16   relatedness and continuity.  This jury charge is titled

17   Engagement in a Pattern of Racketeering against Joshua

18   Meregildo, and the same for every -- you were in effect

19   instructing the jury as a matter of law that if they find the

20   defendant in question committed two acts, he committed a

21   pattern of racketeering, and that's a jury determination to

22   make; that's not a legal instruction to give them.  I think it

23   would be clear error.

24        And so I think the simple solution would be to say

25   that it satisfies the burden if you find he committed at least

Cbs1mer7

1     two of these acts and you further find, as I previously

2     instructed you -- and we could go back and pick up the exact

3     language -- that they were related, the continuity, whatever

4     the phrase was, but to omit that, I submit, would be very

5     prejudicial, certainly to the defendants charged in Count One

6     in particular, but potentially also with respect to Mr. Miranda

7     on Count Two, because when they consider the conspiracy

8     elements, this could factor into their thinking in a way that

9     is prejudicial to Mr. Miranda.

10          MR. FEE:  Your Honor, we agree with Mr. Becker.  I

11    think it could be accomplished by referring to your earlier

12    instructions.  I don't know if you can restate just for

13    convenience sake.  I'm just --

14          MR. BECKER:  I'm heartened that the government agrees.

15    I think that the -- and the best way to do it would be not

16    to -- would be to very briefly refer to that by saying -- and

17    collectively -- finding the language in a minute or so -- by

18    referring to the relatedness and continuity.

19          MR. FEE:  Or just pattern.  What you need to do to

20    find a pattern of racketeering, because I believe that's where

21    the relatedness instruction is located, but of course the court

22    can decide.

23          MR. BECKER:  Your Honor, page 128 does provide some

24    discussion.

25          THE COURT:  All right.  Let's put it in.  What do you

Cbs1mer7

1     want --

2          MR. BECKER:  Yes, your Honor just a suggestion for the

3     court's consideration, and this is from page 128, and I guess

4     it's the second paragraph, where you tell the jury that there

5     must be proof that at least two acts of racketeering committed

6     within ten years of each other -- of one another were committed

7     and aided or abetted and they may not be isolated or

8     disconnected but must be related to each other by a common

9     scheme, plan, or motive, and they must also amount to or

10    propose a threat of continued criminal activity.  Some summary

11    of that sentiment.

12         THE COURT:  I'm working on it right now.

13         MR. BECKER:  Thank you, your Honor.

14         THE COURT:  All right.  How about --

15         MR. DINNERSTEIN:  Your Honor, I have to bring

16    something up as an officer of the court.  Count Twenty-one of

17    the verdict sheet, there's actually an error in Count

18    Twenty-one of the verdict sheet.

19         THE COURT:  Okay.  Can we just --

20         MR. DINNERSTEIN:  Let's finish this first?

21         THE COURT:  All right.

22         MR. BECKER:  Mr. Miedel has something.  Oh, I'm sorry.

23         THE COURT:  "The government has satisfied its burden

24    against Joshua Meregildo with respect to this element if you

25    find that he committed two of these racketeering acts and that

Cbs1mer7

1 the acts were related in time, shared common victims or goals,

2 and a similarity of methods."

3    MR. BECKER:  Your Honor, I would respectfully request

4 that you insert that "they constituted a pattern of

5 racketeering activity as I have previously instructed you."

6    THE COURT:  That may be the easiest way.

7    MR. BECKER:  Perhaps, yes.

8    MR. FEE:  Your Honor, I think we would strongly prefer

9 that, instead of.  To mix the pattern with the acts --

10    THE COURT:  Committed two of these racketeering acts.

11    MR. BECKER:  And that those acts -- how about that?

12    THE COURT:  "And that those acts constituted a pattern

13 of racketeering activity as I previously defined"?

14    MR. BECKER:  Yes, I think that's good.

15    THE COURT:  Is that acceptable?

16    MR. BECKER:  Yes.

17    MR. FEE:  I think were part of the racketeering,

18 because the two acts themselves don't have to be the entire

19 pattern, but --

20    MR. BECKER:  Well --

21    MR. FEE:  The two acts must be a part of the pattern;

22 they don't have to be the pattern.

23    MR. BECKER:  Is that true?

24    MR. ARAVIND:  Yes, and that's page 72.

25    (In open court)

Cbs1mer7

1          THE COURT:  Let's take a break for three minutes,

2     members of the jury.  You know the way to the jury room.

3          (Jury excused)

4          THE COURT:  We can return to counsel tables.

5          (In open court; jury not present)

6          THE COURT:  All right.  On the issue we were just

7     discussing at bottom of page 129, line 18, let me propose this:

8     "The government has satisfied its burden against Joshua

9     Meregildo with respect to this element if you find that he

10     committed two of these racketeering acts and that those acts

11     were part of a pattern of racketeering activity as I have

12     previously defined that term."  Is that acceptable to the

13     government?

14          MR. FEE:  Absolutely, your Honor.

15          THE COURT:  Is that acceptable to --

16          MR. BECKER:  Your Honor, I'm just looking back, if the

17     court could indulge me for a few seconds, on whether or not it

18     is sufficient to say that or whether or not those two acts had

19     to constitute a pattern of racketeering.  I'm not saying the

20     government's wrong by saying only if they only may be a part

21     of, but I just want to check if there's something in the

22     court's other instructions that sheds some light on that

23     question.

24          MR. MIEDEL:  And your Honor, obviously this applies

25     also to page 130 and part of 131.

Cbs1mer7

 1              THE COURT:  Right.  We're just using the one we've

 2      been discussing at the sidebar, but obviously it applies to all

 3      three defendants charged in Count One.

 4              MR. BECKER:  Your Honor, at this time I have no basis

 5      to say that the government's wrong, so I'm not.  In other

 6      words, I think as the court has proposed -- there's no

 7      objection as the court has proposed it.

 8              THE COURT:  All right.  But you're without portfolio,

 9      so --

10              MR. BECKER:  Yes, it's not mine.

11              THE COURT:  Mr. Lee, any objection to it?

12              MR. LEE:  No, your Honor.

13              THE COURT:  Mr. Dinnerstein?

14              MR. DINNERSTEIN:  No, I don't have any objection to

15      that.

16              MR. MIEDEL:  No objection.

17              THE COURT:  All right.

18              MR. BECKER:  Your Honor, I do think that this

19      change -- I don't know how other counsel feels -- might be

20      important enough that the court --

21              THE COURT:  I'm going to do a call.  It's a

22      substantive change.  I'm going to bring it to their attention.

23              Now I hesitate to burden the record with about a dozen

24      very minor literally typographical errors like, for example, on

25      page 76, line 2, the name Joshua Meregildo appeared twice.

Cbs1mer7

1    Obviously I only read it once.  I'm deleting it.  I don't find

2    any of these changes to be of any consequence, but let me just

3    shout them out.

4                    (Continued on next page)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

CBS3MER8                    Jury Charge

1          THE COURT:  Page 33, line 19, I'm deleting the second
2   time the word "charged" is referenced on that line.
3          Page 44, line 11, I'm changing "a" to "the."
4          Page 76, line 2, I deleted "Joshua Meregildo."
5          Page 77, line 6, I changed the language "to attempted
6   to murder members."
7          Page 83, line 5, I changed "in" to "is."
8          Page 89, line 6, I changed to "instructed you on the
9   meaning."
10         Page 90, line 6, I changed to "count three, the murder
11  of members" to make consistent.
12         Page 98, line 13, I deleted "or person" to make it
13  consistent.  And line 22 I changed to "17."
14         Page 101, lines 7 to 8 I added "September 13, 2010" to
15  count 10, and changed "2010" to "2011" for count 12.
16         Page 108, line 13, I changed "killing" to "shooting."
17         Page 110, line 12, I changed "20" to "21."
18         And page 115, line 7, which we've already discussed, I
19  added "or aided and abetted."
20         Now, Mr. Dinnerstein, you had something.
21         MR. DINNERSTEIN:  Yes, I have.  There is actually an
22  error in the verdict sheet on count 21.
23         THE COURT:  All right.  Hang on.
24         MR. DINNERSTEIN:  Page nine of the verdict sheet.
25         THE COURT:  Thank you.  Go ahead.

CBS3MER8                    Jury Charge

1              MR. DINNERSTEIN:  Your Honor, the beginning is

2      correct.  It talks about in furtherance of the conspiracy to

3      murder members of the Maria Lopez Crew.  But in the body of

4      that it talks about the assault and attempted murder of the

5      Jing Bao Jiang in aid of racketeering as charged in count 11.

6      He's actually charged in count 12, and I believe that the body

7      of that should actually make reference to what it says at the

8      beginning, which is the conspiracy to murder members of the

9      Maria Lopez Crew.

10             MS. HELLER:  We certainly agree.

11             THE COURT:  I'm changing that.

12             MR. BECKER:  Your Honor --

13             THE COURT:  That's all in the better late than never

14     department.

15             MR. BECKER:  Page 110, line 12, was count 20 changed

16     to count 21?

17             THE COURT:  Yes.

18             MR. BECKER:  Thank you.

19             THE COURT:  Anything else?  So the only thing that I'm

20     going to review with them, and I'll review it three separate

21     times for the three defendants, is that concluding line on the

22     third element under in count one of the racketeering charge for

23     each defendant.  And I'm not going to call out to them the

24     changes in the jury verdict sheet unless somebody thinks it's

25     necessary.  Seeing no one --

CBS3MER8                    Jury Charge

1          MR. DINNERSTEIN:  I don't think so.

2          THE COURT:  -- rising to their feet.  All right.

3     Let's bring in the jury.

4          MS. HELLER:  So the Court knows, we did start revising

5     the exhibit list during lunch, but we have not finished it.

6     There were a lot of things to change.  We want to be careful.

7          (Jury present)

8          THE COURT:  All right, members of the jury, we're

9     almost there.  I want to turn your attention back to page 129

10    of the charge.  And specifically, I want to amplify and

11    supplement my instruction that begins at line 18.  It will read

12    in the charge that's sent in to you:

13          The government has satisfied its burden against Joshua

14    Meregildo with respect to this element, if you find that he

15    committed two of these racketeering acts, and that those acts

16    were part of a pattern of racketeering activity as I have

17    previously defined that term.

18          The same change, members of the jury, I will be making

19    on the next page, with respect to my instruction to you

20    regarding Melvin Colon.  Specifically, I will tell you that the

21    government has satisfied its burden against Melvin Colon with

22    respect to this element if you find that he committed two of

23    these racketeering acts, and that those acts were part of a

24    pattern of racketeering activity as I've previously defined

25    that term.

CBS3MER8                    Jury Charge

1          And I am also amplifying the charge with respect to

2     the defendant Earl Pierce on page 131, at line 18.  It will

3     reads as follows:  The government has satisfied its burden

4     against Earl Pierce with respect to this element if you find

5     that he committed two of these racketeering acts, and that

6     those acts were part of a pattern of racketeering activity as

7     I've previously defined that term.

8          Now, I've also made one or two more corrections in the

9     jury verdict sheet.  I'm not going to discuss them, it will be

10    self-evident to you when a verdict sheet is sent in to you.

11         Now, in a moment I'm going to be sending you into the

12    jury room to begin your deliberations.  A little while after

13    that, I will send some copies of the jury charge to you as

14    they've been changed, I will send some copies of the verdict

15    sheet to you as it has been changed.

16         It is important that at such time as you reach a

17    verdict in this case, that your foreperson come in to court

18    with only one verdict sheet.  Because if anyone else brings a

19    verdict sheet in, then I'm going to have to ask a number of

20    questions about that.  And given the length of the verdict

21    sheet, that will take some time.  So, only the foreperson

22    should bring a verdict sheet into the courtroom.

23         Now, at such time as you reach a verdict, you should

24    send a note signed by your foreperson to me through the marshal

25    telling me that you've reached a verdict.  And then I will

CBS3MER8                    Jury Charge

1   bring you into the courtroom and we will address your verdict

2   and you will bring the verdict sheet with you.

3        You will have as much time as you need to deliberate

4   in this case.  I ask that you deliberate today until at least

5   5 o'clock.  If you wish to work longer, you may.  If you do not

6   reach a verdict, you'll return tomorrow, and as soon as you're

7   all here, you will begin your deliberations again.

8        We will be in a position to receive notes from you

9   whenever you feel the need to communicate with us.  I will just

10  tell you that between the hour of one and two, we will not be

11  in a position to receive notes from you because, like you, we

12  will be having our luncheon recess.  You will be having your

13  lunches together in the jury room, but we will be taking our

14  luncheon recess.

15       So, at this time, I'm going to direct that the oath be

16  administered to the marshal.

17       (Marshal sworn)

18       THE COURT:  All right.  We will send in shortly to you

19  copies of the charge, copies of the redacted -- a copy of the

20  redacted indictment, copies of the verdict sheet, a list of

21  exhibits received in evidence, and we will wait to hear from

22  you.  Please recess the jury.

23       Leave your binders -- I'm going to ask the two

24  alternates remain in the jury box.

25       (Jury begins deliberations.  Time noted:  3:30 p.m.)

CBS3MER8                         Deliberations

THE COURT:  Well, you probably may think that your

work is done.  But it's not.  We never know what's going to

happen in the course of a jury deliberation.  So, I am going to

continue my instruction to both of you that you not discuss

this case with anyone, because there may come a time that we

need to press you into service in the jury room in this case.

I'm going to ask Juror No. 13 to report to the

courthouse tomorrow morning by 10 o'clock.  But you won't be

coming to the 20th floor, you will be coming to my chambers and

my deputy will give you some instructions on that.

And Juror No. 14, you can go to work tomorrow, but we

want to have your phone numbers because we might need you.  And

we will continue to need to know how to reach you until such

time as I decide that we no longer need you in the case.

But for now, neither of you is to have any further

contact with the jurors who are deliberating.  I'm sure that

friendships develop, don't speak to them.  As soon as there is

a verdict in this case, we will be communicating with you to

let you know about it, and then you'll be free to talk to them

or anyone else.  But for now I'm going to keep you under all of

the restrictions that we've previously imposed on you.

And Juror No. 13, you'll report tomorrow morning.  My

deputy will escort you to the jury room so that you can get

your personal belongings today, and you're free to go home for

the balance of the day.

1          If I don't see either of you, I will see Juror No. 13

2     tomorrow, but if I don't see you again, Juror No. 14, and only

3     communicate by phone, I want to thank you for your diligence

4     and your service in this case.  The Court and all of the

5     parties appreciate what this jury has been doing over what has

6     turned into an extended trial.

7          A JUROR:  You're welcome.

8          THE COURT:  At this time, please recess the

9     alternates.

10          (Alternate jurors excused)

11          THE COURT:  Are there any other issues that counsel

12     want to raise at this moment?

13          MS. HELLER:  Just a question of procedure.  In terms

14     of should we just wait in terms of what time we leave, just

15     await word from Mr. Gosnell, or does the Court like everyone to

16     come back into the courtroom at a certain time?

17          THE COURT:  I'm going to bring the jury back into the

18     courtroom at 5 o'clock unless I hear from them that they want

19     to work longer.  And I expect, because this is not California,

20     that counsel will be here.

21          MS. HELLER:  Yes.

22          THE COURT:  Don't go far.

23          MS. HELLER:  We'll certainly be here at 5 o'clock.  In

24     terms of the morning, does your Honor like us to report at

25     10 o'clock to the courtroom or not?

CBS3MER8                    Deliberations

1          THE COURT:  How else -- yes.  I do.

2          MS. HELLER:  Okay.

3          THE COURT:  I expect yes.

4          MR. BECKER:  Your Honor, I know your Honor stated and

5     certainly the Court's intention that the jury will have as much

6     time as it needs.  I don't doubt that for a second.  I'm

7     wondering though if the jury has a sense in their mind, for

8     example, assuming there is no verdict by Friday, whether that's

9     a regular day.  If perhaps you could just --

10         THE COURT:  I'm going to discuss it with them at

11    5 o'clock.  But I --

12         MR. BECKER:  Very well.

13         THE COURT:  Okay?  Anything else?  We'll make the

14    corrections but we need the exhibit list and then I'll conduct

15    a very brief proceeding with counsel and parties to get the

16    exhibit list in to the jury room.

17         MS. HELLER:  I think we can finish it in 20 minutes.

18         THE COURT:  Great.  We'll plan on reconvening in about

19    20 minutes.  I should be able to get the jury verdict sheet

20    turned around by that time as well.  The defendants may be

21    excused from the courtroom.

22         (Recess pending verdict)

23         (in open court; jury not present.  Time noted:

24    4:25 p.m.)

25         THE COURT:  Did my deputy circulate to you a revised

CBS3MER8                    Deliberations

1  verdict sheet?

2          MR. FEE:  He did, your Honor.  All counsel now have a

3  copy.

4          THE COURT:  All right.

5          MR. FEE:  Your Honor, the exhibit list Ms. Heller is

6  bringing up as we speak.  And we'll distribute a copy as soon

7  as she arrives.

8          THE COURT:  What about the redacted indictment?

9          MR. FEE:  We gave copies to Mr. Gosnell.  I'm not sure

10  where they are right now.

11          THE COURT:  All right.

12          MR. FEE:  I believe they're right there.

13          THE COURT:  Are there any exceptions to the jury

14  verdict sheet as revised?

15          MR. FEE:  May we have just one moment, your Honor?

16  Thank you.

17          (Pause)

18          THE COURT:  As discussed, revisions have been made in

19  the charge.  I'm going to mark the charge as Court Exhibit 1.

20  And I'm going to send two copies in to the -- I'm going to send

21  one copy into the jury room at this point.

22          I received from the government a master exhibit list.

23  Is this master exhibit list acceptable to all of the parties to

24  send in to the jury room for them to have during their

25  deliberations.

CBS3MER8                           Deliberations

1            MR. BECKER:  Your Honor, it is not acceptable to

2    Mr. Miranda and I should note that I received it --

3            THE COURT:  Okay.  I understand when you received it.

4    Just tell me what's not acceptable.

5            MR. BECKER:  Yes, your Honor.  What I was going to say

6    is that because I just received it when your Honor did, I

7    haven't had a chance to review it.  But what I know is not

8    acceptable because we've had discussions, I had a discussion

9    with Mr. Fee --

10           THE COURT:  I'm still waiting to know what it is.

11           MR. BECKER:  16.1 to 16.6 exhibit on the defense

12   exhibit, it is the last page, your Honor.  And it identifies

13   the photographs that I introduced of Lillian Miranda Kanote,

14   Mr. Miranda's aunt, who testified that that was her residence.

15   And I want the photos to be identified as such.  If the

16   government -- the government photographs, the way it identifies

17   them is by reference to the person or persons that it's

18   relevant to.  So for example, with respect --

19           THE COURT:  Okay.  Why can't you change the

20   description?

21           MR. FEE:  Your Honor, we oppose putting something in

22   there that relates to a disputed issue like Miranda's

23   residence.  We are afraid the jury is going to believe it is a

24   concession that's where Nolbert Miranda lived.  Even

25   Ms. Kanote's testimony said he didn't live there all the time.

CBS3MER8                    Deliberations

```
1            THE COURT:  What about Kanote's residence?

2            MR. FEE:  That's fine with us, your Honor.

3            MR. BECKER:  Your Honor, her legal name when she was

4    sworn in was Lillian Miranda Kanote.  That is her legal name.

5    The government, when they described photos they talk about --

6            THE COURT:  Make it Lillian Miranda Kanote's

7    residence.

8            MR. BECKER:  Thank you.

9            THE COURT:  Or apartment.

10           MR. BECKER:  And I have no objection to it saying 2950

11   Park Avenue, which is what it was.  But it should have her name

12   as well.

13           THE COURT:  What else?

14           MR. LEE:  Your Honor, Exhibit 251, I believe that is

15   not clear or accurate.  It is a list created by Special Agent

16   Castillo.

17           THE COURT:  Okay.  All right.  I tell you what.  You

18   all can sit and confer about all of this.  Because I'm not

19   going to chop chicken liver with you.  I'm not sending in an

20   exhibit list right now.  I'm sending in the jury charge.  Any

21   objection to sending in the redacted indictment?  Have all

22   counsel reviewed it?  Mr. Lee, any objection?

23           MR. LEE:  None.

24           THE COURT:  Mr. Dinnerstein?

25           MR. DINNERSTEIN:  No objection.
```

1          MR. MIEDEL:  No objection.

2          THE COURT:  Mr. Becker?

3          MR. BECKER:  Your Honor, I don't believe I was given

4    it.

5          THE COURT:  No.  Here.  If we're going to play that,

6    take a look at it right now.

7          MR. BECKER:  I'm not playing.  You asked me a

8    question, I answered you, your Honor.

9          THE COURT:  What about the jury verdict sheet.  Any

10   objection?

11         MR. FEE:  No objection, your Honor.

12         THE COURT:  Any objection, Mr. Lee?

13         MR. LEE:  No, your Honor.

14         THE COURT:  Mr. Dinnerstein?

15         MR. DINNERSTEIN:  No objection.

16         MR. MIEDEL:  No objection.

17         MR. BECKER:  No objection to the jury verdict sheet.

18         THE COURT:  That's good.  I'm sending the jury charge

19   and the verdict sheet into the jury room right now.  The charge

20   is marked as Court Exhibit 1.

21         MR. BECKER:  Having seen the superseding indictment as

22   redacted, I have no objection to that either.

23         THE COURT:  All right.  Hold on, Mr. Deputy.  Send a

24   copy of the redacted indictment in.  I'll move this along.

25         Now, you can confer to your heart's content on the

CBS3MER8                    Deliberations

exhibit list.  I've received a note from the jury which I'll

mark as Court Exhibit 2.  It reads as follows:  We've selected

a foreperson, Allison Ramos, Juror No. 4.  And, we're leaving

at 5 p.m. today.  And it's signed by Ms. Ramos as the

foreperson.

         I'm marking this as Court Exhibit 2.  Show it to

counsel.  I will bring the jury out at 5 o'clock if I don't

hear from them further and give them some instructions.

         So the defendants should be returned to the courtroom

promptly at 5 o'clock so that they can see the jury and the

jury can see them and I'll give instructions.  And all counsel

are directed to remain in the courtroom and confer until you've

agreed on the descriptions for the exhibit list.  No one is to

leave.

         So at this point the defendants can be escorted from

the courtroom.  Okay.  Meet and confer because we're going to

get a verdict before Christmas.  I know that apparently you

folks have different views about what you want to do.  But I'm

not going to tolerate it.

         (Recess pending verdict)

         (In open court; jury not present.  Time noted:

5 p.m.)

         THE COURT:  Let's bring in the jury.  I've received a

note from the jury that we'll mark as Court Exhibit 3.  It

reads as follows:  Can we please have the following:  A white

board, list of evidence, and two or more jury charge binders.

Signed by the foreperson.

           Mark it as Court Exhibit 3.  We'll show it to counsel

after I send the jury home.  Bring the jury in.

           (Jury present)

           THE COURT:  Good evening, members of the jury.  We

know that you've been hard at work, that you've elected a

foreperson, and I received another note from you that we've

marked as a court exhibit and you will have those supplies and

the exhibit list in the jury room waiting for you tomorrow.

I'm going to send you home now for the evening.

           Tomorrow, as soon as you are all together in the jury

room, you'll send us the customary signal because we keep track

of when juries are deliberating.

           Remember, tomorrow morning when you arrive, don't have

any discussion about the case until all of you are together in

the jury room.  Then you can begin your deliberations and we

will await further communications from you tomorrow morning.

Remember also that we will not be in a position to receive

notes from you tomorrow between 1 and 2 p.m.

           If you do not reach a verdict tomorrow and do not

otherwise communicate with the Court about your intentions, I

will bring you back into the courtroom as I'm doing this

evening at 5 o'clock, give you some instructions and send you

home.  And you will return on Friday to resume your

CBS3MER8                      Deliberations

1    deliberations.  Because you are now a deliberating jury, I will

2    expect that you will continue to deliberate on Friday until

3    5 o'clock or such time as you reach a verdict.  If you don't

4    reach a verdict on Friday, then you'll return on Monday to

5    continue your deliberations.

6           But for now, put this case out of your mind.  I know I

7    can say that; it may be difficult to do.  But, put it out of

8    your mind.  It's been an intense couple of days here with

9    closing arguments and my instructions on the law.  Get rested

10   and refreshed and come back tomorrow ready to resume your

11   deliberations in the highest traditions of this court.

12          Keep an open mind, come to no conclusions, and don't

13   discuss the case with anyone overnight.  Have a safe trip home

14   and a great evening.  We'll see you all tomorrow morning.

15   Please recess the jury.

16          (Jury excused)

17          THE COURT:  First of all, show Court Exhibit 3 to

18   counsel.

19          MR. DINNERSTEIN:  Your Honor, that's the second note

20   we got from them.  So what's Court Exhibit 1?

21          THE COURT:  The charge.

22          MR. DINNERSTEIN:  Okay.

23          THE COURT:  We will e-mail to counsel this evening the

24   charge as it was finally configured.  I've been handed a new

25   master exhibit list.  Have the parties reached agreement?

CBS3MER8                        Deliberations

1          MS. HELLER:  It's my understanding that we have, your

2     Honor.

3          THE COURT:  Have counsel reviewed this master exhibit

4     list and do they consent to it being sent into the jury room

5     tomorrow morning?

6          MR. LEE:  Your Honor, I have.  Joshua Meregildo has no

7     objection to the master exhibit list.

8          MR. DINNERSTEIN:  It's fine.

9          MR. MIEDEL:  No objection.

10          MR. BECKER:  Your Honor, we worked it out and there is

11     no objection.

12          THE COURT:  All right.  We'll mark it as Court Exhibit

13     4 and send it into the jury room.  Given the jury's request in

14     Court Exhibit 3, we'll see that they get a white board

15     tomorrow, couple more copies of the charge, and they'll have

16     the master exhibit list.

17          Are there any other issues that counsel want to raise

18     this evening?

19          MS. HELLER:  Just a question, your Honor.  What time

20     would you like us here tomorrow morning?

21          THE COURT:  I think it's good to be here by 9:45.  The

22     jury has generally been early.  If we get a note we'll be

23     prepared to deal with it.  Any other issues?

24          Obviously, this is the most painful part of any trial.

25     Waiting, waiting for a jury verdict.  I remember well, even

CBS3MER8                        Deliberations

1   though it's a long time ago, but because it's so excruciating,

2   I remember many a time waiting for a jury verdict.  So, I do

3   feel your pain and I still continue, even though I don't have a

4   horse in the race, I'm always on edge waiting for a verdict.

5   So we'll see what happens.

6           Whatever happens, I want to commend all counsel for

7   their presentations.  Both of the evidence and their arguments

8   to the Court.  Their letter applications, all of it, in my

9   view, represented great advocacy on behalf of the parties'

10  respective positions.  And it seems that no stones were left

11  unturned.

12          So, I'll see you all tomorrow morning.  You probably

13  hopefully will get a good night's sleep or at least a little

14  rest.  And we'll start afresh tomorrow.

15          All right?  Have a good evening.  The defendants can

16  be escorted from the courtroom.  I've got another matter on at

17  5:30.

18          MS. HELLER:  Thank you.

19          THE COURT:  Have a good night.

20          (Adjourned until November 29, 2012, at 9:45 a.m.)

21

22

23

24

25