UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA            :

        -v.-                          :          S12 11 Cr. 576 (WHP)

JOSHUA MEREGILDO,                   :
MELVIN COLON, and
EARL PIERCE,                        :

        Defendants.                :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA            :

        -v.-                          :          11 Cr. 758 (WHP)

JOSHUA MEREGILDO,                   :

        Defendant.                 :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**SENTENCING MEMORANDUM OF THE UNITED STATES OF AMERICA**

                                                  PREET BHARARA
                                                  *United States Attorney*
                                                  *Southern District of New York*
                                                  *Attorney for the United States*
                                                  *of America*

NOLA B. HELLER
SANTOSH ARAVIND
ADAM FEE
Assistant United States Attorneys,
*Of Counsel*

**SENTENCING MEMORANDUM OF THE UNITED STATES OF AMERICA**

**I. PRELIMINARY STATEMENT**

The United States of America, through its attorney Preet Bharara, United States Attorney for the Southern District of New York, respectfully submits this sentencing memorandum in advance of the sentencings of defendants Joshua Meregildo ("Meregildo"), Melvin Colon ("Colon"), and Earl Pierce ("Pierce"), which are scheduled for September 20, 2013, at 2:00 p.m. Following their convictions after trial on multiple counts in the Indictment in case number S12 11 Cr. 576 (WHP), Meregildo faces a guidelines range of life imprisonment and a mandatory life term of imprisonment as a result of his conviction after trial on Count Six of the redacted Indictment – the murder in aid of racketeering of Carrel Ogarro; and Colon faces a guidelines range of life imprisonment and a mandatory life term of imprisonment as a result of his conviction after trial on Count Eight of the redacted Indictment – the murder in aid of racketeering of Delquan Alston. As calculated by the Probation Department, Pierce faces a guidelines range of 360 months' to life imprisonment, followed by a mandatory consecutive 420 months' imprisonment.  As detailed below, however, the Government disagrees with the calculations as set forth by the Probation Department and believes that the appropriate Guidelines range is life imprisonment for Pierce.

**II. BACKGROUND**

**A.     The Offense Conduct**

As described in the pre-sentence investigation reports ("PSR") for Meregildo, Colon and Pierce,[1] the S12 Indictment in this case charged sixteen members and associates of the Courtlandt Avenue Crew ("CAC") with participation in racketeering, narcotics, and firearms offenses, as well

---

[1] As of the date of filing of this memorandum, the Government had not yet received the second disclosure of Meregildo's PSR.

as numerous violent crimes. The offense conduct in question occurred between spring 2010 and September 2011. Meregildo's involvement took place between spring 2010 and March 2011, when he was incarcerated as a result of the bank robbery charges that form the basis of Indictment No. 11 Cr. 758 (WHP).

At the trial in Indictment No. 11 Cr. 576, the Court heard in detail about the operations of the CAC, from its formation in or about 2010 under the leadership of the now-deceased Terry Harrison, a/k/a "T-Money," up through September 27, 2011, when many of the members of the CAC were arrested. Meregildo PSR ¶¶ 56-79.[2] As noted, many CAC members, including Meregildo and Colon, were also members of a gang called "God's Favorite Children," or "GFC," and, like all three defendants, of the MacBalla set of the Bloods gang. Members and associates of the CAC flooded the Jackson/Melrose Houses with drugs through high-volume street-level sales of crack cocaine and marijuana; possessed and used firearms to engage in violent behavior; and protected their territory and reputation through manifold acts of violence, including multiple attempted murders and murders. As charged in the S12 Indictment in this case, CAC members were responsible for at least four homicides occurring during the charged time period. Indeed, CAC members and associates terrorized their community on a daily basis by their actions.

1.   **Joshua Meregildo**

As the trial testimony showed, Meregildo was one of the leaders of the CAC. He was extremely close to Terry Harrison, who played the role of an older brother to Meregildo. (Trial Tr. 2304.) Meregildo sold marijuana for Harrison on a frequent basis while Harrison was alive. (*See*,

---

[2]   References to each defendant's PSR are noted as "Meregildo PSR," "Colon PSR," or "Pierce PSR."

*e.g.*, Trial Tr. 2277.)  Harrison trusted Meregildo to do his bidding when it came time to execute Carrel Ogarro, who was seen as a threat to the CAC (Trial Tr. 2903), given his reputation as a "snitch," (Trial Tr. 2837.)  Accordingly, Harrison offered Meregildo and Parsons $5,000 to kill Ogarro, and they agreed.  (Trial Tr. 2303-04.)  On the night of the murder, July 31, 2010, Meregildo, Devin Parsons, and Walter Aponte hunted Ogarro down in the middle of the night, and Meregildo and Parsons shot him repeatedly (with Meregildo taking the initial shots) in a public pathway.  (Trial Tr. 2305-18.)

After Harrison was murdered on September 10, 2010, the evidence at trial showed that Meregildo, Earl Pierce, and Bernard Folks went to the vicinity of 321 East 153rd Street to retaliate against members of the rival drug crew run by Roger Key, a/k/a "Luchie," whom they believed to be responsible for Harrison's murder.  Tarean Joseph, a/k/a "T," one of Key's associates, was shot multiple times during the incident, during which Pierce and Folks fired shots from a 9mm and a .40 caliber firearm, respectively, at Joseph and other members of the 321 Crew.  Meregildo was acquitted of his role in this shooting.  However, the Court could find by a preponderance of the evidence that Meregildo did in fact participate in a conspiracy to murder members of the 321 Crew, and participate in the attempted murder of Joseph, based on the testimony of Bernard Folks, Devin Parsons, and Anthony Crocker at trial.  (Trial Tr. 682-89; 2426-36; 4012-20.)  *See United States* v. *Watts*, 519 U.S. 148, 157 (1997).  Because the consideration of such conduct would not affect Meregildo's sentence here, however, the Government does not request that the Court do so.

After Harrison's death, Meregildo briefly assumed Harrison's role as the head of the CAC, and took over his crack cocaine distribution business.  (Trial Tr. 4019-27.)  Then, in February 2011, Meregildo organized a series of five bank robberies in the Bronx and Manhattan, in which

he wrote demand notes to tellers at banks and gave them to fellow GFC member Carlos Villafranco, who passed them to the tellers. Two of the bank robberies were successful. The tellers in the other three robberies declined to give Villafranco any money. (Meregildo PSR ¶¶ 80-87; Trial Tr. 3472, 3535-42.) Meregildo was arrested in March 2011 as a result of his role in these bank robberies, and has remained in federal custody since that time.

Meregildo's involvement in gang-related activities continued even after his current period of incarceration began. In January 2012, the Government obtained a document seized at the Metropolian Correctional Center containing codes and oaths from the MacBalla Bloods Gang. The document had Meregildo's handprint on it, as verified by a fingerprint expert employed at the New York City Police Department. The Government declined to offer this document as evidence at trial, but its existence is significant. Furthermore, various other documents seized by correctional officials further indicate that Meregildo continues to engage in gang-related activities during his incareration. Attached as Exhibit A is a typewritten document intercepted at Metropolitan Detention Center during the week of March 18, 2013. On page two of the document is listed the current leadership of the MacBalla Bloods in the "fedz." "Killa" (Joshua Meregildo) is listed as one of the "donz," and "Melly Mel," (Melvin Colon) is listed as "councel." This document is just one example of several similar documents that have been intercepted after the conclusion of the trial in this case.

### 2.     Melvin Colon

As the trial testimony showed, Colon was another leader of the CAC, and assumed a greater position of power after Meregildo's incarceration in January 2011. Colon was a prolific dealer of crack cocaine and other drugs. (GX 800.) After Harrison's death in September 2010,

Colon assumed the reins of control over the drug business in and around Courtlandt Avenue – Colon distributed drugs to his fellow gang members and reaped the profits of the drugs being sold in his community.

Colon was also a particularly violent member of the CAC. In July 2010, Colon and Devin Parsons murdered Delquan Alston, whom they saw as a potential threat to the CAC and Harrison, its leader. (Trial Tr. 672, 1472, 2405, 3519.) Specifically, the evidence at trial established that Colon and Parsons killed Alston because Alston had asked about rumors that Harrison's enemies had placed a bounty on Harrison's life. Colon and other CAC members were also concerned that Alston's purported practice of selling fake drugs in the CAC's territory had a negative impact on the CAC's drug business. (Trial Tr. 2405-6.) Colon took the first step in eliminating this perceived threat to the CAC's business – Colon shot Alston in the head; Parsons followed on with more gunshots to his body. After the murder, Colon bragged to his fellow CAC members – in boasts designed to spread the word about Colon's status as a murderer – that he had shot and killed Alston. (*See* Trial Tr. 672, 1472, 3994.)

After Harrison's death, Meregildo briefly assumed Harrison's role as the head of the CAC, and took over his crack cocaine distribution business. (Trial Tr. 4019-27.) Following Meregildo's arrest in March 2011 on bank robbery charges, Colon became the CAC's leader and main drug and gun supplier. (Trial Tr. 1558; GX 800.) Colon also continued to take the lead in attempting to kill the CAC's rivals. In September 2012, Colon and others attempted to kill members of the rival Maria Lopez Crew but, instead, mistakenly shot an innocent bystander. (Trial Tr. 1555.)

Colon's involvement in gang-related activities continued even after his current period of incarceration began in September 2012. Correspondence seized from Colon by correctional

officials makes clear that Colon continues to engage in gang-related activities during his incarceration and may have actually elevated his status as a leader of the MacBalla bloods since his arrest in this case. A small, representative sample of these letters are attached as Exhibit B, and discussed below.

### 3. Earl Pierce

As the trial testimony showed, Pierce was an associate of the CAC. He was close to Terry Harrison, and they sold crack cocaine together. (Trial Tr. 627.) Pierce collected money from other CAC members who sold drugs for the organization. (Trial Tr. 2269). Pierce also had an instrumental role in committing violence on behalf of the CAC. When Pierce and Harrison learned that Jason Correa, an associate of a rival drug crew, was in Pierce's building, they decided to kill Correa. On the night of the murder, July 25, 2010, Pierce spoke to Harrison, and they walked into the building together. (Trial Tr. 647.) Pierce told Harrison that "I'mma be waiting for you to finish. When you come out, I'm gonna be there." (Trial Tr. 647.) Shortly thereafter, Harrison shot and killed Correa, and afterwards, Harrison and Folks walked upstairs to meet with Pierce, who was right where he said he was going to be. (Trial Tr. 649-50.) Harrison handed Pierce the murder weapon, which Parsons described at trial as Pierce's gun. (Trial Tr. 650, 2311.) Pierce was convicted of conspiring to commit murder in connection with the Correa homicide, as charged in Count Three, but was acquitted of the substantive murder in connection with racketeering, as charged in Count Four, the intentional murder of Correa in connection with a drug conspiracy, as charged in Count Fourteen, and aiding and abetting the discharge of a firearm that resulted in the death of Correa, as charged in Count Seventeen.

As discussed above, after Harrison was murdered on September 10, 2010, the evidence at trial showed that Pierce joined Meregildo and Bernard Folks in retaliating against Roger Key's crew for Harrison's murder. Pierce was particularly upset after Harrison's death, and was "ready to do something" to retaliate. (Trial Tr. 686.) During this offense, Pierce and Folks fired shots from a 9mm and a .40 caliber firearm, respectively, at Joseph and other members of the 321 Crew. Pierce was convicted of aiding and abetting the shooting and attempted murder of Joseph in connection with racketeering activity, as charged in Count Ten, but was acquitted of conspiring to commit murder members of the 321 Organization, to which Joseph belonged, as charged in Count Nine.

The evidence at trial also demonstrated that Pierce possessed guns on numerous occasions, including a .380, a .40, and a .9 mm. (Trial Tr. 686-88, 1506, 2283-87, 3506.)

**B.    Procedural History**

As noted, on March 9, 2011, Meregildo came into federal custody when he was arrested on Complaint No. 11-mj-649, charging him with bank robbery and bank robbery conspiracy, in violation of Title 18, United States Code, Sections 2113(a), 371, and 2. Meregildo was indicted on those charges by a grand jury sitting in this District on September 7, 2011.

On September 21, 2011, a grand jury sitting in this District returned Indictment S2 11 Cr. 576 against Meregildo, Colon, Pierce, and six other defendants. The indictment contained fifteen counts. The Indictment was ultimately superseded to contain twenty-eight counts and sixteen defendants including Meregildo, Colon, and Pierce (S12 11 Cr. 576).

The defendants proceeded to trial on October 1, 2012. The trial concluded on December 4, 2012, when the jury found that the three defendants were guilty of being members of racketeering

enterprise (Count One) and participating in a racketeering conspiracy (Count Two); that Pierce was guilty of conspiring to murder members of the Melrose Organization in aid of racketeering (Count Three); that Meregildo was guilty of conspiring to murder, and murdering, Carrel Ogarro in aid of racketeering (Counts Five and Six); that Colon was guilty of conspiring to murder, and murdering, Delquan Alston in aid of racketeering (Counts Seven and Eight); that Pierce was guilty of the assault and attempted murder of Tarean Joseph in aid of racketeering (Count Ten); that Colon was guilty of conspiring to murder members of the Maria Lopez Crew in aid of racketeering (Count Eleven); that Colon was guilty of the assault and attempted murder of Jiang Jang in aid of racketeering (Count Twelve); that the three defendants were guilty of conspiring to distribute 280 grams and more of crack cocaine (Count Thirteen); that Meregildo was guilty of murdering Carrel Ogarro in connection with a drug crime (Count Fifteen); that Colon was guilty of murdering Delquan Alston in connection with a drug crime (Count Sixteen); that Meregildo was guilty of possessing or using a firearm in furtherance of the murder of Carrel Ogarro (Count Eighteen); that Colon was guilty of possessing or using a firearm in furtherance of the murder of Delquan Alston (Count Nineteen); that Pierce was guilty of possessing or using a firearm that was brandished and discharged in furtherance of the assault and attempted murder of Tarean Joseph (Count Twenty); that Colon was guilty of possessing or using a firearm that was brandished and discharged in furtherance of the conspiracy to murder members of the Maria Lopez Crew (Count Twenty-One); and that the three defendants possessed or used firearms in furtherance of a narcotics conspiracy (Count Twenty-Two).   The defendants were acquitted of the remaining counts.

On August 6, 2013, Meregildo pleaded guilty to Count One of Indictment 11 Cr. 758 (the bank robbery conspiracy).  Meregildo PSR ¶ 38.

**C.     The Presentence Investigation Report**

### 1.     Joshua Meregildo

On August 20, 2013, the Probation Office issued its initial Presentence Investigation Report for Meregildo. The PSR concluded that the offense conduct yielded a total offense level of 47, and a Criminal History Category of IV, for a total Guidelines range of life imprisonment.[3] Meregildo PSR page 32.  The Government is not yet in receipt of the Probation Office's final PSR, containing its sentencing recommendation, but, respectfully, such recommendation is immaterial given the mandatory life term that Meregildo will receive.

### 2.     Melvin Colon

On September 11, 2013, the Probation Office issued its final Presentence Investigation Report for Colon. The PSR concluded that the offense conduct yielded a total offense level of 43, and a Criminal History Category of III, for a total Guidelines range of life imprisonment. Colon PSR page 29.

### 3.     Earl Pierce

On September 12, 2013, the Probation Office issued its final Presentence Investigation Report in this case.  The PSR concluded that the offense conduct yielded a total offense level of 39, and a Criminal History Category of VI, based on Pierce's status as a Career Offender, for a total Guidelines range of 360 months to life imprisonment on Counts One, Two, and Three, following by a mandatory consecutive term of 35 years' imprisonment on Counts Twenty and

---

[3] The Probation Office determined Meregildo's offense level based on the counts of conviction after trial only.  As noted, the Court could also consider Meregildo's acquitted conduct, namely, his role in the attempted murder of Tarean Joseph on September 13, 2010, in determining the correct offense level and applicable penalties.  *See United States* v. *Watts*, 519 U.S. 148, 157 (1997); *United States* v. *Vaughn*, 430 F.3d 518, 527 (2d Cir. 2005) ("district courts may find facts relevant to sentencing by a preponderance of the evidence, even where the jury acquitted the defendant of that conduct.").  Because the consideration of such conduct would not affect Meregildo's sentence here, however, the Government does not request that the Court do so.

Twenty-Two.[4]  Pierce PSR ¶¶ 108, 133.  Critically, the Probation Department determined that because Pierce was acquitted of the substantive murder charges contained in Counts Four, Fourteen, and Seventeen, and was convicted of conspiracy to commit murder, the applicable base offense level for Counts One, Two, Three, and Ten was 33 pursuant to U.S.S.G. § 2A1.5, not 43, which is the base offense level for first degree murder pursuant to U.S.S.G. § 2A1.1.

D.      **Status of Co-Defendants**

The PSRs detail the sentences of the co-defendants of Meregildo, Colon and Pierce, most of which have already been imposed.  (*See* Colon PSR ¶¶ 31-42.)

### III. ARGUMENT

A.      **Joshua Meregildo**

Because Meregildo's conviction of murder in aid of racketeering, in violation of Title 18, United States Code, Section 1959(a)(1), brings about a mandatory life term of imprisonment, the Court has no discretion in imposing sentence here.  Even though the result of the sentencing proceeding in this case is not in doubt, it still must be remembered that Meregildo, in connection with his membership in a brutally violent gang, ended the life of a young man in a cruel and heartless fashion, hunting him down and shooting him dead in the public pathway outside his home.  Meregildo also engaged in narcotics trafficking and other violent gang-related activities

---

[4] The Probation Office determined Pierce's offense level based on the counts of conviction after trial only.  As noted, the Court could also consider Pierce's acquitted conduct, namely, his role in the murder of Jason Correa on July 25, 2010, in determining the correct offense level and applicable penalties.  *See United States* v. *Watts*, 519 U.S. at 157; *United States* v. *Vaughn*, 430 F.3d at 527.  The Government believes that the murder of Jason Correa, and Pierce's participation in that murder, was proved by a preponderance of the evidence through the testimony of Bernard Folks, Aubrey Pemberton, and Devin Parsons.  Although Pierce's acquitted conduct is not necessary for the Court's determination of the correct offense level and applicable level, the Court should take into account this conduct when fashioning a sentence for Pierce.

that brought about a scourge on his community. Finally, Meregildo spearheaded a bank robbery conspiracy that victimized five banks in the Bronx and Manhattan during a short time period in February 2011. Rather than retreating from his past since his incarceration, instead, Meregildo has embedded himself further in criminal activity, rising to the top of the MacBalla Bloods hierarchy in federal prison, as evidenced by the above-noted documents seized by officials at the Metropolitan Detention Center. This decision on Meregildo's part evidences the fact that he is not remorseful or regretful of the crimes he committed with other members of GFC and the MacBalla Bloods; that he has not yet begun the process of rehabilitation; and that he remains undeterred from participating in the types of gang-related activities that landed him in prison in the first place. It can only be hoped that as Meregildo matures during his time in prison, he one day decides to turn away from the destructive influences in his life and instead to devote himself to more productive and positive exploits.

**B.     Melvin Colon**

Because Colon was also convicted of murder in aid of racketeering, in violation of Title 18, United States Code, Section 1959(a)(1), he must receive a mandatory life term of imprisonment. Colon is deserving of this extremely serious penalty. Colon assumed the leadership of the CAC after the death and incarceration of its previous leaders; and he worked to spread drugs, guns, and violence throughout the community in which he and his family lived as well as other parts of the Bronx. Most seriously, Colon shot and killed a young man (Delquan Alston) because Alston asked questions about bounties on the life of the CAC's leader. Colon's subsequent boasts about Alston's murder make clear that Colon was remorseless; to the contrary, Colon was proud of what he did to Alston. To Colon, his cold-blooded murder of a perceived threat to the CAC was a fact worth sharing over and over again, to show he was a powerful member of the CAC.

Of course, Colon's criminal activities encompassed more than murder: he collected and distributed firearms among his followers in the CAC, enabling others to sow even more violence in the streets of the Bronx; he encouraged and joined other CAC members in attempting to kill members of rival drug crews, resulting in the injury of at least one innocent bystander; and Colon himself dealt and distributed drugs to other members of the CAC. Colon's embrace of his leadership role in the CAC highlights his complete and total abandon of any attempt to comply with the law or any code other than profiting from and working to further the CAC's crimes.

Colon's lack of remorse for his crimes is reflected in the stream of correspondence he has written since his arrest and conviction in this case. Exhibit B contains only a very small portion of these letters. In them, Colon makes clear that he is an unrepentant gang leader, even while incarcerated. Like Meregildo, Colon has allied himself with the MacBalla Bloods hierarchy in federal prison and considers himself to be a leader of the group. (Ex. B at 2 ("I got MB [MacBalla] for the Fedz").) For example, in a letter seized from Colon on or about January 25, 2013, Colon writes, in a letter addressed to Meregildo, that "loyalty is everything," that, when Colon "get[s] to [general] population, shyt gonna change in this Building for the Family," "Balla talk" – referring to MacBalla code – "is in full effect," and "T-Money raised me." (Ex. B at 6-7.) Colon also identifies Meregildo and himself as "regime leaders." In a letter received by the Government today, Colon provides additional instructions regarding gang membership in jail: "It's about growth & development & we can do neither if were [sic] not spreaded out & making our presence felt in the pen!" (Ex. B. at 9.)

Colon also continues to target those who testified against him at trial. In a letter seized from Colon on or about January 14, 2013, Colon asks another individual to relay a message to one former gang member who testified at trial against the defendants. (Ex. B at 4.) In the message,

-12-

Colon calls cooperating witness a series of names, and warns that Colon expects to be "home soon."

These letters written by Colon reflect his continued efforts to lead and commit crimes through his gang. They make clear that Colon is not remorseful about the choices that led him to these circumstances, given that he continues to make the same poor choices by associating with gangs and other gang members, and attempting to lead these gangs in committing crimes. Colon plainly remains undeterred from committing gang-related offenses.

**C.     Earl Pierce**

The Government submits that the Probation Department erred when it determined that the applicable base offense level for Pierce for both Groups One and Two, as detailed in the PSR. The Probation Department determined that the applicable base offense level was 33 because Pierce was found guilty of conspiring to murder Jason Correa, and was acquitted of the substantive murder counts.  Pierce PSR ¶¶ 79, 85.  Accordingly, the Probation Department identified the applicable Guideline as U.S.S.G. § 2A1.5, which sets a base offense level of 33.  Pierce PSR ¶¶ 79, 85. However, Guideline Section 2A1.5 includes a cross-reference that states "[i]f the offense resulted in the death of a victim, apply § 2A1.1 (First Degree Murder)."  Because the conspiracy to murder Jason Correa ended in the death of Correa, the applicable Guideline should be Section 2A1.1, not Section 2A1.5.  *See United States* v. *Mungin*, 470 F. App'x. 49, *1 (2d Cir. 2012).  Thus, notwithstanding the fact that Pierce was acquitted of the substantive murder charges, his total offense level should be 43, which would correspond to a Guideline Range of life imprisonment on Counts One, Two, Three, and Ten, given Pierce's status as a Career Offender.

Although the Probation Office recommends a total sentence of 360 months' imprisonment, followed by a mandatory and consecutive 35 years' imprisonment, for a total of 65 years'

imprisonment, the Government believes that the Court should sentence Pierce to a term of life imprisonment. Pierce argues that a sentence of 45 years' imprisonment is sufficient for someone who "was a product of his environment, who allegedly dealt drugs, possessed guns, and attempted to kill someone but in fact did not murder another person[.]" (Pierce Mem. at 9). Pierce, however, did conspire to kill Jason Correa, and there is no dispute that Correa in fact was murdered by one of Pierce's confederates. Pierce also contributed to the violent environment in the Melrose and Jackson housing projects and there is no question that he was a prolific crack dealer who possessed guns and engaged in several acts of violence. Even though Pierce was acquitted of the substantive murder charges, this Court should sentence him to life imprisonment based on the Section 3553(a) factors. *See United States* v. *Henderson*, 303 F. App'x 30, 38 (2d Cir. 2008) (affirming life sentence even though defendant was acquitted of intentional murder charge). In particular, a sentence of life imprisonment would be reasonable and appropriate under the policies set forth in the Guidelines, and sufficient, but not greater than necessary, to comply with the purposes set forth in Title 18, United States Code, Section 3553(a)(2), in consideration of all of the factors set forth in Title 18, United States Code, Section 3553(a), because it would:

- take into account and reflect the nature and circumstances of the offense by reflecting the fact that the defendant participated in a violent, multi-year crack cocaine crew that sold kilograms of crack out of the Melrose and Jackson houses in the Bronx (18 U.S.C. § 3553(a)(1));

- reflect the history and characteristics of the defendant, who, although only 28 years old, has has 11 prior convictions, including two prior felony convictions involving criminal sale of a controlled substance in the third degree (which makes him a Career Offender), and multiple convictions for possession of narcoitcs, along with convictions for menacing and resisting arrest;

- reflect the seriousness of the offense, in which the defendant and other members and associates of the CAC terrorized a neighborhood with multiple acts of violence and constant drug dealing activity (18 U.S.C. § 3553(a)(2)(A));

- afford deterrence to others who would believe that they could make money selling crack, and who believe that it is necessary to possess and use firearms on the streets of the Bronx to protect their turf (18 U.S.C. § 3553(a)(2)(B));

- protect the public from further crimes of the defendant, who has demonstrated a penchant for violence, has lived a life of crime since he was seventeen years old, and has demonstrated that he has not been deterred by prior significant terms of incarceration (18 U.S.C. § 3553(a)(2)(C); and

- a sentence of life would reflect both the Sentencing Guidelines and the pertinent policy statements issued by the Sentencing Commission and it would avoid unwarranted sentence disparities among defendants who have been found guilty of similar conduct, including Meregildo and Colon (18 U.S.C. §§ 3553(a)(4)-(6)).

Although the jury found that Pierce did not kill another person, which is often the conduct that calls for a sentence of life in prison, his conduct in this case, which includes Pierce's conspiring with others to commit the murder of Jason Correa, his participation in the assault and attempted murder of Tarean Joseph in retaliation for the murder of Terry Harrison, his possession of firearms used by others in the CAC to commit violence, and his participation in crack cocaine sales, as well as his background and characteristics, favor a Guidelines sentence. Unlike Meregildo and Colon, who were younger members of the CAC, Pierce was older and more experienced, and was more of Harrison's partner than a younger gang member who was impressionable and under Harrison's influence. The Government believes that the testimony of

trial established that Pierce is as responsible for the mayhem and violence committed by the CAC as Meregildo and Colon, and he should be sentenced to a term of life imprisonment, just like Meregildo and Colon.

In light of all the factors set forth in Title 18, United States Code, Section 3553(a), the policies set forth in the advisory Sentencing Guidelines, the facts set forth in the Presentence Report and the arguments above, a sentence of life imprisonment would be sufficient but not greater than necessary to comply with the purposes set forth in Title 18, United States Code, Section 3553(a)(2).

### IV.  CONCLUSION

For the reasons set forth above, Meregildo and Colon must be sentenced to a term of life. Pierce should be sentenced to life imprisonment, consistent with the applicable guidelines range.

Dated:      New York, New York
            September 16, 2013

                                    Respectfully submitted,

                                    PREET BHARARA
                                    United States Attorney
                                    Southern District of New York

                        By:            /s/
                                    Nola B. Heller / Santosh Aravind /
                                    Adam Fee
                                    Assistant United States Attorneys
                                    (212) 637-2200

**Certificate of Service**

I, Santosh Aravind, declare that I am employed in the Office of the United States Attorney for the Southern District of New York, and on September 16, 2013, I caused a copy of the attached Sentencing Memorandum of the United States of America to be served by electronic notification and electronic mail to the following counsel:

>  Winston Lee, Esq.
>  Mitchell Dinnerstein, Esq.
>  Florian Miedel, Esq.
>  Aaron Mysliwiec, Esq.

I declare under penalty of perjury that the foregoing is true and correct, pursuant to 28 U.S.C. Section 1746.

Dated:    New York, New York
          September 16, 2013

                                        /S/ Santosh Aravind
                                        Santosh Aravind
                                        Assistant United States Attorney
                                        (212) 637-1045