

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*

September 19, 2013

BY EMAIL

The Honorable William H. Pauley III
United States District Judge
Southern District of New York
United States Courthouse
500 Pearl Street
New York, New York 10007

      Re:    United States v. Joshua Meregildo, et al., S12 11 Cr. 576 (WHP)

Dear Judge Pauley:

      The Government respectfully submits this letter in response to the Court's order dated September 17, 2013, directing the parties to address several issues relevant to the sentencings of the defendants Joshua Meregildo, Melvin Colon, and Earl Pierce, which are scheduled for Friday, September 20, 2013, at 2:00 p.m.

1. <u>Any Objections to the Court's Preliminary Guidelines Calculation</u>

      The Government has no objections to the Court's Preliminary Guidelines Calculation as outlined in the Court's Order.[1]

2. <u>The Total Loss Amount for the Robbery Conspiracy Charged in 11 Cr. 758 (WHP), Including Restitution</u>

      As the Government advised the Probation Office, and as disclosed in the final Presentence Investigation Report for Joshua Meregildo, the total loss amount for the bank robbery conspiracy charged in 11 Cr. 758 (WHP) is $3,750. The specific loss amount for each bank is as follows:

- On February 10, 2011, Meregildo and others participated in a robbery of a Chase Bank located at 994 1st Avenue in Manhattan; $800 was stolen from the bank.
- On February 14, 2011, Meregildo and others participated in a robbery of a Hudson Valley Bank, located at 975 Allerton Ave; $1050 stolen was stolen from the bank.

---

[1] On page three of the Court's order, in paragraph three, Pierce is referred to as Colon, and the leadership enhancement pursuant to U.S.S.G. § 3B1.1(c) is described as if it were pursuant to Section 3B1.1(a). As noted in paragraph 6 below, the Government would not object to the designation of a three- or four-level enhancement for each of Pierce's three groups, as the Government believes such enhancements are appropriate based on the evidence. Because such an addition would not affect the overall sentencing range, however, the Government does not object to the calculation as currently formulated.

- On February 21, 2011, Meregildo and others participated in a robbery of a Chase Bank, located at 322 West 125th Street in Manhattan; $1900 was stolen from the bank.

The Government is in the process of preparing a proposed restitution order, which we will provide to the Court at the sentencing or shortly thereafter.

3. <u>The Applicability of U.S.S.G. § 3B1.1 for the Robbery Conspiracy Charged in 11 Cr. 758 (WHP)</u>

As agreed by the parties, the Government believes that a sentencing enhancement pursuant to U.S.S.G. § 3B1.1(c) is appropriate because Meregildo was an organizer, leader, manager, or supervisor of the bank robbery conspiracy, which involved four or fewer individuals. The Government would establish that Meregildo originated and organized the conspiracy and directed other individuals, including Carlos Villafranco, during its pendency.

4. <u>The Applicability of U.S.S.G. § 2D1.1(b)(14)(B)(i) for the Narcotics Conspiracy</u>

The Government believes that an enhancement under U.S.S.G. § 2D1.1(b)(14)(B)(i) is appropriate for all three defendants -- Meregildo, Colon, and Pierce. The testimony at trial showed that Meregildo and Colon supplied drugs to juveniles as part of the narcotics conspiracy. There was also testimony at the trial that after the death of Harrison, Meregildo and later Colon took over the leadership of the narcotics conspiracy. Additionally, Bernard Folks, who was a juvenile at the time of the instant offense, testified that Pierce bagged up crack cocaine in "13's house," referring to Enrique Brito, and that Brito was present in the apartment at the time. (Trial Tr. 624-26). Pierce also gave his .380 firearm (which was used as part of the narcotics conspiracy and to murder Carrel Ogarro and Jason Correa) to Hassen Brito to store inside the Brito apartment, from which it was seized in September 2010. Folks, Enrique Brito, Hassen Brito, Anthony Crocker, and Dante Barber, each of whom was a juvenile during the duration of the charged narcotics conspiracy, each pleaded guilty to his role in the conspiracy. Based on their leadership role, the Government believes that each of the defendants knew that certain members of the narcotics conspiracy, including Folks, Enrique Brito and Hassan Brito, Crocker, and Barber, were juveniles and participating in the narcotics conspiracy.

Alternatively, the Government believes that a sentencing enhancement is appropriate under U.S.S.G. § 3B1.4 for using a minor to commit a crime for the same reasons stated above.

5. <u>The Amount of Cocaine Base and Marijuana Involved in the Conspiracy</u>

The Government believes that the appropriate base offense level for crack cocaine should be 8.4 kilograms or more of cocaine base, which corresponds to a base offense level of 38 under U.S.S.G. § 2D1.1(c)(1). The testimony at trial from each cooperating witness established that the defendants helped to run an open air drug market on Courtlandt Avenue. The operation ran around the clock, seven days a week, with multiple sellers at a time, from approximately March 2010 through September 2011. For example, Anthony Crocker testified that he would sell between one hundred and two hundred bags of crack per week. (Trial Tr. 3931.) Conservatively weighting each bag at .1 grams, Crocker sold between 10 and 20 grams of crack cocaine per week, making him alone responsible for between 500 and 1000 grams of crack cocaine per year. Crocker was just one of more than a dozen regular sellers who worked with the Courtlandt

Avenue Crew during the approximately eighteen months it existed. Accordingly, it is reasonably foreseeable that the conspiracy as a whole involved at least 8.4 kilograms or more of cocaine base during its duration.

Folks and Meregildo were the primary sellers of marijuana for the CAC on Harrison's behalf. Folks testified that he sold between two and three ounces of marijuana per week, or between eight and twelve ounces per month. (Trial Tr. 621-622.) It can fairly be assumed that Meregildo was selling a similar amount. Because marijuana was being sold primarily during the time when Harrison was alive – the six months between March and September 2010 – it can be estimated that the conspiracy was responsible for approximately eight pounds, or four kilograms, of marijuana, yielding an offense level of 12, pursuant to U.S.S.G. § 2D1.1(b)(14).

6.     The Applicability of U.S.S.G. § 3B1.1

The Government believes that a sentencing enhancement pursuant to U.S.S.G. § 3B1.1(a) should apply to Meregildo and Colon for their respective leadership roles in the racketeering enterprise and narcotics conspiracy described in Count One of the Indictment, as designated by Probation. The testimony established that Meregildo and Colon were each leaders of the CAC (following the death of Harrison), and that the CAC involved more than five or more participants and was otherwise extensive.

The Government also believes that at a minimum, a two-level enhancement pursuant to U.S.S.G. § 3B1.1 is appropriate for Pierce with respect to the racketeering enterprise, the narcotics conspiracy, and the two conspiracies to commit murder in aid of racketeering of which he was convicted (each of Groups One, Two, and Three). According to Folks, Pierce and Harrison together decided to murder Jason Correa, and Pierce lay in wait for Harrison and Folks to finish the job, so he could collect the murder weapon. Before the murder, Pierce decided that the man who was with Correa should not be shot (Trial Tr. 1168, "My cousin's with him, let him live"); Pierce clearly played a leadership role in this crime. Pierce was also the primary assailant in the attack on Tarean Joseph, firing the initial shots with his 9mm firearm (Trial Tr. 686, Folks recounting that Pierce said he was "going to make it rain 40 days, 40 nights" during the shooting). Pierce and Harrison also worked together to sell drugs. As Devin Parsons testified, Pierce served as a supervisor on Harrison's behalf in the narcotics conspiracy, collecting Harrison's profits if Harrison were unavailable. (Trial Tr. 2269-72.) Given this testimony, a three- or four-level enhancement pursuant to U.S.S.G. § 3B1.1 could be appropriate for each of the three Groups calculated by the Court, raising Pierce's overall offense level to a maximum of 49. Even with this change, however, Pierce's Guidelines calculation would still result in a range of life imprisonment. Accordingly, the Government does not object to the Court's range as currently proposed. The Government continues to believe that a sentence of life imprisonment is appropriate for Pierce, given his extensive criminal conduct in this case and his serious criminal history.

                Respectfully submitted,

                PREET BHARARA
                United States Attorney

                    By:      /s/
                            Nola B. Heller/Santosh Aravind/Adam Fee
                            Assistant United States Attorneys
                            (212) 637-2200

cc:    Counsel of record (by electronic mail and ECF)